UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| John S. Morter )<br>　Complainant, )<br>　　　　　v. )<br>　　　　　　　　　　　　　　　)<br>Lloyd J. Austin III, )<br>　Secretary, )<br>Department of Defense )<br>　Agency. ) | Case: 1:23−cv−00343<br>Assigned To : Boasberg, James E.<br>Assign. Date : 2/3/2023<br>Description: Employ. Discrim. (H−DECK)<br>Case No. |

3 February 2023

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

**I.   The Parties to This Complaint**

　A.  The Plaintiff

　John S. Morter
　6815 Quail Hollow Blvd.
　Wesley Chapel, FL 33544
　(813)767-8286
　sammorter@gmail.com

　B.  The Defendant

　Lloyd J. Austin III,
　Secretary,
　Department of Defense
　1000 Defense Pentagon
　Washington, DC 20301-1000

　C.  Place of Employment

　Defense Intelligence Agency
　United States Special Operations Command
　Washington, DC 20340-5100



**RECEIVED**
FEB - 3 2023
Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

## II. Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to the Americans with Disabilities Act of 1990, as codified, 42 U.S.C. § § 12112 to 12117.

## III. Statement of Claim

I am a retired active-duty United States Air Force Master Sergeant and recently retired federal civilian. I held a Top Secret Sensitive Compartmented Information security clearance for 34 years without a single security-related incident. I am a qualified individual with a disability (anxiety disorder), and I could have performed the essential functions of my position with or without accommodation.

I believe that the senior officials appointed over me refused to acknowledge my disabilities and grant me reasonable accommodations. The reasonable accommodations that I requested were to maintain my security clearance access and my position at Headquarters United Special Operations Command (HQ USSOCOM) in Tampa, Florida. Instead, I was removed from my position and forced to accept an involuntary reassignment to an unclassified billet in another career field which was located over 1,000 miles away. The agency claimed that these actions were carried out against me as "a strategy to mitigate the security vulnerabilities presented by my inability to successfully complete multiple polygraph examinations."

The polygraph machine measures and records several physiological indicators such as blood pressure, pulse, respiration, and skin conductivity while a person is asked and answers a series of questions. An individual with a disability such as mine would have been at a severe disadvantage and would most certainly produce an out-of-proportion response, especially when exposed to the stressor hundreds and hundreds of times. This is what is known as a false positive.

Essentially, I was being held to a standard that I was unable to achieve because of my disability. As such, I was publicly humiliated, banished from my workplace of 15 years, stripped of my security access, and labeled a threat to security. Despite my numerous appeals, I was officially transferred from the Headquarters United States Special Operations Command to the Defense Intelligence Agency on August 24th, 2014.

Furthermore, this case also involves unlawful discrimination through disparate impact. The Agency admitted through discovery in my EEOC case that as many as 22% of the polygraph examinations it administers result in the same technical opinion as mine: "No Opinion," or "Significant Response." The Agency also admitted to administering thousands of polygraph examinations every year, therefore, the number of individuals whose results were the same as mine would be in the hundreds, if not thousands. The Agency has claimed that it does not maintain those records, nor has it identified these individuals. The Agency has purposely withheld this information because it would prove that I was in fact disparately impacted. At this point, a thorough investigation into the

practices of the DIA Insider Threat Program should be conducted to prove my allegations of abuse and misconduct.

A. The discriminatory conduct of which I complain in the action includes:

   1) Failure to accommodate my disability.
   2) Unequal terms and conditions of my employment.

B. It is my best recollection that the alleged discriminatory acts occurred on <u>August 24th, 2014.</u>

C. I am no longer employed by the defendant. Due to the abusive and illegitimate actions of the defendants, the symptoms of my disabilities worsened, and I applied for workers' compensation and disability retirement. Although my workers' compensation claim was ultimately denied, I was granted a disability retirement in September 2015.

D. The defendant discriminated against me based on my disabilities (anxiety disorder and post-traumatic stress disorder).

E. The facts of my case are as follows:

From March 2011 to August 2014, I was interrogated and verbally assaulted by means of the Polygraph Credibility Assessment (PCA) examination.

My first encounter with this procedure was in March 2011. It was conducted in a local Tampa hotel room and ended after three hours with a technical opinion of "No Opinion". My second attempt, two days later, lasted over three hours and was also determined to be "No Opinion". 10 months later, I was once again summoned to the same local hotel for another round of interrogation and examination with the polygraph. This encounter, which lasted almost four hours, became very contentious between the examiner and me, as he aggressively accused me of lying and withholding information. The examiner terminated the examination by ripping off the sensors, yelling at me to grab my things, and instructing me to get out of the room. Not surprisingly, this examination ended with a technical opinion of "Significant Response". Six months after that, on June 26th, 2012, I was directed to report to Headquarters Defense Intelligence Agency (HQ DIA) in Washington D.C. for another lengthy interrogation and testing via polygraph. This examination lasted just two hours and was once again given a technical opinion of "No Opinion."

I repeatedly requested reasonable accommodations for my diminished ability to successfully complete the polygraph examination but was denied every time. For example, in December 2013, I was sent to HQ to appear before an Agency Psychologist (AP) to determine why I could not successfully complete the polygraph examination. During that meeting, I informed the AP of my disability and promptly provided him with an official diagnosis from my doctor. He then focused on my disability in his official report two days later. In it, he wrote, "In order to be diagnosed with this condition, an

individual's reactive symptoms or behaviors must be judged to be out of proportion to the intensity of the stressor, and to cause significant impairment."

