UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN S. MORTER,<br><br>       Plaintiff,<br><br>       v.<br><br>LLOYD AUSTIN,<br>Secretary of Defense,<br><br>       Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No. 23-0343 (JEB)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS OR,
<u>IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT</u>**

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK,
Chief, Civil Division

STEPHEN DEGENARO
D.C. Bar #1047116
Assistant United States Attorney
601 D St., N.W.
Washington, D.C. 20530
(202) 252-7229
Stephen.DeGenaro@usdoj.gov

*Attorneys for the United States of America*

September 25, 2023

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................. 3

LEGAL STANDARDS ................................................................................................... 8

I.      Rule 12(b)(1).................................................................................................... 8

II.     Rule 12(b)(6).................................................................................................... 9

III.    Rule 56 ........................................................................................................... 11

ARGUMENT ................................................................................................................. 12

I.      Failure to Accommodate ................................................................................ 13

    A.    Exhaustion of Remedies........................................................................ 13

    B.    Prima Facie Case................................................................................... 14

II.     Disparate Treatment....................................................................................... 17

III.    Disparate Impact ............................................................................................ 21

CONCLUSION.............................................................................................................. 25

# TABLE OF AUTHORITIES

Page(s)

Cases

*Abhe & Svoboda, Inc. v. Chao*,
    508 F.3d 1052 (D.C. Cir. 2007)..........................................................................................10
*Aka v. Wash. Hosp. Ctr.*,
    156 F.3d 1284 (D.C. Cir. 1998)..........................................................................................16
*Aliotta v. Bair*,
    614 F.3d 556 (D.C. Cir. 2010)............................................................................................22
*Al-Owhali v. Ashcroft*,
    279 F. Supp. 2d 13 (D.D.C. 2003)........................................................................................8
*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)............................................................................................................11
*Anderson v. Zubieta*,
    180 F.3d 329 (D.C. Cir. 1999)......................................................................................22, 23
*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................................................9, 23
*Barth v. Gelb*,
    2 F.3d 1180 (D.C. Cir. 1993)..............................................................................................15
*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)........................................................................................................9, 24
*Bonnette v. Shinseki*,
    907 F. Supp. 2d 54 (D.D.C. 2012)..................................................................................14, 15
*Brady v. Off. of Sergeant at Arms*,
    520 F.3d 490 (D.C. Cir. 2008)......................................................................................17, 18
*Brantley v. Kempthorne*,
    Civ. A. No. 06-1137, 2008 WL 2073913 (D.D.C. May 13, 2008)..........................................10
*Brookens v. Solis*,
    635 F. Supp. 2d 1 (D.D.C. 2009)........................................................................................10
*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)............................................................................................................11
*Commodity Futures Trading Comm'n v. Nahas*,
    738 F.2d 487 (D.C. Cir. 1984)..............................................................................................8
*Connecticut v. Teal*,
    457 U.S. 440 (1982)............................................................................................................22
*Curran v. Holder*,
    626 F. Supp. 2d 30 (D.D.C. 2009)........................................................................................8
*Doak v. Johnson*,
    19 F. Supp. 3d 259 (D.D.C. 2014)......................................................................................13
*Drasek v. Burwell*,
    121 F. Supp. 3d 143 (D.D.C. 2015)...............................................................................1, 3, 7
*Easaw v. Newport*,
    253 F. Supp. 3d 22 (D.D.C. 2017)......................................................................................23

*Edwards v. EPA*,
  456 F. Supp. 2d 72 (D.D.C. 2006) ......................................................................... 16
*Feloni v. Mayorkas*, Civ. A. No.,
  22-2094 (JEB), 2023 WL 3180313 (D.D.C. May 1, 2023) .................................... 24
*Figueroa v. Pompeo*,
  923 F.3d 1078 (D.C. Cir. 2019) ................................................................. 17, 18, 20
*Fischbach v. D.C. Dep't of Corr.*,
  86 F.3d 1180 (D.C. Cir. 1996) ............................................................................... 21
*Flemmings v. Howard Univ.*,
  198 F.3d 857 (D.C. Cir. 1999) ............................................................................... 16
*Graffius v. Shinseki*,
  672 F. Supp. 2d 119 (D.D.C. 2009) ....................................................................... 16
*Greene v. Dalton*,
  164 F.3d 671 (D.C. Cir. 1999) ............................................................................... 12
*Haines v. Gen. Pension Plan of Int'l Union of Operating Eng'rs*,
  965 F. Supp. 2d 119 (D.D.C. 2013) ....................................................................... 10
*Hampton v. Vilsack*,
  685 F.3d 1096 (D.C. Cir. 2012) ............................................................................. 19
*Herbert v. National Academy of Science*,
  974 F.2d 192 (D.C. Cir. 1992) ............................................................................. 8, 9
*Horsey v. Dep't of State*,
  170 F. Supp. 3d 256 (D.D.C. 2016) ....................................................................... 10
*Jack's Canoes & Kayaks, LLC v. Nat'l Park Serv.*,
  937 F. Supp. 2d 18 (D.D.C. 2013) ........................................................................... 9
*Jerome Stevens Pharms., Inc. v. FDA*,
  402 F.3d 1249 (D.C. Cir. 2005) ............................................................................... 8
*Klute v. Shinseki*,
  797 F. Supp. 2d 12 (D.D.C. July 12, 2011) ............................................................. 1
*Koch v. Walter*,
  935 F. Supp. 2d 164 (D.D.C. 2013) ....................................................................... 13
*Kokkonen v. Guardian Life Ins. Co. of Am.*,
  511 U.S. 375 (1994) ................................................................................................. 8
*Latson v. Holder*,
  82 F. Supp. 3d 377 (D.D.C. 2015) ......................................................................... 13
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ......................................................................................... 11, 12
*McDonnell Douglas Corp. v. Green*,
  411 U.S. 792 (1973) ............................................................................................... 17
*Menoken v. Berry*,
  408 F. App'x 370 (D.C. Cir. 2010) ................................................................... 22, 24
*Menoken v. McGettigan*,
  273 F. Supp. 3d 188 (D.D.C. 2017) ................................................................. 10, 11
*Mohmand v. Broad. Bd. of Governors*,
  Civ. A. No. 17-0618 (RDM), 2018 WL 4705800 (D.D.C. Sep. 30, 2018) ........... 10
*Morris v. Jackson*,
  994 F. Supp. 2d 38 (D.D.C. 2013) ......................................................................... 16

iv

*Morris v. McCarthy*,
   825 F.3d 658 (D.C. Cir. 2016) ........................................................ 19, 20

*Nat'l R.R. Passenger Corp. v. Morgan*,
   536 U.S. 101 (2002) ............................................................................... 13

*Nichols v. Truscott*,
   424 F. Supp. 2d 124 (D.D.C. 2006) .................................................... 10

*Onyewuchi v. Mayorkas*,
   766 F. Supp. 2d 115 (D.D.C. 2011) .................................................... 22

