UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN S. MORTER,<br><br>      Plaintiff,<br><br>      v.<br><br>LLOYD AUSTIN,<br>Secretary of Defense,<br><br>      Defendant. | Civil Action No. 23-0343 (JEB) |

**DEFENDANT'S STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE ISSUE**

Pursuant to Local Civil Rule 7(h), Defendant Lloyd Austin, in his official capacity as Secretary of the Department of Defense, submits this statement of material facts as to which there is no genuine issue with respect to the issues raised in Defendant's Motion to Dismiss or, in the alternative, for Summary Judgment.

1. Plaintiff was employed by the Defense Intelligence Agency ("DIA") as an Intelligence Analyst at the United States Special Operations Command ("SOCOM") facility in Tampa, Florida. Ex. 1 – Position Description.

2. At all relevant times, Plaintiff needed to maintain a Top Secret security clearance to perform his roles as an Intelligence Analyst because he regularly handled Top Secret national security matters. Ex. 2- DIA Instruction 1400.008 at 165.

3. The DIA maintains an Insider Threat Program that applies to agency employees—including Plaintiff—who need to maintain a Top Secret security clearance and handle Sensitive Compartmented Information. Ex. 3 - ITP Policy.

4. In pertinent part, the Insider Threat Program provides that employees required to handle Top Secret and Sensitive Compartmented Information are subjected to ongoing examinations to determine whether they pose unacceptable security risks. Ex. 3 - ITP Policy.

5. The polygraph examinations assess employees like Plaintiff on five separate topics that could signal national security concerns: sabotage, espionage, terrorism, mishandling classified information, and unauthorized foreign contact. Ex 4 - ICPG 704.6 at 1.

6. Plaintiff was subjected to four separate polygraph examinations between 2011 and 2012: March 23, 2011; March 25, 2011; January 31, 2012, and June 26, 2012. Ex 5 – Pl. Discovery Responses at 1

7. In each of these examinations, Plaintiff received a "No Opinion" rating on two elements— mishandling classified information and unauthorized foreign contacts. Ex 5 – Pl. Discovery Responses at 1

8. On October 17, 2013, Plaintiff met with a psychologist named Dr. Heather Magee. Ex. 17 – Magee Report.

9. Dr. Magee issued a letter that on October 17, 2013, that stated that she treated him for stress that Plaintiff had reported related to a change in job responsibilities in the prior three or four months. Ex. 17 – Magee Report.

10. Dr. Magee wrote a letter on November 14, 2013, that she had diagnosed Plaintiff with "situational anxiety" and recommended Plaintiff be allowed sick leave to address his reported symptoms of chest tightness, shortness of breath, trembling, sweating, and concentration difficulties. Ex. 9 – Magee Letter.

11. Plaintiff met with an agency staff psychologist named Dr. Soo-Tho on November 6, 2013. Ex. 6 – DIA Emails at 1-2.

12. Dr. Soo-Tho issued a report after this interview with Plaintiff on December 2, 2013. Ex. 6 – DIA Emails at 1-4; Ex. 7 – Soo-Tho Report.

13. Dr. Soo-Tho's report noted that Plaintiff had conducted "extensive research on polygraph" examinations and estimated that he and his wife had read hundreds of articles on polygraphs. Ex. 6 – DIA Emails at 1-4; Ex. 7 – Soo-Tho Report.

14. Dr. Soo-Tho's report also noted that Plaintiff also equivocated on whether he specifically researched countermeasures to use during polygraph examinations or whether he had disclosed this research to security personnel previously. Ex. 6 – DIA Emails at 1-4; Ex. 7 – Soo-Tho Report.

15. Dr. Soo-Tho assessed that Plaintiff was unlikely to be a good candidate for future polygraph testing because of his "verbalized intent and demonstrated efforts to subvert" the testing. Ex. 6 – DIA Emails at 1-4; Ex. 7 – Soo-Tho Report.

16. Dr. Soo-Tho also assessed that Plaintiff's "lack of insight, proclivity to externalize blame, and lack of candor probably limits the degree to which he may be willing and/or able to cooperate with realistic threat mitigation strategies." Ex. 6 – DIA Emails at 1-4; Ex. 7 – Soo-Tho Report.

17. On February 6, 2014, DIA issued Plaintiff a letter regarding his ability to continue accessing Sensitive Compartmented Information that advised Plaintiff that he was receiving an advisory letter due to his four unsuccessful polygraph examinations in 2011 and 2012, and because of Plaintiff's subsequent diagnosis of an anxiety disorder. Ex. 10 - Ex 10 Feb. 6, 2014 Letter.

18. The letter advised Plaintiff that he was not being penalized for seeking treatment for his mental health. Ex. 10 - Ex 10 Feb. 6, 2014 Letter.

19. The letter further stated that he had received a favorable security clearance decision because of Plaintiff's representation that he would seek mental health care and comply with the treatments recommended to him. Ex. 10 - Ex 10 Feb. 6, 2014 Letter.

20. The letter also stated that the determination was contingent on those two representations by Plaintiff and that his eligibility to access Sensitive Compartmented Information would be subject to "continuous evaluation." Ex. 10 - Ex 10 Feb. 6, 2014 Letter.

21. On May 12, 2014, SOCOM's deputy commander, Lieutenant General John Mulholland, determined that SOCOM would not retain Plaintiff's services. Ex. 11 - May 27, 2014 Letter.

22. SOCOM informed Plaintiff that it had lost trust in Plaintiff's abilities because Plaintiff had repeatedly failed to pass the polygraph examination on the issue of mishandling classified information, admitted to failing to report foreign contacts, and admitted to researching how to pass polygraph tests. Ex. 11 - May 27, 2014 Letter.

23. Colonel Shawn Nilius verbally informed Plaintiff of Mulholland's decision on May 12, 2014, and provided Plaintiff with a memorandum reiterating the decision on May 27, 2014. Ex. 11 - May 27, 2014 Letter.

24. On May 21, 2014, DIA informed Plaintiff that he would be reassigned to DIA Headquarters after SOCOM no longer would permit Plaintiff to enter the facility. Ex. 12 – May 21, 2014 Letter.

\* \* \*

Date: September 25, 2023　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　MATTHEW M. GRAVES, D.C. Bar #481052
　　　　　　　　　　　　　　　　　　　　United States Attorney

　　　　　　　　　　　　　　　　　　　　BRIAN P. HUDAK,
　　　　　　　　　　　　　　　　　　　　Chief, Civil Division

　　　　　　　　　　　　　　　By:　　　/s/ *Stephen DeGenaro*
　　　　　　　　　　　　　　　　　　　　STEPHEN DEGENARO
　　　　　　　　　　　　　　　　　　　　D.C. Bar #1047116
　　　　　　　　　　　　　　　　　　　　Assistant United States Attorney
　　　　　　　　　　　　　　　　　　　　601 D St., N.W.
　　　　　　　　　　　　　　　　　　　　Washington, D.C. 20530
　　　　　　　　　　　　　　　　　　　　(202) 252-7229
　　　　　　　　　　　　　　　　　　　　Stephen.DeGenaro@usdoj.gov

　　　　　　　　　　　　　　　　　　　　*Attorneys for the United States of America*