| | |
|---|---|
| **John Morter** | ) |
| | ) |
| **COMPLAINANT,** | ) |
| | ) |
| vs. | )   **AGENCY CASE NO.: DIA-2014-00052** |
| | ) |
| **Defense Intelligence Agency** | ) |
| | ) |
| **AGENCY.** | ) |

## INTERROGATORIES OF WITNESS STEVEN MCINTOSH

Lisa D. Chanel, an EEO Contract Investigator for Crossroad Mediation Services who is investigating this case at the request of the Defense Intelligence Agency (hereinafter "the Agency"), requests that the witness, Steven McIntosh respond to the following interrogatories. You are required to answer these interrogatories separately and fully in writing, under oath. You are required to respond to these interrogatories no later than ten (10) calendar days after receipt of these interrogatories, to: Case Manager, Paris Nash at Defense Intelligence Agency (DIA), Equal Opportunity Office, 200 MacDill Boulevard, Building 6000, Room S-671, Joint Base Anacostia-Bolling, Washington, DC 203400-5100.

## INSTRUCTIONS

A. Each Interrogatory is to be answered fully on the basis of information which is in your possession.

B. In each of your answers to these Interrogatories, you are requested to provide not only such information as is in your possession, but also information as is reasonably available. In the event that you are able to provide only part of the information called for by any particular Interrogatory, please provide all the information you are able to provide and state the reason for your inability to provide the remainder.

C. If you object to or otherwise decline to answer any portion of an Interrogatory, please provide all information called for by that portion of the Interrogatory to which you do not object or to which you do not decline to answer. For those portions of an Interrogatory to which you object or to which you do not decline to answer, state the reason for such objection or declination.

D. Every Interrogatory herein shall be deemed a continuing interrogatory and information in addition to or in any way inconsistent with your initial answer to such Interrogatory.

Initials _𝓁𝓂_                                       Page _1_ of _11_

## DEFINITIONS

A. "Complainant" means John Morter.

B. "Agency," "you," "your," or "yourself," means the DIA, the named Agency in this case, and any and all of its former or current agents, representatives, employees, servants, consultants, contractors, subcontractors, investigators, attorneys, and any other persons or entities acting or purporting to act on behalf of the agency.

C. "Person", "persons," "people", and "individual" means any natural person, together with all federal, state, county, municipal and other government units, agencies or public bodies, as well as firms, companies, corporations, partnerships, proprietorships, joint ventures, organizations, groups of natural persons or other associations or entities separately identifiable whether or not such associations or entities have a separate legal existence in their own right.

D. "Document," "documents," and "writing" means all records, papers, and books, transcriptions, pictures, drawings or diagrams or every nature, whether transcribed by hand or by some mechanical, electronic, photographic or other means, as well as sound reproductions of oral statements or conversations by whatever means made, whether in your actual or constructive possession or under your control or not, relating to or pertaining to or in any way to the subject matters in connection which it is used and includes originals, all file copies, all other copies, no matter how prepared and all drafts prepared in connection with such writing, whether used or not, including by way of illustration and not by way of limitation, the following; books; records; reports; contracts; agreements; expense accounts; canceled checks; catalogues; price lists; video, audio and other electronic recordings; memoranda (including written memoranda of telephone conversations, other conversations, discussions, agreements, acts and activities); minutes; diaries; calendars; desk pads; scrapbooks; notes; notebooks; correspondence; drafts; bulletins; electronic mail; facsimiles; circulars; forms; pamphlets; notice; statements; journals; postcards; letters; telegrams; publications; inter- and intra- office communications; photostats; photographs; microfilm; maps; drawings; diagrams; sketches; analyses; electromagnetic records; transcripts; and any other documents within defendant's possession, custody or control from which information can be obtained or translated, if necessary, by detection devices into reasonably usable form, i.e. typed in English prose.

E. "Communication" or "communications" means any and all inquiries, discussions, conferences, conversations, negotiations, agreements, meetings, interviews, telephone conversations, letters correspondence, notes telegrams, facsimiles, electronic mail, memoranda, or other forms of communications, including but not limited to both oral and written communications.

F. "Produce" and "provide" mean to provide either a legible true copy of the original or any document and/or communication.

