From: John S. Morter, GG-13                                                                 4 June 2014

Subject: Notice to Appeal

To: Whom it may concern

1. This letter serves to inform all that were involved with the decisions to temporarily suspend my security clearance access, terminate my employment at the United States Special Operations Command and force my reassignment to headquarters, Defense Intelligence Agency (DIA), that I intend to appeal to the highest levels possible. The use of questionable and/or dishonest tactics to punish innocent people is unacceptable and should never be tolerated. Additionally, I request that oversight investigations be conducted to ensure that all involved are trained on the limitations and proper use of polygraph results and that no other policies and/or regulations are being circumvented or violated related to the use of the polygraph.

2. In a letter from the DIA Insider Threat Program (InTP) Coordinator (attachment A), it is stated that "Your inability to successfully complete the counter intelligence-scope polygraph examination is a basic security requirement for all DIA employees, presents a security vulnerability that must be mitigated." If this is the case, I contend that there are guidelines in place and instructions on how to proceed if there is an unresolved counter intelligence-scope polygraph examination involving an employee who is already in access and no there is no other issue specific or derogatory information - and they do not involve the unwarranted suspension of access, or termination of assignment, and certainly do not authorize a forced relocation out of the local area. The entire letter is an attempt to skirt regulations and policies by using contradicting statements and confusing terminology to suggest that I somehow present a "vulnerability", but not a risk.

3. It is extremely important to note that 10 months after my second attempt at the polygraph exam, one where the examiner forcefully interrogated me to the brink of a nervous breakdown, I was directed to report to DIA for an in-depth investigation concerning the matter. This two day interview took place back in June 2012 – two years ago. Without knowing the outcome of this investigation and based on the fact that I still hold a TS/SCI clearance according to DIA's Central Adjudication Facility, the results of that investigation must not have revealed any concerns or "vulnerabilities" that would jeopardize national security.

4. Another meeting/investigation in early November 2013 by the DIA Insider Threat Program/Special Security Office resulted in the issuance of an advisory letter (attachment B), which by all indications, continues to authorize my access to TS/SCI. During this meeting, the official in charge decided that I not undergo additional polygraph examination because he believed that the polygraph had been compromised, signifying that the use of the test would be erroneous and unfair. It is my contention that my polygraph testing experience had been compromised from the beginning – undoubtedly from a classic "guilt grabbing" condition - and resulted in a false positive on the question involving the handling of classified information. Also significant, is the fact that I have been clinically diagnosed with an anxiety disorder - a medical condition that unquestionably invalidates the readings of the test – and one that could identify the decisions against me as discriminatory, based on Equal Employment Opportunity laws.

5. Throughout this entire ordeal, I've tried to impress upon my leadership and the security officials involved that they are all overlooking the fact that the polygraph is fallible, and on its own, an unreliable indicator of a threat, risk, or as stated in the letter from the DIA InTP, a "vulnerability". The truth in this statement is as obvious as it is ignored. The polygraph is simply a set of instruments that record an individual's physiological condition. Rules, regulations and policies have been developed and implemented due to this fact and are designed specifically to protect the employee from the type of abuse that I am experiencing. I would expect that due diligence and compliance with DoD rules and regulations is essential before making irrational decisions that could bring to an end an otherwise stellar 34 year professional career.

6. To bolster my case and help bring clarification on the matter, I present Department of Defense Instruction Number 5210.91 *"Polygraph and Credibility Assessment (PCA) Procedures"* which establishes and implements policy, assigns responsibilities, and provides procedures governing the use of the polygraph and other approved credibility assessment tools. Encl. 3, Para 2. g. states specifically that "PCA examinations are a supplement to, not a substitute for, other methods of screening or investigation. No unfavorable administrative action (**to include access, employment, assignment, and detail determinations**) shall be taken solely on the basis of either a refusal to undergo a Personnel Security Screening (PSS) examination or an unresolved PSS examination, except as provided in sections 6 and 7 of Enclosure 4."

7. Additionally, Encl. 4, Sec. 6. REFUSAL TO TAKE OR COMPLETE A PSS states that "DoD-affiliated personnel who refuse to take or complete a polygraph examination, and are in positions designated as requiring a PSS polygraph examination as part of determining initial eligibility for access to Top Secret, SAP, or other sensitive intelligence or operational information or for initial assignment or detail to the CIA or other IC elements, may be denied access, assignment, or detail."

8. Further, Encl. 4, Sec 7. FAILURE TO RESOLVE A PSS states "DoD-affiliated personnel in positions cited in section 6 of this enclosure who are unable to resolve all relevant questions of a PSS shall be so advised. The results of the examination shall be forwarded to the requesting agency."

    a. If, after reviewing the examination results, the requesting agency determines that they raise a significant question relevant to the individual's eligibility for a security clearance or continued access, the individual shall be given an opportunity to undergo additional examination.

    b. If the additional examination fails to resolve all relevant questions, the Head of the DoD Component may initiate a CI investigation in accordance with DoD policy.

    c. Additionally, the Head of the relevant DoD Component may temporarily suspend an individual's access to controlled information and deny the individual assignment or detail that is contingent on such access, **based upon a written finding that**, considering the results of the examination and the extreme sensitivity of the classified information involved, access under the circumstances poses an unacceptable risk to the national security. Such temporary suspension of access may not form the part of any basis for an adverse administrative action or an adverse personnel action.

    d. **The individual shall be advised in writing of the determination, that the determination may be appealed** to the Head of the relevant DoD Component, and that his or her final determination is conclusive.

9. I have always taken my responsibilities very seriously and would never do anything to jeopardize the Nation's security. I've held a TS/SCI security clearance through various organizations for over 33 years without a single security-related incident. I've undergone six Single Scope Background Investigations where investigators have interviewed my bosses, my co-workers and even my neighbors. And finally, after having difficulties with one of the questions on the polygraph, I've been investigated and scrutinized even more - not once has there ever been a finding or a reason to question my loyalty or trustworthiness. Now, I've found myself in the unfortunate situation where I cannot prove that I am not something that I am not.

10. To explain my experience with DIA's PCA process and detail some of the reasons that I felt were causing me to react anxiously to one of the polygraph questions, I submit attachments C and D. Additionally, I would like to provide a character reference letter, attachment E, which was written by my supervisor of the last 12 years.

11. Finally, a forced reassignment may not seem like an adverse action to some, but is extremely devastating to me and my family both financially and emotionally. An involuntary relocation outside of the local commuting area is an unacceptable burden that may result in my refusal to comply.

John S. Morter, GG-13
GEOINT Branch, Joint Intelligence Center
U.S. Special Operations Command
MacDill AFB, FL 33544

Attachments:

A. Reassignment Action letter (U-14-87,038/TMC, 21 May 2014), signed by Steven D. McIntosh, Insider Threat Program Coordinator.
B. Advisory Letter Concerning Continued Access to Sensitive Compartmented Information (FOUO-94,210/SEC-3B)
C. Trip report written by John S. Morter, titled "DIA/SSO Questioning" and provided to SOCOM leadership. Dated approximately 12 November 2013.
D. Memo written by John S. Morter, titled "My concerns with the question – Have you ever intentionally mishandled classified information?" provided to SOCOM SSO and leadership. Dated approximately 29 March 2011.
E. Memo written by Timothy Grimes, titled "Supervisor Comments concerning Mr. John "Sam" Morter", dated 20 February 2014.