| | |
|---|---|
| John Morter ) | |
| ) | |
| COMPLAINANT, ) | |
| ) | |
| vs. ) | AGENCY CASE NO.: DIA-2014-00052 |
| ) | |
| Defense Intelligence Agency ) | |
| ) | |
| AGENCY. ) | |
| ) | |

## INTERROGATORIES OF WITNESS STEPHEN NORTON

Lisa D. Chanel, an EEO Contract Investigator for Crossroad Mediation Services who is investigating this case at the request of the Defense Intelligence Agency (hereinafter "the Agency"), requests that the witness, Stephen Norton respond to the following interrogatories. You are required to answer these interrogatories separately and fully in writing, under oath. You are required to respond to these interrogatories no later than five (5) calendar days after receipt of these interrogatories, to: Case Manager, Paris Nash at Defense Intelligence Agency (DIA), Equal Opportunity Office, 200 MacDill Boulevard, Building 6000, Room S-671, Joint Base Anacostia-Bolling, Washington, DC 203400-5100.

## INSTRUCTIONS

A. Each Interrogatory is to be answered fully on the basis of information which is in your possession.

B. In each of your answers to these Interrogatories, you are requested to provide not only such information as is in your possession, but also information as is reasonably available. In the event that you are able to provide only part of the information called for by any particular Interrogatory, please provide all the information you are able to provide and state the reason for your inability to provide the remainder.

C. If you object to or otherwise decline to answer any portion of an Interrogatory, please provide all information called for by that portion of the Interrogatory to which you do not object or to which you do not decline to answer. For those portions of an Interrogatory to which you object or to which you do not decline to answer, state the reason for such objection or declination.

D. Every Interrogatory herein shall be deemed a continuing interrogatory and information in addition to or in any way inconsistent with your initial answer to such Interrogatory.

Initials SRN                                                                                                              Page 1 of 7

## DEFINITIONS

A. "Complainant" means John Morter.

B. "Agency," "you," "your," or "yourself," means the DIA, the named Agency in this case, and any and all of its former or current agents, representatives, employees, servants, consultants, contractors, subcontractors, investigators, attorneys, and any other persons or entities acting or purporting to act on behalf of the agency.

C. "Person", "persons," "people", and "individual" means any natural person, together with all federal, state, county, municipal and other government units, agencies or public bodies, as well as firms, companies, corporations, partnerships, proprietorships, joint ventures, organizations, groups of natural persons or other associations or entities separately identifiable whether or not such associations or entities have a separate legal existence in their own right.

D. "Document," "documents," and "writing" means all records, papers, and books, transcriptions, pictures, drawings or diagrams or every nature, whether transcribed by hand or by some mechanical, electronic, photographic or other means, as well as sound reproductions of oral statements or conversations by whatever means made, whether in your actual or constructive possession or under your control or not, relating to or pertaining to or in any way to the subject matters in connection which it is used and includes originals, all file copies, all other copies, no matter how prepared and all drafts prepared in connection with such writing, whether used or not, including by way of illustration and not by way of limitation, the following: books; records; reports; contracts; agreements; expense accounts; canceled checks; catalogues; price lists; video, audio and other electronic recordings; memoranda (including written memoranda of telephone conversations, other conversations, discussions, agreements, acts and activities); minutes; diaries; calendars; desk pads; scrapbooks; notes; notebooks; correspondence; drafts; bulletins; electronic mail; facsimiles; circulars; forms; pamphlets; notice; statements; journals; postcards; letters; telegrams; publications; inter- and intra- office communications; photostats; photographs; microfilm; maps; drawings; diagrams; sketches; analyses; electromagnetic records; transcripts; and any other documents within defendant's possession, custody or control from which information can be obtained or translated, if necessary, by detection devices into reasonably usable form, i.e. typed in English prose.

E. "Communication" or "communications" means any and all inquiries, discussions, conferences, conversations, negotiations, agreements, meetings, interviews, telephone conversations, letters correspondence, notes telegrams, facsimiles, electronic mail, memoranda, or other forms of communications, including but not limited to both oral and written communications.

