

## UNCLASSIFIED//FOUO/PA-DATA
## PSYCHOLOGICAL EVALUATION
### Pre-Decisional Deliberative Material

| SUBJECT: | MORTER, John S. | FILE NO: | 10-1003416 |
|---|---|---|---|
| SSN: | xxx-xx- | RANK: | CIV/GG-13 |
| REVIEWER: | K. M. (Joe) Soo-Tho, PhD | DATE: | 02 December 2013 |

*This report does not provide case details prior to SUBJECT MORTER's interview with the undersigned DIA Insider Threat Program Staff Psychologist on 06 November 2013. It is strongly recommended that readers conduct a review of SUBJECT's dossier – particularly DIA Credibility Assessment Program's (SEC-5) Polygraph Reports (dated 23 and 25 March 2011, 31 January 2012, and 26 June 2012) and DIA Investigations Division's (SEC-4) Agent Report (dated 03 August 2012) – in order to better understand the context of this report, as well as the chronology and elements of this case.*

**Identifying Information**
SUBJECT MORTER is a 53 year-old, married, male who is presently assigned to J2-JIC-GEOINT USSOCOM at MacDill AFB in Tampa, FL. SUBJECT has been a DIA employee since 12 October 2008. SUBJECT's dossier contains details of his present employment at DIA, as well as information about his previous employment as a U.S. Air Force (USAF) civilian employee (2002 – 2008), a contractor at USSOCOM (2000-2002), and an active duty military member in USAF (1979 – 1999).

**Background**
This Insider Threat Program (InTP) psychological evaluation was requested and conducted in support of the mitigation process initiated by SUBJECT's inability to successfully complete four Counterintelligence Scope Polygraph (CSP) examinations administered by SEC-5 (23 and 25 March 2011, 31 January 2012, and 26 June 2012). According to associated SEC-5 Polygraph Reports, SUBJECT completed security topics pertaining to sabotage, espionage and terrorism, but exhibited consistent difficulties with topics regarding deliberate mishandling of classified information and unauthorized foreign contacts. Physiological data collected during SUBJECT's first three CSP examinations were deemed as No Opinion, and it was noted that SUBJECT exhibited Significant Response to questions concerning mishandling classified information and unauthorized foreign contacts during his last examination. No reportable information was developed, and this matter was subsequently referred to SEC-4 for action.

On 26 June 2012, during SUBJECT's interview with SEC-4, he attributed his inability to successfully complete CSP examinations to his unease with inquiries about deliberate mishandling of classified information. SUBJECT did not make admissions of any relevant security violations per se, but provided verbal and written explanation of his criticisms and discomfort with data transfer protocol at his workplace (see Exhibit 2 in SEC-4 report, Memorandum authored by SUBJECT, dated 15 June 2012). No additional reportable information was developed.

**Reason for Referral to DIA Insider Threat Program (InTP) Psychological Evaluation**
The primary purpose of this InTP psychological evaluation was to: (1) assess and rule out any medical and/or psychiatric reasons underlying SUBJECT's inability to successfully complete the aforementioned CSP examinations; (2) explore and address psychosocial factors which may have adversely impacted the outcome of these examinations; and (3) identify appropriate interventions, if any, to support mitigation strategies. In addition, a behavioral evaluation of SUBJECT's personnel security vulnerabilities, and associated threat/risk assessment, were also conducted.

In coordination with USSOCOM SSO and J2 leadership, SUBJECT was scheduled for an interview with the undersigned psychologist on 06 November 2013 at DIA HQ, Joint Base Anacostia-Bolling in

### UNCLASSIFIED//FOUO/PA-DATA

EXHIBIT 1   CCN 13-100-14
MORTER AGY 0087

 

UNCLASSIFIED//FOUO/PA-DATA
**PSYCHOLOGICAL EVALUATION**
Pre-Decisional Deliberative Material

Washington, DC.