On June 4th, 2014, I sent a "Notice to Appeal" to everyone in my chain of command. This letter, which was even acknowledged by the DIA Director of Security, requested reasonable accommodations for my disabilities.

On June 13th, 2014, I contacted the Equal Employment Opportunity Commission and had an initial interview with a counselor on June 17th, 2014. I filed a formal complaint on July 23rd, 2014, requesting a return to my duty position and a suspension of the reassignment action. According to the EEOC, informal resolution attempts were discussed with the appropriate management officials with the authority to resolve them; however, the final decision to punish me was upheld.

Within days of filing the EEOC complaint, I was notified that I would need to return to HQ for another round of PCA interrogation. On July 31st, 2014, hoping to be exempted from the requirement, I provided the responsible officials with my doctor's diagnoses of Anxiety Disorder 300.02 and Post-traumatic Stress Disorder 309.89. My attempts to get the trip canceled or postponed were rejected, and I had no other choice but to comply.

On August 5th, I was interrogated with the PCA for over four hours, and it ended with a technical opinion of "Significant Response." Immediately following that session, I was directed to meet with two more DIA psychologists. The following day, on August 6th, their official psychological report stated, "SUBJECT's anxiety is acute and appears genuinely debilitating. Psychotherapy is a good start, but it appears insufficient to address anxiety of this proportion." Once again, it is an indisputable material fact that the responsible officials were fully aware of my disabilities yet refused to provide reasonable accommodations.

Furthermore, Department of Defense Instruction (DoDI) 5210.91 (PCA Procedures) instructs that agencies that are approved to conduct polygraph examinations are "to exempt or postpone examinations when individuals are considered medically, psychologically, or emotionally unfit." I believe that my disabilities should have qualified me for an exemption from the examination. In any event, I should not have been punished because of my "results."

Ironically, the reasonable accommodations I requested were actually required by the approved and relevant regulations. It is crucial to my case to note that DoDI 5210.91 also directs that "no unfavorable administrative action (to include access, employment, assignment, and detail determinations) shall be taken based solely on the results of the polygraph." Therefore, the reasonable accommodations, in this case, would have been to return me to duty (as they had done for the previous three and a half years), not to punish me. It is an indisputable material fact that the Agency deliberately failed to follow the approved and relevant regulations concerning the proper use of the PCA examination and its results.

Throughout the past eight years of my Equal Employment Opportunity Complaint, the Agency has argued that they were unaware of my disability at the time the polygraphs were administered. Whether or not they knew of my disability at the time the polygraphs were administered is immaterial to this case. What is material is the fact that the responsible officials were aware of my disability as early as November 2013, disregarded it, and punished me nine months later on August 24th, 2014.

I respectfully request that the court hear my case, not only to provide just compensation but also to help put an end to these abusive policies. Over the years, I have kept meticulous records and can provide indisputable material evidence to validate all my claims.

IV.  **Exhaustion of Federal Administrative Remedies**

A. It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission on <u>July 23rd, 2014</u>.

B. The Equal Employment Opportunity Commission issued a Notice of Right to Sue letter, which I received on <u>November 7th, 2022</u>.

V.  **Relief**

The Agency's actions have caused me great psychological pain and suffering. I was disabled retired because of the abuse, and I have since experienced severe economic hardship from losing my income and having to pay for doctors' bills and medication. I filed a claim with the Department of Labor on October 15th, 2014, and after numerous appeals, was ultimately denied on May 25th, 2017, primarily because the Agency misrepresented the truth and claimed that they had adhered to all approved and relevant regulations, and their actions were simple administrative issues.

The total amount that I seek in pecuniary damages for lost wages, leave, and medical expenses is **$150,000.**

As retribution for the extensive and prolonged pain and mental suffering my employing agency has caused, including the ruination of my stellar career and the slander to my reputation and my character, a sizeable amount of monetary compensation will be required. Due to the abusive and pernicious way that these actions were carried out against me, I have acquired chronic psychiatric and psychological problems which require the continued use of medication and therapy.

The agency's abusive actions have negatively impacted my life in a multitude of ways. I was unfairly banished from my position, stripped of my credentials, and treated like an outcast and a criminal, the prototypical persona non grata. My evaluations, supervisor's comments, and letters from coworkers and other professionals will show that I was an acknowledged leader in the Intelligence Community. I obtained my bachelor's degree in Geography from the University of South Florida in 2009, Summa Cum Laude. In 2010, I

was awarded the Pat Robert's Intelligence Scholarship and completed a Geospatial Intelligence Certificate from Penn State University. In December 2013, I was one course short – a delivery of my capstone project – from completing a master's degree in Geospatial Information Systems. Due to the overwhelming effects of this situation and the problems it caused, I was unable to continue my studies and withdrew from the program. After suffering through the experiences of the past twelve years, I have had to make a career path change and have become a part-time English as a Second Language (ESL) teacher.

It is impossible to put a value on intangibles like the destruction of my esteemed career, the defamation of my character, and the future effects that my disorder will ultimately cause.

The total amount that I request for non-pecuniary damages is **$5,000,000**.

## VI.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

A.  I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: February 3rd, 2022

Signature of Plaintiff: _____

Printed Name of Plaintiff: John S. Morter