*Park v. Howard Univ.*,
   71 F.3d 904 (D.C. Cir. 1995) .............................................................. 14

*Rattigan v. Gonzales*,
   503 F. Supp. 2d 56 (D.D.C. 2007) ...................................................... 11

*Reeves v. Sanderson Plumbing Prods.*,
   530 U.S. 133 (2000) ............................................................................. 18

*Scarborough v. Natsios*,
   190 F. Supp. 2d 5 (D.D.C. 2002) ........................................................ 14

*Segar v. Smith*,
   738 F.2d 1249 (D.C. Cir. 1984) .......................................................... 20

*Spinelli v. Goss*,
   446 F.3d 159 (D.C. Cir. 2006) ...................................................... 13, 14

*Stewart v. St. Elizabeths Hosp.*,
   589 F.3d 1305 (D.C. Cir. 2010) .......................................................... 16

*Swierkiewicz v. Sorema, N.A.*,
   534 U.S. 506 (2002) ............................................................................. 10

*Tao v. Freeh*,
   27 F.3d 635 (D.C. Cir. 1994) .............................................................. 11

*Taylor v. Small*,
   350 F.3d 1286 (D.C. Cir. 2003) ............................................................ 1

*Univ. of Texas Sw. Med. Ctr. v. Nassar*,
   570 U.S. 338 (2013) ............................................................................. 17

*Uzlyan v. Solis*,
   706 F. Supp. 2d 44 (D.D.C. 2010) ...................................................... 13

*Walker v. Johnson*,
   798 F.3d 1085 (D.C. Cir. 2015) ...................................................... 19, 21

*Ward v. McDonald*,
   762 F.3d 24 (D.C. Cir. 2014) ................................................................ 1

*Waterhouse v. District of Columbia*,
   298 F.3d 989 (D.C. Cir. 2002) ............................................................ 19

*Watson v. Fort Worth Bank & Trust*,
   487 U.S. 977 (1988) ............................................................................. 22

*Wells v. Hense*,
   235 F. Supp. 3d 1 (D.D.C. 2017) .................................................... 10, 21

*Wiley v. Glassman*,
   511 F.3d 151 (D.C. Cir. 2007) ............................................................ 17

Statutes

29 U.S.C. § 794a(a)(1) .................................................................................................... 13, 14
42 U.S.C. § 12111(5)(B)(i) ............................................................................................... 1

Rules

Fed. R. Civ. P. 12(b)(1) ................................................................................................... 8
Fed. R. Civ. P. 12(b)(6) ................................................................................................... 9
Fed. R. Civ. P. 12(h)(3) ................................................................................................... 8
Fed. R. Civ. P. 56(a) ........................................................................................................ 11

Regulations

29 C.F.R. § 1614.105(a)(1) .............................................................................................. 13, 14
29 C.F.R. § 1614.203 ....................................................................................................... 14
29 C.F.R. § 1614.407(c) ................................................................................................... 14
29 C.F.R. § 1630.2(m) ..................................................................................................... 15
29 C.F.R. §§ 1614.105(d) ................................................................................................ 14

Other Authorities

*Ward B. v. Austin*,
    EEOC Appeal No. 2020005490 (May 9, 2022) ......................................................... 7

## INTRODUCTION

Plaintiff brings the instant action claiming that he suffered disability discrimination[1] when the Defense Intelligence Agency ("DIA") informed him that the United States Special Operations Command ("SOCOM") no longer wished to host him in a Top Secret position at the SOCOM facility in Tampa, Florida after Plaintiff failed to pass a polygraph examination on four separate occasions—a fact that SOCOM viewed as presenting unacceptable risk in handing its information. When Plaintiff reported that he suffered from an anxiety disorder that prevented him from successfully passing the polygraph—a fact that Plaintiff disclosed to Defendant only after he failed the examination four times—Defendant reassigned Plaintiff to a position in DIA Headquarters to mitigate the risk posed by continuing to grant Plaintiff access to sensitive information because DIA could more easily monitor Plaintiff from headquarters.  On these facts, Plaintiff asserts that Defendant failed to accommodate his disability, subjected him to disparate treatment because of his disability, and maintained a neutral employment practice that disparately impacted him because of his disability.

---

[1]     It is beyond cavil that the "[Americans with Disabilities Act] does not apply to employees of the federal government because the federal government is not considered an 'employer' under the ADA."  *Klute v. Shinseki*, 797 F. Supp. 2d 12, 17 (D.D.C. July 12, 2011); *see also* 42 U.S.C. § 12111(5)(B)(i) (specifically excluding "the United States" from the definition of "employer"). As a former federal employee, Plaintiff's disability claims are instead governed by the Rehabilitation Act of 1973, as amended, § 501 *et. seq.* ("Rehab Act").  Section 501 of the Rehab Act is the exclusive remedy for federal employees alleging that a federal agency engaged in disability discrimination.  *See Taylor v. Small*, 350 F.3d 1286, 1291 (D.C. Cir. 2003).  The Rehab Act incorporates the standards applied under the Americans with Disabilities Act of 1990 ("ADA"), *see Ward v. McDonald*, 762 F.3d 24, 28 (D.C. Cir. 2014) (citing 29 U.S.C. § 794(d)), and it prohibits several different types of discrimination, including the failure to accommodate. *See Drasek v. Burwell*, 121 F. Supp. 3d 143, 153-54 (D.D.C. 2015).  Defendant does not move to dismiss or for summary judgment on the grounds that Plaintiff has pleaded a claim under the ADA rather than the Rehab Act, because the analysis of the legal issues is identical in all relevant respects for the instant motion.

Defendant respectfully requests that this Court dismiss or grant Defendant summary judgment on Plaintiff's disability discrimination claims.  With respect to Plaintiff's failure to accommodate claim, the undisputed evidence reveals that Plaintiff failed to exhaust administrative remedies, and in any event cannot demonstrate a prima facie case.  Specifically, Plaintiff never raised a failure to accommodate claim in his administrative charge, and thus the claim is subject to dismissal on this ground.  Even if the Court were to reach the merits of the claim, however, Plaintiff cannot demonstrate that he was a qualified individual with a disability because he had persistent issues with passing the polygraph examination on the issue of mishandling classified information—an essential function of his job.  Nor can Plaintiff demonstrate that Defendant denied him a reasonable accommodation when Plaintiff failed to request an accommodation based on his disability before he was reassigned to DIA Headquarters.

With respect to Plaintiff's disparate treatment claim, the undisputed record shows that both DIA and SOCOM had an honest belief that Plaintiff's failure to pass the polygraph examination on the issue of mishandling classified information—among other issues—presented an unacceptable risk in Plaintiff's then-current position.  This honest belief is corroborated by contemporaneous documentary evidence detailing the concerns that Defendant had with Plaintiff.  And against this evidence, Plaintiff cannot present a triable issue of pretext.  Moreover, Plaintiff has not alleged any facts that reveal that Defendant maintains a facially neutral employment practice that has a significantly discriminatory impact on those with disabilities.  His allegations in the complaint regarding polygraph passage rates do not show that individuals with disabilities fail to pass the examinations at a higher rate than those without.  Accordingly, Plaintiff's disparate treatment claim should either be dismissed, or Defendant should be granted summary judgment on that claim.