G. "Relate to," "relating to," "concerning," "pertain," and "pertaining to," mean consisting of, referring to, reflecting or arising out of, evidencing or in any way legally, logically, or factually connected with the matter discussed, directly or indirectly.

Initials _JCM_                                                   Page _2_ of _11_

H. "Identify," "identifying," and "identification" when referring to a person mean to provide an identification sufficient t notice a deposition of such person and to serve such person with process to require his or her attendance at a place of examination and shall include, without limitation, his or her full name, present or last known address, present or last known business affiliation, home and business telephone number, title or occupation, each of his or her positions during the applicable period of time covered by any answer referring to such person and relationship, if any, to the agency.

I. "Identify," "identifying," and "identification" when used in reference to a writing or document mean to give a sufficient characterization of such writing or document to properly identify it in a request to produce and shall include, without limitation, the following information with respect to teach such document:

    1. The date appearing on such document, and if it has no date, the answer shall so state and shall give the date or approximate date such document was prepared;

    2. The identity or descriptive code number, file number, title or label of such document;

    3. The general nature and description of such document, and if it was not signed, the answer shall so state and shall give the name of the person or persons who prepared it;

    4. The names of the person(s) to whom such document was addressed and the name of each person other than such addressee to whom such document or copies of it, were given or sent;

    5. The name(s) of the person(s) having present possession, custody, or control of such document(s); and

    6. Whether or not any draft, copy or reproduction of such document contains any postscripts, notations, changes or addendum not appearing on the document itself, and if so, the answer shall give the description of each such draft, copy or reproduction.

In answering these interrogatories, the witness is requested to furnish not only such information as is available to the witness but also such information as is known to any of the agency's agents, representatives, employees, servants, consultants, contractors, subcontractors, investigators, attorneys, and any other person or entity acting or purporting to act on behalf of the agency.

In any matter responsive to any of the interrogatories the agency shall set forth completely the grounds for the asserted privilege, along with copies of the Privacy Act provisions or other written materials upon which such assertion is made. The witness shall identify as to each privileged communication or document:

1. its date;
2. its author(s);
3. the business title or position of its author(s);
4. its recipient(s);

Initials 

5. the business title or position of its recipient(s);
6. its number of pages;
7. its stated subject matter;
8. the legal basis upon which the agency claims privilege;
9. the specific portion of the interrogatory or document to which the communication or document is responsive.

Documents are to be labeled to indicate the interrogatory to which they respond. In order to simplify the issues and resolve as many matters of fact as possible before hearing, if, following a reasonable and thorough investigation using due diligence, you are unable to answer any interrogatory, or any part thereof, in full, because sufficient information is not available to you, answer the interrogatory to the maximum extent possible, including any knowledge or belief you have concerning the unanswered portion thereof and the facts upon which such knowledge or belief is based. In addition, state what you did to locate the missing information and why that information is not available to you.

When an exact answer to an interrogatory is not known, state the best estimate available, state that it is an estimate, and state the basis for such estimate. If documents once in your possession or under your control are requested or are the subject of an interrogatory, and such documents are no longer in your possession or under your control, state when such documents were must recently in your possession or under your control, and what disposition was made of them, including identification of the person now in possession of or exercising control over such documents. If the documents were destroyed, state when and where they were destroyed, and identify the person or persons who directed their destruction.

All of the following interrogatories shall be continuing in nature until the completion of this investigation, and you must supplement your answers as additional information becomes known or available to you.   **Identify all documents associated with each interrogatory.**

### INTERROGATORIES OF WITNESS STEVEN MCINTOSH

1. **What is your full name?**

   Steven Douglas McIntosh

2. **What is your title and grade?**

   Defense Intelligence Agency Insider Threat Program Coordinator
   Defense Intelligence Senior Level (DISL)

3. **What is the name of the agency for which you work?**

   Defense Intelligence Agency (DIA)

4. **What is the name of the organizational unit to which you are assigned?**

Initials _SM_                                                     Page _4_ of _11_

Office of Security

**5.  What is the address of your duty station?**

DIA Logistics Operations Center (DLOC)
3300 75ᵗʰ Avenue
Landover, MD 20785-1501

**6.  How long have you held your current position?**

Since July 2011, approximately three years and six months.