F. "Produce" and "provide" mean to provide either a legible true copy of the original or any document and/or communication.

G. "Relate to," "relating to," "concerning," "pertain," and "pertaining to," mean consisting of, referring to, reflecting or arising out of, evidencing or in any way legally, logically, or factually connected with the matter discussed, directly or indirectly.

Initials   Page 2 of 7

H. "Identify," "identifying," and "identification" when referring to a person mean to provide an identification sufficient t notice a deposition of such person and to serve such person with process to require his or her attendance at a place of examination and shall include, without limitation, his or her full name, present or last known address, present or last known business affiliation, home and business telephone number, title or occupation, each of his or her positions during the applicable period of time covered by any answer referring to such person and relationship, if any, to the agency.

I. "Identify," "identifying," and "identification" when used in reference to a writing or document mean to give a sufficient characterization of such writing or document to properly identify it in a request to produce and shall include, without limitation, the following information with respect to teach such document:

1. The date appearing on such document, and if it has no date, the answer shall so state and shall give the date or approximate date such document was prepared;

2. The identity or descriptive code number, file number, title or label of such document;

3. The general nature and description of such document, and if it was not signed, the answer shall so state and shall give the name of the person or persons who prepared it;

4. The names of the person(s) to whom such document was addressed and the name of each person other than such addressee to whom such document or copies of it, were given or sent;

5. The name(s) of the person(s) having present possession, custody, or control of such document(s); and

6. Whether or not any draft, copy or reproduction of such document contains any postscripts, notations, changes or addendum not appearing on the document itself, and if so, the answer shall give the description of each such draft, copy or reproduction.

In answering these interrogatories, the witness is requested to furnish not only such information as is available to the witness but also such information as is known to any of the agency's agents, representatives, employees, servants, consultants, contractors, subcontractors, investigators, attorneys, and any other person or entity acting or purporting to act on behalf of the agency.

In any matter responsive to any of the interrogatories the agency shall set forth completely the grounds for the asserted privilege, along with copies of the Privacy Act provisions or other written materials upon which such assertion is made. The witness shall identify as to each privileged communication or document:

1. its date;
2. its author(s);
3. the business title or position of its author(s);
4. its recipient(s);

Initials SRN

Page 3 of 7

5. the business title or position of its recipient(s);
6. its number of pages;
7. its stated subject matter;
8. the legal basis upon which the agency claims privilege;
9. the specific portion of the interrogatory or document to which the communication or document is responsive.

Documents are to be labeled to indicate the interrogatory to which they respond. In order to simplify the issues and resolve as many matters of fact as possible before hearing, if, following a reasonable and thorough investigation using due diligence, you are unable to answer any interrogatory, or any part thereof, in full, because sufficient information is not available to you, answer the interrogatory to the maximum extent possible, including any knowledge or belief you have concerning the unanswered portion thereof and the facts upon which such knowledge or belief is based. In addition, state what you did to locate the missing information and why that information is not available to you.

When an exact answer to an interrogatory is not known, state the best estimate available, state that it is an estimate, and state the basis for such estimate. If documents once in your possession or under your control are requested or are the subject of an interrogatory, and such documents are no longer in your possession or under your control, state when such documents were must recently in your possession or under your control, and what disposition was made of them, including identification of the person now in possession of or exercising control over such documents. If the documents were destroyed, state when and where they were destroyed, and identify the person or persons who directed their destruction.