**Findings**
Impressions
SUBJECT arrived for this interview as scheduled, and was appropriately groomed and dressed in business-casual attire. SUBJECT was ▮▮▮▮ to person, place and time; and he was fully cognizant of the reasons for this meeting. SUBJECT provided verbal and signed consent to participate in this interview, and voiced his eagerness to resolve issues associated with his difficulty in successfully completing CSP examinations. Although SUBJECT initially appeared to be cooperative, it soon became apparent that he was disinclined to be forthcoming and/or forthright when his personal agenda were at stake. When SUBJECT was confronted about inconsistencies in his self-disclosures, he tended to provide explanations that were lengthy, circuitous and implausible, or simply assert that he is a target of nebulous conspiracies. SUBJECT appeared to lack self-awareness, and was not deemed to be a credible or reliable self-historian. Functionally, SUBJECT's intellectual functioning appeared to be within normal limits, and no cognitive deficits were observed or reported. SUBJECT's speech was normal in rate, tone, volume and fluency. A persistent degree of mild to moderate anxiousness was noted in SUBJECT's demeanor throughout this interview; this nervousness became more prominent when he was being confronted and when he was sharing his fears about the potential adverse impact of his unsuccessful CSP examination on his professional future.

Medical Conditions
SUBJECT's dossier did not contain any reports to suggest that he may be suffering from a medical condition which could have accounted for his inability to successfully complete the aforementioned CSP examinations. In addition, SUBJECT's reported during this interview that he was "in good health," and did not attribute his difficulties with CSP examinations to any physical illness.

Psychological/Emotional Conditions
During this interview, SUBJECT reported that he has "suffered from anxiety for a long time," and characterized this as "a fear of failure." SUBJECT claimed that he sought help from a psychiatrist about four years ago (NFI), but was vague about his follow through with recommended course of treatment. SUBJECT further reported that his anxiety has been exacerbated by his incomplete CSP examinations, so much so that he again sought mental health assistance a few weeks ago. SUBJECT's self-reported symptoms were "upset stomach, not being able to sleep, and loss of appetite."

On 15 November 2013, SUBJECT transmitted a record of medical care, dated 04 November 2013 to the undersigned (via an e-mail from his SSO). This medical record noted that SUBJECT sought care at Behavioral Health Clinic, 6th Medical Group, MacDill AFB on 17 October 2013 for "stress" due to "changes in job responsibilities," and having to "[interact] with difficult coworkers." SUBJECT's symptoms were reported to include, "tightness in chest, SOB (NFI), trembling, racing thoughts, concentration difficulties, sweating, persistent self doubts," "not feeling well (fatigue)," "appetite not normal," unspecified "sleep disturbance," and "anxious" mood and affect; it was reported that SUBJECT continued "normal enjoyment of activities." No other problems were noted, and SUBJECT was diagnosed with "Adjustment Disorder with Anxiety 309.24."

Broadly, adjustment disorders comprise of a cluster of psychological and emotional symptoms usually occurring with three months of a stressful life event. Individual predisposition and psychological/emotional vulnerabilities are important factors in the occurrence of this condition, as well as the

UNCLASSIFIED//FOUO/PA-DATA



EXHIBIT 1    CCN 13-100-14
MORTER AGY 0088

 

**UNCLASSIFIED//FOUO/PA-DATA**
PSYCHOLOGICAL EVALUATION
Pre-Decisional Deliberative Material

manifestation of symptom type, severity, duration and prognosis. The predominant feature may be a brief or prolonged depressive reaction, or a disturbance of other emotions (e.g., anxiety, or mixture of depression and anxiety) and conduct. In order to be diagnosed with this condition, an individual's reactive symptoms or behaviors must be judged to be out of proportion to the intensity of the stressor, and to cause significant functional impairment. At the same time, the individual's mood and conduct disturbance cannot be accounted for by another mental illness, exacerbation of existing psychological/emotional disorder, or represent normal bereavement. With appropriate treatment and support, prognosis for this condition is good, and the problem usually does not last longer than six months (unless the stressor continues to be present). From a personnel security vetting perspective, the symptoms of this condition are probably easily attenuated by CSP examination procedures and should not preclude an individual's ability to successful complete CSP examinations.