## BACKGROUND

Defendant hereby incorporates his Statement of Undisputed Material Facts and the exhibits thereto, which are filed herewith.

Plaintiff is a former Intelligence Analyst with DIA.  Ex. 1 – Position Description.  At all times relevant to Plaintiff's claims, Plaintiff served at the SOCOM facility in Tampa, Florida.  *Id.* SOCOM and DIA are separate entities within the Department of Defense.  Plaintiff worked at the Joint Intelligence Operations Center—a center within SOCOM at which both DIA and SOCOM personnel worked.  At all relevant times, Plaintiff needed to maintain a Top Secret security clearance to perform his roles as an Intelligence Analyst because he regularly handled Top Secret national security matters.  Ex. 2- DIA Instruction 1400.008 at 165.

The DIA maintains an Insider Threat Program that applies to agency employees—including Plaintiff—who need to maintain a Top Secret security clearance and handle Sensitive Compartmented Information.  Ex. 3 - ITP Policy.  In pertinent part, the Insider Threat Program provides that employees required to handle Top Secret and Sensitive Compartmented Information are subjected to ongoing examinations to determine whether they pose unacceptable security risks. *Id.*  This includes subjecting employees to periodic polygraph examinations.  Ex. 2 at 165-66.  As part of these examinations, DIA security personnel assess employees on five separate topics that could signal national security concerns: sabotage, espionage, terrorism, mishandling classified information, and unauthorized foreign contact.  Ex 4 - ICPG 704.6 at 1.

Between 2011 and 2012, Plaintiff was subjected to but failed to wholly pass a polygraph examination on four separate occasions: March 23, 2011; March 25, 2011; January 31, 2012, and June 26, 2012.  Ex 5 – Pl. Discovery Responses at 1.  For example, in both of the March 2011 polygraphs, Plaintiff failed to pass the examinations regarding issues of mishandling classified information and unauthorized foreign contacts.  Ex. 6 – DIA Emails at 1-2.  On these two elements,

the examiner expressed "No Opinion."[2]  Because of his results, and consistent with Agency policy guidance, DIA permitted Plaintiff to be re-examined; however, due to resource constraints in the polygraph program, Plaintiff had to wait until 2012 to be re-examined when the DIA examiners were scheduled to return to SOCOM for testing.  *Id.* at 8.  Plaintiff received two more examinations in 2012—once on January 31, 2012, and another on June 26, 2012.  Ex 5 – Pl. Discovery Responses at 1.  These re-examinations again revealed unresolved issues on the mishandling of classified information and unauthorized foreign contacts elements.  Ex. 6 – DIA Emails at 1-2.  In a subsequent 2012 security personnel investigation, in fact, Plaintiff admitted to several issues, including (1) performing research on polygraph examinations, (2) unreported foreign contacts, and (3) being uncomfortable with the SOCOM practices for handling certain classified or sensitive information.  Ex. 6 – DIA Emails at 1-4; Ex. 7 – Soo-Tho Report; Ex. 8 - DIA Agent Report.

On October 17, 2023, Plaintiff met with a psychologist named Dr. Heather Magee for the first time.  Ex. 9 – Magee Letter.  Dr. Magee issued a report that same day that stated that she treated him for stress, which Plaintiff had reported related to a change in job responsibilities in the prior three or four months.  Ex. 17 – Magee Report.  One month later, Dr. Magee wrote a letter on November 14, 2013, stating that she had diagnosed Plaintiff with "situational anxiety" and recommending that Plaintiff be allowed sick leave to address his reported symptoms of chest tightness, shortness of breath, trembling, sweating, and concentration difficulties.  Ex. 9 – Magee Letter.  She also noted, however, that she anticipated that resolving Plaintiff's situational occupational stress would lessen these symptoms.  *Id.*  These two letters from Dr. Magee are the

---

[2]     Under Department of Defense Instruction 5210.91, Enclosure 4, section (c)(2), an examiner can rate the results of a specific test series in one of the following five respects: (a) No Deception Indicated (NDI); (b) Deception Indicated (DI); (c) No Opinion (NO); (d) No Significant Response (NSR); or (e) Significant Response (SR).

first instances where Plaintiff reported any disability to DIA or SOCOM, and both were submitted to DIA and SOCOM after Plaintiff already had failed to pass the polygraph on four separate occasions.

DIA Insider Threat Program psychologists also examined Plaintiff to determine whether there were any psychological factors that contributed to Plaintiff's inability to pass the polygraph examinations.  In accordance with DIA's policies, Plaintiff met with an agency staff psychologist named Dr. Soo-Tho on November 6, 2013.  Ex. 6 – DIA Emails at 1-2.  Plaintiff informed Dr. Soo-Tho of his disability during this meeting.  Plaintiff also admitted to Dr. Soo-Tho in a follow-up appointment on December 2, 2013, however, that Plaintiff had conducted "extensive research on polygraph" examinations and estimated that he and his wife had read hundreds of articles on polygraphs.  Ex. 7 – Soo-Tho Report; Ex. 8 - DIA Agent Report.  Plaintiff also equivocated on whether he specifically researched countermeasures to use during polygraph examinations or whether he had disclosed this research to security personnel previously.  Ex. 7 – Soo-Tho Report.

Based on his assessment of Plaintiff, Dr. Soo-Tho advised DIA that Plaintiff was unlikely to be a good candidate for future polygraph testing because of his "verbalized intent and demonstrated efforts to subvert" the testing.  Ex. 6 – DIA Emails at 1-4; Ex. 7 – Soo-Tho Report. Dr. Soo-Tho also advised that Plaintiff's "lack of insight, proclivity to externalize blame, and lack of candor probably limits the degree to which he may be willing and/or able to cooperate with realistic threat mitigation strategies." Ex. 6 – DIA Emails at 1-4; Ex. 7 – Soo-Tho Report.