**7.  Who is your immediate supervisor?**

Stephen R. Norton, Defense Intelligence Senior Executive Service (DISES)
DIA Director of Security

**8.  Who is your second level supervisor?**

Leo J. Delaney, DISES
Deputy Director for Mission Services

**9.  Do you have a disability on record with the Agency?**

No.

**10.  What is your relationship to Complainant (first line, second line, Team Lead, etc.) and for what period of time?**

I do not have a relationship with the Complainant.

**11.  Are you aware of whether Complainant has any medical conditions?  If so, what conditions do you believe him to have; how and when did you become aware of his medical condition?**

No.

*__Issue 1:__*          *__Complainant alleges that on 12 May 2014, he was informed by COL Shawn Nilius, Director, that USSOCOM had decided not to retain his services due to his inability to successfully complete the Polygraph Creditability Assessment (PCA) examinations.__*

**12.  Is the successful completion of the Polygraph Creditability Assessment (PCA) examinations required for Complainant's position?  How so?**

Initials _✍_                                                           Page _5_ of _11_

Yes.   On 6 September 2005, the DIA Director designated all DIA positions as "Critical Intelligence Positions."   As such, all DIA applicants, civilian employees, military assignees, contractors, and/or consultants are subject to pre-employment, initial, and aperiodic counterintelligence-scope polygraph (CSP) screening examinations.

**13. Was Complainant told his services were not going to be retained due to his inability to complete the PCE?  How was he told and by whom?**

I have no firsthand information regarding this question.

**14. Which management officials were involved in this decision?**

I have no firsthand information regarding this question.

**15. Did these officials know about Complainant's disability?  If so, when did they learn about it?  How do you know?**

I have no firsthand information regarding this question.

**16. Is it your claim the decision was based on a legitimate nondiscriminatory reason? Explain.**

I have no firsthand information regarding this question.

**17. Was the decision because of Complainant's disability?**

I have no firsthand information regarding this question.

**18. Did Complainant complain to anyone in management the action was unjustified?  If so, when, to whom, and what was the nature of his complaint?**

I have no firsthand information regarding this question.

**19. If so, what was management's response?**

I have no firsthand information regarding this question.

**20. Are you aware of other employees whose services were retained after failing the PCA? What is the disability status of the person?  Which management officials involved in the decision in those cases?**

Complainant's situation is not a matter of "retaining his services" as Complainant remains a DIA employee.   DIA employees who are unable to successfully complete the CSP examination remain DIA employees and may be relocated to DIA Headquarters, or if already assigned to DIA Headquarters, they may be realigned to a less sensitive position commensurate with their grade.

Initials _Sko_                                                 Page _6_ of _11_

As the DIA Insider Threat Program Coordinator, I make the recommendation to relocate and/or realign DIA employees who do not successfully complete the CSP examination.  As such, I am aware of DIA employees who were relocated to DIA Headquarters or realigned to another DIA position within DIA Headquarters as a result of their inability to successfully complete the CSP examination.  Claims of disability were not presented in these cases; however, if a claim of disability was presented, it would not have altered the outcome as the issue is the DIA employee being unsuccessful in completing the CSP examination and presenting a threat, risk, or vulnerability to national security information and operations.

In response to Ms Chanel's follow-up question:  On advice of our General Counsel, the following information, less identification of the employee, is provided regarding DIA employees who were realigned to less sensitive positions within DIA Headquarters, or reassigned to a DIA Headquarters position, as a result of their inability to successfully complete the CSP examination:

| Name | Grade | Original Position Title | New Position Title | Disability Status |
|---|---|---|---|---|
| Employee A | GG-15 | Chief, Global Operations Division | Chief, Plans & Policy | No known disability |
| Employee B | GG-13 | Supervisory Intelligence Officer | Pending PCS; opted to retire | No known disability |
| Employee C | GG-13 | Supervisory Intelligence Officer | Pending PCS; opted to retire | No known disability |
| Employee D | GG-13 | Intelligence Officer | Program Management Specialist | No known disability |
| Employee E | GG-13 | Missile Systems Electrical Engineer | Pending realignment; opted to retire | No known disability |
| Employee F | GG-08 | Administrative Specialist | Pending PCS; opted to retire | No known disability |
| Employee G | GG-14 | Supervisory Intelligence Officer | Pending PCS; opted to retire | No known disability |
| Employee H | GG-13 | Technical Collections Officer | Pending PCS; position pending | No known disability |
| Employee I | GG-14 | Supervisory HUMINT Officer | Pending PCS to Policy Officer position | No known disability |
| Employee J | GG-14 | Presidential Briefing Team | Realigned to Intelligence Officer | No known disability |
| Employee K | GG-15 | Supervisory Intelligence Officer | Analyst Career Education Instructor | No known disability |
| Employee L | DISES | Office of Counterintelligence | National Intelligence University | No known disability |

Initials _GCm_

*Issue 2:*      *Complainant alleges that on 27 May 2014, he received notice of a reassignment action, which requires him to move to the National Capital Region from Tampa, Florida. This notification came from Mr. Steven McIntosh, DIA Insider Threat Program Coordinator, and was a result of USSOCOM's decision not to retain his employment.*

**21. Was Complainant told he was being moved to the National Capital Region from Tampa, Florida as a result of the decision not to retain his services? How was he told and by whom?**

I have no knowledge of discussion(s) between Complainant and U.S. Special Operations Command (USSOCOM) personnel that took place on 27 May 2014.

I did author the 21 May 2014 memorandum, with the subject line "Reassignment Action," which was sent to USSOCOM for delivery to Complainant. The memorandum stated Complainant's inability to successfully complete the counterintelligence-scope polygraph (CSP) examination, which is a basic security requirement for all DIA employees, presented a security vulnerability that must be mitigated. Further, the memorandum stated the vulnerability could be properly mitigated by an assignment to the DIA.

Of note, Complainant is a DIA employee occupying a position located within USSOCOM spaces. Complainant is not an employee of USSOCOM.

<u>In response to Ms Chanel's follow-up question</u>: The term "Polygraph and Credibility Assessment (PCA)" is the overarching term covering programs, research, training, and procedures that employ technologies to assess an individual's truthfulness with the aid of technical devices that measure physiological data or behavioral activity. The counterintelligence-scope polygraph examination (CSP) is a specific screening polygraph examination that uses relevant questions limited to prescribe counterintelligence related issues. Complainant failed to successfully complete the CSP screening examination.

**22. Which management officials were involved in this decision?**

Steven D. McIntosh, DISL, DIA Insider Threat Program Coordinator.
Stephen R. Norton, DISES, DIA Director of Security.

**23. Did these officials know about Complainant's disability? If so, when did they learn about it? How do you know?**

I have no firsthand information regarding this question.

**24. Is it your claim the decision was based on a legitimate nondiscriminatory reason? Explain.**

Initials _ʃℓm_                                      Page _8_ of _11_

The decision to reassign Complainant to DIA Headquarters to mitigate the security vulnerability due to Complainant's inability to successfully complete the CSP examination was based on a legitimate nondiscriminatory reason.

**25. Was the decision because of Complainant's disability?**

I am not aware of any disability claim by Complainant.

**26. Did Complainant complain to anyone in management the action was unjustified?  If so, when, to whom, and what was the nature of his complaint?**

Complainant filed a "Notice to Appeal," dated 4 June 2014, addressed to "Whom it may concern," which detailed Complainant's belief the reassignment action was an adverse action and therefore unjust.

Complainant's Notice to Appeal was provided to Stephen R. Norton, DISES, Director of Security, who also serves as DIA's Designated Senior Official for the Agency's Insider Threat Program.

DIA also received a Congressional Inquiry, dated 15 August 2014, from Representative Gus M. Bilirakis regarding Complainant's appeal to DIA's decision to reassign Complainant to DIA Headquarters.

**27. If so, what was management's response?**

Complainant was returned to DIA Headquarters and on 4 August 2014, and interviewed by a representative from the Investigations Division, Office of Security; no additional information was developed regarding Complainant's inability to successfully complete the CSP examination.

Complainant agreed to take another CSP examination which was administered on 5 August 2014.  Complainant failed to successfully complete the CSP examination.