All of the following interrogatories shall be continuing in nature until the completion of this investigation, and you must supplement your answers as additional information becomes known or available to you. **Identify all documents associated with each interrogatory.**

### INTERROGATORIES OF WITNESS STEPHEN NORTON

1. **What is your full name?**

   Stephen Ross Norton

2. **What is your title and grade?**

   Director of Security, DISES

3. **What is the name of the agency for which you work?**

   Defense Intelligence Agency

4. **What is the name of the organizational unit to which you are assigned?**

   Office of Security, Directorate for Mission Services

Initials _SRN_

5. What is the address of your duty station?

   Defense Intelligence Agency
   200 MacDill Blvd
   Washington, DC 20340

6. How long have you held your current position?

   Two years

7. Who is your immediate supervisor?

   Leo Delaney

8. Who is your second level supervisor?

   James Manzelmann

9. Do you have a disability on record with the Agency?

   Yes

10. What is your relationship to Complainant (first line, second line, Team Lead, etc.) and for what period of time?

    I have no direct relationship with Mr. Morter and I am not in his chain-of-command. My responsibilities for security cover the entire DIA of which Mr. Morter is an employee.

11. Are you aware of whether Complainant has any medical conditions? If so, what conditions do you believe him to have; how and when did you become aware of his medical condition?

    No

<u>Issue 2:</u>    <u>Complainant alleges that on 27 May 2014, he received notice of a reassignment action, which requires him to move to the National Capital Region from Tampa, Florida. This notification came from Mr. McIntosh, DIA Insider Threat Program Coordinator, and was a result of USSOCOM's decision not to retain his employment.</u>

12. Was Complainant told he was being moved to the National Capital Region from Tampa, Florida as a result of the decision not to retain his services? How was he told and by whom?

Mr. Morter is an employee of DIA who cannot complete his counterintelligence scope polygraph examination and thus posses a security concern. This concern can be mitigated by assigning him

Initials SRN

Page 5 of 7

to DIA HQs, it cannot be mitigated by keeping him in Tampa. It has never been a question of retaining his services or not by DIA; rather the issue is where his services are performed. This information was conveyed to him in a memorandum from my office.

13. **Which management officials were involved in this decision?**

   Myself
   Steven McIntosh

14. **Did these officials know about Complainant's disability? If so, when did they learn about it? How do you know?**

   I am not aware that Mr. Morter has a disability nor is Mr. McIntosh.

15. **Is it your claim the decision was based on a legitimate nondiscriminatory reason? Explain.**

   Absolutely

16. **Was the decision because of Complainant's disability?**

   No and I was not aware he had a disability until receiving this document.

17. **Did Complainant complain to anyone in management the action was unjustified? If so, when, to whom, and what was the nature of his complaint?**

He appealed the decision in June 2014, which was reviewed by me, and after failure to complete an additional polygraph examination in August 2014, I sustained my original decision to relocate him to DIA HQs because of security concerns. The nature of his complaint was that he believed he was being treated unfairly.

18. **If so, what was management's response?**

As stated above, I sustained my decision to relocate him to DIA HQ to mitigate security concerns.

19. **Are you aware of other employees who were relocated after a decision was made not to retain their services after failing the PCA? Which management officials were involved in the decision in those cases?**

   Again, there is no question of retaining the services of DIA employees who cannot complete a polygraph examination; it is a question of where their services will be performed. Security concerns must be mitigated and sometimes this entails relocating employees. Yes, I am aware of other employees who were relocated. The management officials were Steven McIntosh and myself.

Initials    Page 6 of 7

**20. Can you suggest any witnesses who may have relevant information? If so, what is the information they could provide?**

No

**21. Is there anything else that you wish to add?**

The decision to relocate Mr. Morter was based solely on security concerns because of his inability to complete multiple counterintelligence scope polygraph examinations and the need to mitigate these concerns.

I have read the foregoing Answers to Interrogatories consisting of _____ pages. It is true and complete to the best of my knowledge and belief. I have made all necessary corrections and additions, initialing next to each. I understand that the information I have given is not to be considered confidential and that it may be shown to the interested parties. In accordance with 28 U.S.C. Section 1746, I declare under penalties of perjury that the above Answers to Interrogatories are true and correct to the best of my knowledge, information, and belief.

_Stephen R. Worten_              27 Feb 15
Witness Signature                     Date

*I hereby certify that I obtained the above Answers to Interrogatories in connection with a duly authorized EEO complaint investigation.*

_Lisa Chanel_                  3/2/15
Lisa Chanel, EEO Investigator      Date

Initials SRM                                               Page 7 of 7