Other Relevant Findings
In the course of exploring SUBJECT's difficulties with CSP examinations, he inadvertently revealed that he has "done extensive research on polygraph" examinations, so much so that he considers himself to be "an expert in polygraph." SUBJECT explained that he and his spouse "began looking into polygraph right after she failed her polygraph tests in January, 2011." SUBJECT provided to the undersigned hard copies of five articles (critical of CSP examination) which he had recently read (these articles were submitted to SEC-5 for their records on 11 December 2013). SUBJECT stated, "These articles are just the tip of the iceberg. My wife and I have read hundreds of articles about why the polygraph doesn't work." When SUBJECT was asked if he had ever looked into CSP countermeasures, he provided various contradictory responses, including (but not limited to), "Yes," "No," "Probably but I'm not sure," "I saw a few but did not read any of it," and "I only quickly glanced through them but did not memorize anything because I'm not interested in beating the polygraph." However, when SUBJECT was later asked what he hoped to get out of this meeting, he replied, "Maybe you can hypnotize me so that I can pass the polygraph."

When queried, SUBJECT initially stated that he had not informed any CSP examiners or SEC-4 investigator about his extensive research into polygraph testing because "no one asked." Following notification that such inquiry was standard protocol in pre-test interviews, SUBJECT responded, "Yes, come to think of it, I did tell at least two of the polygraph examiners and the investigator." In response to the undersigned's opinion that it was highly implausible that all CSP examiners and SEC-4 investigator would leave out such a pertinent disclosure from their reports, SUBJECT averred, "It must be a conspiracy...they're out to get me or something." When confronted on his lack of candor with CSP examiners and investigator, SUBJECT said, "You know, my wife did remind me that you work for the government and I should be careful about what I say to you."

SUBJECT claimed that he was unaware that research into polygraph examination (particularly countermeasures) was prohibited until he was informed by the undersigned during this interview. However, during a Tandberg exchange between USSOCOM SSO and the undersigned on 15 November 2013, the SSO asserted that SUBJECT had been counseled against such activity on at least two occasions prior to SUBJECT's meeting with the undersigned.

Finally, SUBJECT's inadvertent disclosure of having inappropriately conducted research on polygraph testing does not and should not preclude the possibility that there may be other factors (innocuous or nefarious) which may have contributed to his inability to successfully complete CSP examinations thus far.

**UNCLASSIFIED//FOUO/PA-DATA**

EXHIBIT ____1____ CCN 13-100-14
**MORTER AGY 0089**




**UNCLASSIFIED//FOUO/PA-DATA**
**PSYCHOLOGICAL EVALUATION**
**Pre-Decisional Deliberative Material**

Security Vulnerabilities & Associated Threats/Risks
SUBJECT's dossier did not provide any reports of previous security issues. There was also no report of impulsivity, erratic behavior, and aggression or interpersonal violence.

**Conclusion and Recommendations**
In light of the above findings, particularly SUBJECT's verbalized intent and demonstrated efforts to subvert CSP examination, he is unlikely to be a suitable candidate for further polygraph testing. Furthermore, SUBJECT's lack of insight, proclivity to externalize blame and lack of candor probably limits the degree to which he may be willing and/or able to cooperate with realistic threat mitigation strategies. As such it is recommended that this matter be socialized and referred to SEC-3 for adjudicative review and action. Coordination with DIA Office of Human Resources (OHR) will also likely be necessary as USSOCOM has indicated its leadership's reluctance to permit SUBJECT to remain on their premises without adequate/satisfactory resolution of aforenoted issues.

*es/ K. M. Soo-Tho, PhD*

Staff Psychologist
Defense Intelligence Agency
Insider Threat Mitigation Program
███ Joint Base Anacostia-Bolling
Off Tel: ███
VOIP: ███

**UNCLASSIFIED//FOUO/PA-DATA**

EXHIBIT ___I___   CCN 12-100-14