On February 6, 2014, DIA issued Plaintiff a letter regarding his ability to continue accessing Sensitive Compartmented Information.  Ex. 10 - Ex 10 Feb. 6, 2014 Letter.  The letter informed Plaintiff that he was receiving an advisory letter due to his four unsuccessful polygraph examinations in 2011 and 2012, and because of Plaintiff's subsequent diagnosis of an anxiety

disorder.  *Id.*  The letter advised Plaintiff that he was not being penalized for seeking treatment for his mental health and in fact a favorable security clearance decision had been made by DIA because of Plaintiff's representation that he would seek mental health care and comply with the treatments recommended to him.  *Id.*  The letter made clear, however, that the determination was contingent on those two representations by Plaintiff and that his eligibility to access Sensitive Compartmented Information would be subject to "continuous evaluation."  *Id.*

Separate and apart from the DIA security review of Plaintiff, SOCOM leadership expressed concerns with Plaintiff's unresolved security issues and inability to demonstrate that he could safely handle classified and sensitive information.  Ex. 6 – DIA Emails at 1-4.  Specifically, SOCOM lost trust in Plaintiff's abilities because he repeatedly failed to pass the polygraph examination on the issue of mishandling classified information, admitted to failing to report foreign contacts, and admitted to researching how to pass polygraph tests.  *Id.*  Further, each of the positions at SOCOM that were filled by a DIA employee required the employee to handle Top Secret and Sensitive Compartmented Information.  *Id.*  As a result, on May 12, 2014, SOCOM's deputy commander, Lieutenant General John Mulholland, determined that SOCOM would not retain Plaintiff's services.  Ex. 11 - May 27, 2014 Letter.  Colonel Shawn Nilius verbally informed Plaintiff of Mulholland's decision that same day, and provided Plaintiff with a memorandum reiterating the decision on May 27, 2014.  *Id.*

DIA informed Plaintiff of his replacement assignment on May 21, 2014.  Steven McIntosh, DIA Insider Threat Program Coordinator, in conjunction with Stephen Norton, DIA Director of Security, decided to relocate Plaintiff from SOCOM to DIA Headquarters in the National Capital Region after SOCOM prevented Plaintiff from working in SOCOM facilities.  Ex. 12 – May 21, 2014 Letter.  DIA reassigned Plaintiff to this position because it believed that at Headquarters it

could more effectively manage the risk associated with Plaintiff's repeated failure to pass a polygraph examination.  Ex. 13 - McIntosh Interrogatories at 338-39.  Plaintiff appealed this decision on June 4, 2014.  Ex. 14 - June 4. 2014 Letter from Plaintiff.  In response to this appeal, McIntosh and Norton explored whether there was a position in U.S. Central Command to which DIA could reassign Plaintiff to avoid having to relocate to Washington, D.C.  Ex. 13 - McIntosh Interrogatories at 339.  Central Command declined to locate a position for Plaintiff because it viewed Plaintiff as posing a risk to its sensitive information.  *Id.* at 339-40.  Accordingly, Norton upheld the decision to reassign Plaintiff to DIA Headquarters.[3]  Ex. 15 - Norton Interrogatories at 365.

> Plaintiff timely submitted an EEO charge for two claims:
>
> On 12 May 2014, you were informed by COL Shawn Nilius, Director, that USSOCOM had decided not to retain your services due to your inability to successfully complete the Polygraph Creditability Assessment (PCA) examinations.
>
> On 27 May 2014, you received notice of a reassignment action, which requires you to move to the National Capital Region from Tampa, Florida. This notification came from Mr. Steven McIntosh, DIA Insider Threat Program Coordinator, and was a result of USSOCOM's decision not to retain your employment.

Ex. 16 - Notice of Accepted Claims.  Ultimately, on May 9, 2022, the EEOC affirmed that Defendant did not discriminate against Plaintiff because of his disability.  *See Ward B. v. Austin*, EEOC Appeal No. 2020005490 (May 9, 2022), *available at* https://www.eeoc.gov/sites/default/files/decisions/2022_07_20/2020005490.pdf (last accessed Sept. 25, 2023).  Plaintiff moved for reconsideration of this decision, but the EEOC denied that motion on November 7, 2022.

---

[3]     Rather than move to fill this position, Plaintiff submitted his disability retirement paperwork.

Plaintiff filed the instant lawsuit on February 3, 2023.  Plaintiff contends that Defendant has discriminated against him in several respects because of his disability.  ECF No. 1 at 3.

## LEGAL STANDARDS

### I.    Rule 12(b)(1)

Rule 12(b)(1) requires dismissal of claims where the Court "lack[s] jurisdiction over the subject matter."  Fed. R. Civ. P. 12(b)(1).  "Rule 12(b)(1) presents a threshold challenge to the Court's jurisdiction . . . [and] the Court is obligated to determine whether it has subject-matter jurisdiction in the first instance."  *Curran v. Holder*, 626 F. Supp. 2d 30, 32 (D.D.C. 2009) (internal citation and quotation marks omitted).  "A federal court presumptively lacks jurisdiction in a proceeding until a party demonstrates that jurisdiction exists."  *Commodity Futures Trading Comm'n v. Nahas*, 738 F.2d 487, 492 n.9 (D.C. Cir. 1984); *see Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("[I]t is presumed that a cause lies outside [the federal courts'] limited jurisdiction.").  "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).

A court may resolve a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(1) in two ways:  a facial challenge or a factual challenge.  In a facial challenge, the court may decide the motion based solely on the factual allegations in the Complaint.  *Herbert v. National Academy of Science*, 974 F.2d 192, 197 (D.C. Cir. 1992); *Al-Owhali v. Ashcroft*, 279 F. Supp. 2d 13, 20 (D.D.C. 2003) ("A facial challenge attacks the factual allegations of the complaint that are contained on the face of the complaint.") (internal quotations and citations omitted).  In contrast, to determine the existence of jurisdiction in a factual challenge, a court may look beyond the allegations of the complaint, consider affidavits and other extrinsic information, and ultimately weigh the conflicting evidence.  *See Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) (with respect to a factual challenge, the district court may consider materials

outside of the pleadings to determine whether it has subject matter jurisdiction over the claims);
*Herbert*, 974 F.2d at 197 (same).

## II.   <u>Rule 12(b)(6)</u>

A motion made under Rule 12(b)(6) tests whether a complaint has successfully "state[d] a
claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  While detailed factual
allegations are not necessary to withstand a Rule 12(b)(6) challenge, a plaintiff must nonetheless
provide "more than labels or conclusions" or "a formulaic" recitation of the elements of a cause of
action."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).  "To survive a motion to
dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to
relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*,
550 U.S. at 570).  A claim is facially plausible only when a plaintiff pleads factual content that
enables the Court to "draw [a] reasonable inference that the defendant is liable for the misconduct
alleged."  *Iqbal*, 556 U.S. at 678.

While the Court must assume that any "well-pleaded factual allegations" in a complaint
are accurate, conclusory allegations "are not entitled to the assumption of truth."  *Id.* at 679.
Further, the Court "need not accept inferences drawn by the plaintiff if such inferences are
unsupported by the facts set out in the complaint.  Moreover, the court is not bound to accept as
true a legal conclusion couched as a factual allegation."  *Jack's Canoes & Kayaks, LLC v. Nat'l
Park Serv.*, 937 F. Supp. 2d 18, 27 (D.D.C. 2013) (internal quotation marks and citations omitted).
A complaint that "pleads facts that are merely consistent with a defendant's liability, [ ] stops short
of the line between possibility and plausibility of entitlement to relief," and is insufficient to
withstand a Rule 12(b)(6) motion to dismiss.  *Iqbal*, 556 U.S. at 679 (quoting *Twombly*, 550 U.S.
at 55, 557) (internal quotation marks omitted).  "In deciding a motion under Rule 12(b)(6), a court
may consider the facts alleged in the complaint, documents attached to the complaint as exhibits

or incorporated by reference, and matters about which the court may take judicial notice." *Haines v. Gen. Pension Plan of Int'l Union of Operating Eng'rs*, 965 F. Supp. 2d 119, 123 (D.D.C. 2013) (citing *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007) (internal quotation marks and citation omitted)).