At the request of the Director of Security, the DIA Special Security Office at U.S. Central Command (USCENTCOM) was directed to obtain USCENTCOM's position regarding a proposed mitigation strategy of realigning Complainant to a DIA Academy for Defense Intelligence (ADI) position physically located within the USCENTCOM facility at MacDill AFB.  USCENTCOM would have to accept risk and monitor Complainant's activities within USCENTCOM spaces.

On 12 August 2014, the USCENTCOM Vice Director for Intelligence declined to accept the risk of having Complainant realigned to a DIA position within USCENTCOM facilities due to Complainant's inability to successfully complete the CSP examination.

On 13 August 2014, the Director of Security concurred with the course of action to continue the administrative process to reassign Complainant to a position at DIA Headquarters.

Initials _SLvn_                                                    Page _9_ of _11_

<u>In response to Ms Chanel's follow-up question</u>:   The USCENTCOM Vice Director for Intelligence who rendered the decision identified above was Gregory L. Ryckman, DISES.

**28. Are you aware of other employees who were relocated after a decision was made not to retain their services after failing the PCA?  Which management officials were involved in the decision in those cases?**

As DIA's Insider Threat Program Coordinator, I am aware of other DIA employees who were reassigned and/or realigned due to their inability to successfully complete the CSP examination.  It is not an issue of a decision to "retain their services" as they remain DIA employees; rather the DIA employees were relocated and/or realigned to mitigate a threat, risk, or vulnerability to national security.

<u>In response to Ms Chanel's follow-up question</u>:   On advice of our General Counsel, the following information, less identification of the employee, is provided regarding DIA employees who were realigned to less sensitive positions within DIA Headquarters, or reassigned to a DIA Headquarters position, as a result of their inability to successfully complete the CSP examination:

| Name | Grade | Original Position Title | New Position Title | Disability Status |
|---|---|---|---|---|
| Employee A | GG-15 | Chief, Global Operations Division | Chief, Plans & Policy | No known disability |
| Employee B | GG-13 | Supervisory Intelligence Officer | Pending PCS; opted to retire | No known disability |
| Employee C | GG-13 | Supervisory Intelligence Officer | Pending PCS; opted to retire | No known disability |
| Employee D | GG-13 | Intelligence Officer | Program Management Specialist | No known disability |
| Employee E | GG-13 | Missile Systems Electrical Engineer | Pending realignment; opted to retire | No known disability |
| Employee F | GG-08 | Administrative Specialist | Pending PCS; opted to retire | No known disability |
| Employee G | GG-14 | Supervisory Intelligence Officer | Pending PCS; opted to retire | No known disability |
| Employee H | GG-13 | Technical Collections Officer | Pending PCS; position pending | No known disability |
| Employee I | GG-14 | Supervisory HUMINT Officer | Pending PCS to Policy Officer position | No known disability |
| Employee J | GG-14 | Presidential Briefing Team | Realigned to Intelligence Officer | No known disability |
| Employee K | GG-15 | Supervisory Intelligence Officer | Analyst Career Education Instructor | No known disability |
| Employee L | DISES | Office of | National Intelligence | No known |

Initials _Hm_

Counterintelligence          University                    disability

**29. Can you suggest any witnesses who may have relevant information? If so, what is the information they could provide?**

No.

**30. Is there anything else that you wish to add?**

No.

I have read the foregoing Answers to Interrogatories consisting of _____ pages.  It is true and complete to the best of my knowledge and belief.  I have made all necessary corrections and additions, initialing next to each.  I understand that the information I have given is not to be considered confidential and that it may be shown to the interested parties.  In accordance with 28 U.S.C. Section 1746, I declare under penalties of perjury that the above Answers to Interrogatories are true and correct to the best of my knowledge, information, and belief.


_Glen W McGrifd_____                    _25 February 2015_
Witness Signature                                                   Date


*I hereby certify that I obtained the above Answers to Interrogatories in connection with a duly authorized EEO complaint investigation.*

_____                    **3/2/15**
Lisa Chanel, EEO Investigator                        _____
                                                                          Date


Initials _Gln_                                                   Page _11_ of _11_