This standard applies equally in employment cases. *See, e.g., Horsey v. Dep't of State*, 170 F. Supp. 3d 256, 263 (D.D.C. 2016); *Brookens v. Solis*, 635 F. Supp. 2d 1, 4 n.4 (D.D.C. 2009); *Nichols v. Truscott*, 424 F. Supp. 2d 124, 132 (D.D.C. 2006). Although a plaintiff need not specifically plead the facts supporting a *prima facie* case, the Court is to rely on the factual allegations in the Complaint as pled and, along with the reasonable inferences contained therein, draw appropriate legal conclusions from those facts. *See Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 510 n.2 (2002). Simply asserting discrimination or retaliation is not enough to survive a motion to dismiss. *See Horsey*, 170 F. Supp. 3d at 263; *Menoken v. McGettigan*, 273 F. Supp. 3d 188, 202-03 (D.D.C. 2017) (dismissing plaintiff's retaliation claims for failing to allege facts which would establish the inference of retaliation); *Wells v. Hense*, 235 F. Supp. 3d 1, 10 & n.4 (D.D.C. 2017) (requiring complaint to plead facts plausibly suggesting an action was taken because of protected activity); *Cavalier v. Catholic Univ. of Am.*, 306 F. Supp. 3d 9, 37-38 (D.D.C. 2018) (same); *Mohmand v. Broad. Bd. of Governors*, Civ. A. No. 17-0618 (RDM), 2018 WL 4705800, at *4-6 (D.D.C. Sep. 30, 2018) (to survive a motion to dismiss, the facts alleged in the complaint allegations must be sufficient to allow a reasonable trier of fact to find an objective, tangible harm). Thus, "[w]hile a plaintiff is not required to plead each element of [a] *prima facie* case to survive a motion to dismiss, the Court may explore the plaintiff's *prima facie* case at the dismissal stage to determine whether the plaintiff can ever meet his initial burden to establish a *prima facie* case." *Brantley v. Kempthorne*, Civ. A. No. 06-1137, 2008 WL 2073913, at *6

(D.D.C. May 13, 2008), *summ. aff'd*, No. 08-5210 (D.C. Cir. Dec. 23, 2008); *Menoken*, 273 F.

Supp. 3d at 201-02; *Rattigan v. Gonzales*, 503 F. Supp. 2d 56, 72 (D.D.C. 2007).

### III.    <u>Rule 56</u>

Summary judgment is appropriate when the pleadings and evidence show that "there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v.

Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).

A "material fact" is one whose existence affects the outcome of the case. *Anderson*, 477 U.S. at

248. A "genuine dispute" exists when the non-movant produces sufficient evidence of a material

fact so that a fact finder is required to resolve the parties' differing versions at trial. *Id.*

Summary judgment endeavors to streamline litigation by disposing of factually

unsupported claims or defenses and thereby determining whether trial is genuinely necessary. See

*Celotex*, 477 U.S. at 323-324. The party seeking summary judgment must demonstrate the absence

of a genuine issue of material fact. *See id.* A moving party may succeed on summary judgment

by showing that the non-moving party "fail[ed] to make a showing sufficient to establish the

existence of an element essential to that party's case, and on which that party will bear the burden

of proof at trial." *Id.* at 322. A movant may also succeed by pointing to the absence of evidence

proffered by the nonmoving party. *Id.*

Once the moving party has met its burden, the nonmoving part may not rest upon the mere

allegations or denials of his pleading but must instead establish more than "the mere existence of

a scintilla of evidence" in support of his position. *Anderson*, 477 U.S. at 252. The non-movant

must point to specific facts in the record that reveal a genuine issue that is suitable for trial. *See

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 575 (1986)). Thus, summary

judgment is due if the non-moving party fails to offer "evidence on which the jury could reasonably

find for the [nonmovant]." *Id.*  When determining whether a genuine issue of material fact exists, the trier of fact must view all facts, and reasonable inferences drawn therefrom, in the light most favorable to the nonmoving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).  Nevertheless, conclusory assertions offered without any evidentiary support do not establish a genuine issue for trial.  *See Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

## ARGUMENT

Plaintiff presents three theories of disability discrimination.  He alleges that Defendant failed to accommodate his disability (anxiety) by refusing to let him maintain his current position without needing to resolve issues relating to mishandling classified information arising from his prior polygraph examinations—notwithstanding the fact that his position required him regularly to work with Top Secret and Sensitive Compartmented Information.  He also contends that Defendant treated him differently on the basis of his disability when DIA and SOCOM informed Plaintiff that he was no longer permitted to work at SOCOM and was to be reassigned to DIA Headquarters instead.  Plaintiff also alleges that he was also subjected to unlawful discrimination through disparate impact.

None of these arguments has merit.  Plaintiff has failed to exhaust his failure to accommodate claim, and in any event he also has failed to plead a prima facie case for that claim. The undisputed record shows that Defendant's legitimate, non-discriminatory reason for reassigning Plaintiff is not a pretext for discrimination.  Finally, Plaintiff fails appropriately to plead a disparate impact claim.

## I.     Failure to Accommodate

### A.     Exhaustion of Remedies

Section 501 of the Rehabilitation Act expressly limits judicial review to employees "aggrieved by the final disposition" of their administrative "complaint."  29 U.S.C. § 794a(a)(1).  Thus, "[e]xhaustion of administrative remedies is a jurisdictional requirement for claims arising under the Rehabilitation Act."  *Koch v. Walter*, 935 F. Supp. 2d 164, 170 (D.D.C. 2013) (citing *Spinelli v. Goss*, 446 F.3d 159, 162 (D.C. Cir. 2006) ("The [Rehabilitation] Act limits judicial review to employees aggrieved by the final disposition of their administrative complaint, thereby mandating administrative exhaustion." (internal quotation marks and citations omitted))).  "[E]xhaustion of administrative remedies under the Rehabilitation Act is a jurisdictional requirement and, therefore, cannot be waived or tolled."  *Uzlyan v. Solis*, 706 F. Supp. 2d 44, 56 (D.D.C. 2010).  The plaintiff bears the burden of pleading and proving exhaustion with regard to each individual discrete act, *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002), and failure to do so results in him "los[ing] the ability to recover" for that alleged act, *Doak v. Johnson*, 19 F. Supp. 3d 259, 268 (D.D.C. 2014), *aff'd,* 798 F.3d 1096 (D.C. Cir. 2015); *see also Koch*, 935 F. Supp. 2d at 170 ("it is [the plaintiff's] burden to show that he has exhausted his claims administratively before filing suit").

To exhaust administrative remedies for a claim brought under the Rehabilitation Act or Title VII, the complainant must contact her agency's EEO counselor to initiate informal counseling "within 45 days of the date of the matter alleged to be discriminatory or, in the case of a personnel action, within 45 days of the effective date of the action."  29 C.F.R. § 1614.105(a)(1); *see Doak*, 19 F. Supp. 3d at 270 ("[T]he Court cannot hear the plaintiff's failure to accommodate claims because she did not timely contact an EEO counselor within 45 days of the [agency] issuing a decision that she viewed as discriminatory."); *Latson v. Holder*, 82 F. Supp. 3d 377, 384 (D.D.C.

2015) (applying same rule to claims brought under Title VII).  If the matter is not resolved informally, the complainant may then file a formal complaint with the EEO office against the agency within 15 days of receipt of notice from the EEO counselor.  29 C.F.R. §§ 1614.105(d); 1614.106(a).  Once an employee files a formal complaint, the agency must "conduct an impartial and appropriate investigation of the complaint within 180 days" of that filing, *id.* § 1614.106(e)(2), and the employee may subsequently file suit in federal district court but must do so within 90 days of receipt of the agency's final determination, or, if the agency does not take final action, after 180 days have elapsed since the filing of the complaint with the agency.  *See* 29 U.S.C. § 794a(a)(1); 29 C.F.R. § 1614.407(c).

Here, the undisputed evidence reveals that Plaintiff did not exhaust his failure to accommodate claim.  Plaintiff wholly failed to identify a failure to accommodate claim in either his informal or formal EEO charge.  Ex. 16 - Notice of Accepted Claims.  Accordingly, Plaintiff has failed to administratively exhaust this claim, and any attempts to do so now would be untimely. 29 C.F.R. § 1614.105(a)(1); *Spinelli*, 446 F.3d at 162; *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995).

### B.    Prima Facie Case

To establish a claim of disability discrimination based on the failure to provide a reasonable accommodation, plaintiff has the burden of establishing: (1) that he suffers from a disability as defined in 29 C.F.R. § 1614.203; (2) that he is an otherwise qualified individual with a disability; (3) that the employer was aware of his disability; and (4) he was denied a reasonable accommodation for the disability.  *Scarborough v. Natsios*, 190 F. Supp. 2d 5, 19 (D.D.C. 2002); *Bonnette v. Shinseki*, 907 F. Supp. 2d 54, 77 (D.D.C. 2012) (stating elements of a *prima facie* case of failure to accommodate).  If a plaintiff establishes a *prima facie* case of failure to accommodate, then the employer must refute the evidence presented by the plaintiff or demonstrate that the

accommodation would have imposed an undue burden or was otherwise unreasonable. *See Bonnette*, 907 F. Supp. 2d at 77; *Barth v. Gelb*, 2 F.3d 1180, 1186-87 (D.C. Cir. 1993). At all times, however, "[t]he burden . . . remains with the plaintiff to prove [her] case by a preponderance of the evidence." *Barth*, 2 F.3d at 1186. Unlike Title VII claims, the burden-shifting framework of *McDonnell Douglas* does not apply to failure to accommodate claims raised under the Rehab Act; instead, these claims "may be tested through the application of traditional burdens of proof." *Id*. at 1185-86.

Assuming for the sake of this motion that Plaintiff had a qualifying disability, Plaintiff is unable to prove that he was an otherwise qualified individual. "The term 'qualified,' with respect to an individual with a disability, means that the individual satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires and, with or without reasonable accommodation, can perform the essential functions of such position." 29 C.F.R. § 1630.2(m). Moreover, EEOC guidance states that "[w]hen an employee does not give notice of the need for accommodation until after a performance problem has occurred, reasonable accommodation does not require that the employer [ ] tolerate or excuse the poor performance." EEOC, "Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act," Question 6, *available at* https://www.eeoc.gov/laws/guidance/applying-performance-and-conduct-standards-employees-disabilities.

Plaintiff was not qualified for his Intelligence Analyst position because he had persistent issues passing the four separate polygraph examinations that flagged issues with mishandling classified information and unauthorized foreign contacts. It is undisputed that it was a requirement of his position to be subjected to and pass periodic polygraph examinations, except in special circumstances not applicable here. Ex. 2 at 165-66; Ex 4 - ICPG 704.6 at 1. It is also beyond

dispute that Plaintiff needed to be trusted to handle Top Secret and Sensitive Compartmented Information in his then-current position or any other DIA position at SOCOM.  Ex. 2 at 165-66; Ex 4 - ICPG 704.6 at 1.  Plaintiff's repeated issues with the polygraph—which included unresolved issues with mishandling classified information—demonstrated to DIA and SOCOM leadership that Plaintiff had an unresolved risk that precluded him from performing an essential function of his job at SOCOM.  Consequently, Plaintiff cannot make out a *prima facie* showing for a failure to accommodate claim.

Plaintiff also fails to demonstrate that he was denied a reasonable accommodation.  "An underlying assumption of any reasonable accommodation claim is that the plaintiff-employee has requested an accommodation which the defendant-employer has denied."  *Flemmings v. Howard Univ.*, 198 F.3d 857, 861 (D.C. Cir. 1999).  Hence, "[t]o create an issue for the jury," Plaintiff must point to "sufficient evidence" in the record showing that he requested an accommodation and "that, after the request, [defendant] refused to make an accommodation."  *Stewart v. St. Elizabeths Hosp.*, 589 F.3d 1305, 1308 (D.C. Cir. 2010); *see Edwards v. EPA*, 456 F. Supp. 2d 72, 102 (D.D.C. 2006) (JDB) ("[T]he dispositive issue is whether [plaintiff] requested and was denied an accommodation.").  As with all other elements of the *prima facie* case, "the employee has the burden of identifying reasonable accommodations."  *Graffius v. Shinseki*, 672 F. Supp. 2d 119, 126 (D.D.C. 2009).  The plaintiff bears the burden to show that the requested accommodation is reasonable on its face—the sort of accommodation that normally occurs."  *Morris v. Jackson*, 994 F. Supp. 2d 38, 47 (D.D.C. 2013) (citation omitted).  Critically, however, the D.C. Circuit has held that "an employer is not required to provide an employee that accommodation he requests or prefers[;] the employer need only provide some reasonable accommodation."  *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1305 (D.C. Cir. 1998) (en banc) (internal quotation marks omitted).  Here,

the undisputed record reveals that Plaintiff never submitted a request for a reasonable accommodation prior to SOCOM informing Plaintiff that he was no longer permitted in SOCOM's Tampa, Florida facility.  As such, Defendant could not have denied a reasonable accommodation where one has not been sought.  Plaintiff's *prima facie* case thus fails for this additional reason.

## II.    <u>Disparate Treatment</u>

Claims of discrimination and retaliation involving circumstantial evidence are analyzed under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973).  Under this framework, after the employee establishes a *prima facie* case of discrimination or retaliation, the burden shifts to the employer to provide a legitimate, nondiscriminatory or nonretaliatory reason for its action.  *Figueroa v. Pompeo*, 923 F.3d 1078, 1086 (D.C. Cir. 2019); *Wiley v. Glassman*, 511 F.3d 151, 156 (D.C. Cir. 2007).  If the employer does so, the burden shifts back to the employee to prove that the reason stated was mere pretext and that she suffered intentional discrimination.  *Figueroa*, 923 F.3d at 1086.  In the case of retaliation claims, to survive summary judgment, the employee must be able to show that retaliation was the but for cause of the adverse action.  *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).  "This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."

When the employer properly presents a legitimate, nondiscriminatory or nonretaliatory reason, however, the court "need not—and should not—decide whether the plaintiff actually made out a *prima facie* case," and should instead conserve its limited resources by proceeding to the third prong.  *Brady v. Off. of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008).  Particularly at summary judgment, the "general expectation [is] that . . . the District Court will focus on the third prong."  *Figueroa*, 923 F.3d at 1086.  Focus on the third *McDonnell-Douglas* prong, *i.e.*, the evidence of pretext, is appropriate, however, "only if the parties properly move past the second

step." *Id.* at 1087.  To do that, "an employer at the second prong must proffer admissible evidence showing a legitimate, nondiscriminatory, clear, and reasonably specific explanation for its actions." *Id.* at 1092; *see also Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142 (2000) (employer's burden at step two "is one of production, not persuasion," and does not involve "credibility assessment[s]").

The D.C. Circuit laid out four factors that can be used to determine whether an employer's evidentiary proffer is adequate: (1) "the employer must produce evidence that a factfinder may consider at trial (or a summary judgment proceeding)"; (2) if a factfinder believes the evidence, it "must reasonably be able to find that the employer's action was motivated by a nondiscriminatory reason"; (3) the "nondiscriminatory explanation must be . . . facially credible in light of the proffered evidence"; and (4) the evidence must present a "clear and reasonably specific explanation," such that the employee has "a full and fair opportunity to attack the explanation as pretextual." *Figueroa*, 923 F.3d at 1087 (citation and internal quotation marks omitted).  By contrast, "offering a vague reason . . . is the equivalent of offering no reason at all." *Id.* at 1092.

If the defendant meets this threshold, then the court "must resolve one central question," namely, whether "the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of [a protected status or prior protected activity]." *Brady*, 520 F.3d at 494.  In resolving this central question, courts look to, among other things, "(1) the plaintiff's *prima facie* case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff (such as independent evidence of

discriminatory statements or attitudes on the part of the employer).” *Hampton v. Vilsack*, 685 F.3d 1096, 1100 (D.C. Cir. 2012) (internal quotation marks omitted).

To survive summary judgment based solely on evidence of pretext, a plaintiff must demonstrate that a “reasonable jury not only could disbelieve the employer’s reasons, but also could conclude that the employer acted, at least in part, for a prohibited reason.” *Walker v. Johnson*, 798 F.3d 1085, 1096 (D.C. Cir. 2015).  But “courts are without authority to second-guess an employer’s personnel decision absent demonstrably discriminatory motive.” *Waterhouse v. District of Columbia*, 298 F.3d 989, 995 (D.C. Cir. 2002).  Accordingly, “[o]nce the employer has articulated a nondiscriminatory explanation for its action . . . the issue is not ‘the correctness or desirability of [the] reasons offered . . . [but] whether the employer honestly believes in the reasons it offers.’” *Morris v. McCarthy*, 825 F.3d 658, 671 (D.C. Cir. 2016) (alterations in original).

Here, Defendant has met his burden at step two for establishing a legitimate, non-discriminatory reason for determining that Plaintiff could no longer work at SOCOM and needed to be transferred to a position in DIA Headquarters because every available position in SOCOM required Plaintiff to be trusted with handling Top Secret and Sensitive Compartmented Information—a task that SOCOM no longer trusted Plaintiff to do—and DIA believed that it could monitor the risk posed by Plaintiff in Headquarters more effectively than if he worked elsewhere. This rationale is supported by contemporaneous evidence of Plaintiff’s repeated failing of his polygraph examinations regarding the mishandling classified information and foreign contacts. For example, Dr. Soo-Tho—the medical professional tasked with assessing whether there were any psychological factors that contributed to Plaintiff’s inability to pass the polygraph examinations—detailed in his assessment of Plaintiff that Plaintiff failed to pass four separate polygraph examinations on March 23, 2011; March 25, 2011; January 31, 2012, and June 26, 2012.

Ex. 7 – Soo-Tho Report.  That report also stated that Plaintiff was "disinclined to be forthcoming and/or forthright when his personal agenda were at stake" when asked questions by Dr. Soo-Tho. *Id.*  Dr. Soo-Tho indicated that Plaintiff offered "lengthy, circuitous and implausible [statements], or simply assert[ed] that he is a target of nebulous conspiracies" when asked about inconsistencies in Plaintiff's self-disclosures.  *Id.*  Plaintiff also inadvertently disclosed to Dr. Soo-Tho that Plaintiff had conducted "extensive research on polygraph" examinations and estimated that he and his wife had read hundreds of articles on polygraphs; and equivocated on whether he specifically researched countermeasures to use during polygraph examinations or whether he had disclosed this research to security personnel previously.  *Id.*  Accordingly, Dr. Soo-Tho reasonably assessed that Plaintiff was unlikely to be a good candidate for future polygraph testing because of his "verbalized intent and demonstrated efforts to subvert" the testing, and that Plaintiff's "lack of insight, proclivity to externalize blame, and lack of candor probably limits the degree to which he may be willing and/or able to cooperate with realistic threat mitigation strategies."  *Id.*

If a jury were to believe this evidence, it could reasonably find that Defendant reasonably believed that Plaintiff's repeated inability to pass the polygraph examination posed a risk to Top Secret and Sensitive Compartmented Information in his then-current role and that the best way to manage the risk associated with Plaintiff's inability to pass the examination was to reassign him to a position in DIA Headquarters where DIA could more effectively monitor him.  *See id.*  The contemporaneous documentary evidence set forth Defendant's justification with "'clear and reasonably specific'" detail.  *Id.* (quoting *Segar v. Smith*, 738 F.2d 1249, 1269 (D.C. Cir. 1984)).  Accordingly, Defendant has met his burden under step two of the *McDonnell-Douglas* framework.  *Figueroa*, 923 F.3d at 1087.

Plaintiff is unable to meet his burden to demonstrate that a "reasonable jury not only could disbelieve the employer's reasons, but also could conclude that the employer acted, at least in part, for a prohibited reason." *Walker*, 798 F.3d at 1096; *see also Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (explaining that a court "may not second-guess an employer's personnel decision absent demonstrably discriminatory motive"). For all the reasons stated above, no reasonable jury could conclude that it was Plaintiff's anxiety disorder—rather than the four failed polygraph examinations that preceded Plaintiff's first report of a disability—that was the real reason that he was reassigned from his then-current position in SOCOM to a position in DIA's Headquarters. The undisputed evidence reveals that both DIA and SOCOM had expressed concerns about Plaintiff's ability to perform the essential functions of his job as an Intelligence Analyst—*i.e.*, handle Top Secret information—because of his repeated failure of the polygraph examinations and the subsequent security investigation. There is no evidence from which a reasonable jury could conclude this reason is pretextual. Thus, Defendant is entitled to summary judgment on Plaintiff's disparate treatment claim.

## III.   **Disparate Impact**

Last, the Complaint references disparate impact—although he does not expressly assert a disparate impact claim. *Compare* ECF No. 1 at 2 ("Furthermore, this case also involves unlawful discrimination through disparate impact. . . . The Agency has purposely withheld this information because it would prove that I was in fact disparately impacted."), *with id.* at 3 (pleading that the only discriminatory conduct that Plaintiff contends occurred includes (1) failure to accommodate and (2) disparate treatment). Even broadly construing *pro se* Plaintiff's Complaint as asserting a disparate impact claim, however, this Court should dismiss such a claim or grant Defendant summary judgment because Plaintiff fails adequately to plead a plausible disparate impact claim.

"To make a *prima facie* showing of disparate impact discrimination, the plaintiff must produce sufficient evidence to allow a reasonable trier of fact to conclude that a 'facially neutral employment practice had a significantly discriminatory impact.'" *Menoken v. Berry*, 408 F. App'x 370, 372 (D.C. Cir. 2010) (quoting *Connecticut v. Teal*, 457 U.S. 440, 445 (1982)). Typically, a plaintiff makes such a showing by submitting statistical evidence showing that the challenged practice causes significant disparities. *See, e.g.*, *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 987 (1988); *Aliotta v. Bair*, 614 F.3d 556, 565 (D.C. Cir. 2010) (noting that in the context of a claim of disparate impact under the ADEA, to demonstrate a *prima facie* case of disparate impact, the plaintiff was required to "offer statistical evidence of a kind and degree sufficient to show the employment decision disproportionately impacts older employees"); *Onyewuchi v. Mayorkas*, 766 F. Supp. 2d 115, 133 (D.D.C. 2011). If a plaintiff makes that showing, "the burden shifts to the employer to 'demonstrate that the challenged practice is job related for the position in question and consistent with business necessity.'" *Anderson v. Zubieta*, 180 F.3d 329, 339 (D.C. Cir. 1999) (quoting 42 U.S.C.2000e–2(k)(1)(A)(i)).

Here, Plaintiff fails to allege any facts that would permit the trier of fact to infer that Defendant's facially neutral employment practice had a significantly discriminatory impact on those with disabilities. The sum total of Plaintiff's allegations regarding any putative disparate impact claim is as follows: (1) 22% of polygraph examinations result in the same outcome as Plaintiff's; (2) Defendant administers thousands of polygraph examinations annually; (3) the number of individuals who received the same results as Plaintiff "would be in the hundreds, if not thousands"; and (4) the lack of records demonstrating precisely the number of individuals who received the same outcome as Plaintiff "prove[s] that [Plaintiff] was in fact disparately impacted." ECF No. 1 at 2. The last of these allegations, however, is no more than a legal conclusion, which

is not entitled to an assumption of truth. *Iqbal*, 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679; *see also Easaw v. Newport*, 253 F. Supp. 3d 22, 30 (D.D.C. 2017) ("Stating simply 'I was turned down for a job because of my [protected class]' is precisely the kind of conclusory allegation that is patently incompatible with *Twombly* and *Iqbal*'s pleading requirements.").

These allegations fall far short of pleading a plausible disparate impact claim. Critically, Plaintiff's Complaint does not allege that any facially neutral practice has had a disproportionate impact on employees with disabilities. Although Plaintiff alleges that 22% of polygraph examinations administered by Defendant result in the same outcome that Plaintiff received, for example, the Complaint is silent on what proportion of that 22% figure are disabled employees or those without disabilities. Similarly, Plaintiff asserts that Defendant administered thousands of polygraph examinations annually and that "hundreds or thousands" receive the same result of Plaintiff, he fails to allege any statistics about what proportion of those employees are disabled or not. Indeed, the only reasonable inference from these allegations is that Plaintiff—an individual with a disability—is among an indeterminate number of employees—both disabled and not disabled—that receive a "No Opinion" or "Significant Response" result on a polygraph examination. But the Complaint here does not permit any inference that disabled employees like Plaintiff are disproportionately impacted by an employment practice of Defendant.

Case law within this Circuit and District is instructive on this point. For example, the D.C. Circuit concluded that a group of plaintiffs adduced statistics demonstrating a statistically significant "disparity between the percentages of black versus white U.S. citizens who receive the higher salary and benefits, as well as between the percentages of U.S. citizens of American versus Panamanian or Hispanic national origin who receive them." *Anderson*, 180 F.3d at 339. Another

court within this District likewise determined that the plaintiff had sufficiently alleged a disparate impact claim where she "adduce[d] statistics purporting to show that female trainees fail to meet these requirements at a far higher rate than do their male colleagues." *Feloni v. Mayorkas*, Civ. A. No. 22-2094 (JEB), 2023 WL 3180313, at *7 (D.D.C. May 1, 2023). The *Feloni* Court noted that the case was "a close one," but that the statistics both alleged in the complaint and available on a government website showing results of training runs with "stark disparities" based on sex, sufficed to "'nudge[ ]' [Plaintiff's] disparate-impact claim 'across the line from conceivable to plausible.'" *Id.* at *7-8 (quoting *Twombly*, 550 U.S. at 570).

By contrast, as explained above, Plaintiff alleges only generalized results of polygraph examinations across an entire workforce, and the Complaint is entirely bereft of any comparison of passage rates for disabled and non-disabled employees. In this respect, Plaintiff's disparate impact is more akin to the claim rejected in *Menoken*, where the D.C. Circuit affirmed that the plaintiff had failed to make out her *prima facie* disparate impact case, because such "raw, unanalyzed statistics proffered by appellant do not show how many women or African Americans applied nor whether the specific policies in issue had disparate effects." *Menoken,* 408 F. App'x at 373. Accordingly, this claim should be dismissed.

\*   \*   \*

**CONCLUSION**

For all these reasons, Defendant respectfully requests that this Court either dismiss Plaintiff's claims or grant Defendant summary judgment on those claims.

Date: September 25, 2023

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK,
Chief, Civil Division

By:   /s/ *Stephen DeGenaro*
STEPHEN DEGENARO
D.C. Bar #1047116
Assistant United States Attorney
601 D St., N.W.
Washington, D.C.  20530
(202) 252-7229
Stephen.DeGenaro@usdoj.gov

*Attorneys for the United States of America*