For Official Use Only – Privacy Act Data
**SECURITY REVIEW AND EVALUATION RECORD**
Pre-Decisional Deliberative Material

Page 1 of 3

| SUBJECT: | MORTER, John S. | | FILE NO: | 10-10003416 |
|---|---|---|---|---|
| SSN: | | STATUS: Civilian | OFFICE: | DIA |
| DOB: | POB: OH | NAC Date: 17 Sep 09 | SNAC Date: | |
| Investigation: | Invest. Date: | | Invest. Agency: | |
| Other Investigations Reviewed | AR – 10 Jan 2014  Psychological Eval – 02 Dec 2013 | | | |

☐ A. Allegiance to the US  ☐ B. Foreign Influence  ☐ C. Foreign Preference  ☐ D. Sexual Behavior
☐ E. Personal Conduct  ☐ F. Financial Considerations  ☐ G. Alcohol Consumption  ☐ H. Drug Involvement
☐ I. Psychological Conditions  ☐ J. Criminal Conduct  ☐ K. Handling Protected Information
☐ L. Outside Activities  ☐ M. Use of Information Technology Systems

| Adjudicator: | | Date Adjudicated: | **31 Jan 14** |
|---|---|---|---|
| ☐ ADC Memo/Date Returned: | | ☐ Psych Review/Date Referred: | |
| X Referred to Senior Adjudicator | ☐ Date JPAS Entry Made: | | IS / FS / ITS / FTS / SCI |

| SEC-3B/GL | | CONCUR PLUS / ~~NON-CONCUR~~ | DATE: | 31 Jan 2014 |
|---|---|---|---|---|

Spouse's loss of employment due to a failed poly and SUBJ's repeated failure to pass the CSP exams, no doubt, have compounded His unfavorable expectations of such examinations and given rise to an increasing degree of anxiety associated with each additional process. His negative attitude toward the poly will only result in continued failures. Although the exam is a condition of employment, there is no current information provided to cast doubt on SUBJ's judgment, reliability, or trustworthiness. SUBJ has been in the intelligence business for 32 years and it may be important to note that, to date, no evidence of nefarious activity and/or improper conduct has been uncovered, and that His work history has been favorable. Given the above, it is recommended that He be:
1. Referred for counseling to address His anxiety associated with the CSP exam ;
2. Retested (CSP) no sooner than six months from His last examination (and preferably, following sufficient counseling); and
3. Continued to be scrutinized via other means (e.g. electronic monitoring, etc.) if deemed viable and realistic.

| SEC-3B / TC | | CONCUR / NON-CONCUR | DATE: | |
|---|---|---|---|---|

| SEC-3B | | CONCUR / NON-CONCUR | DATE: | |
|---|---|---|---|---|

| SEC-3▆ | | (CONCUR) / NON-CONCUR | DATE: | 31 Jan 14 |
|---|---|---|---|---|

w/ Ms. Francisco

Per conversation w/ SSO SOCOM, OSI has now taken an interest on Sub & has opened an inquiry. Researching the Poly Program is not an action that warrants Revoking clearances especially if there is a reason. Spouse could not get through her exam and loss her job. Subj has been diagnosed w/ an "Adjustment Disorder w/ Anxiety" & is in counseling. Subj should continue counselling & scheduled for another CSP w/i 6-12 months. Give Subj an Advisory LTR.

For Official Use Only – Privacy Act Data

MORTER AGY 0169

For Official Use Only – Privacy Act Data
**SECURITY REVIEW AND EVALUATION RECORD**
Pre-Decisional Deliberative Material                              Page 2 of 3

| SUBJECT: | MORTER, John S. | FILE NO: | 10-10003416 | ADJ: | |
|---|---|---|---|---|---|
| SF-86 Date: | | SUBJECT Interview Date: | | | |

1. **BACKGROUND:** Subject is a 53 year old Civilian employee assigned to DIA. DIA granted "V" eligibility on 21 January 2010 based on an SBPR completed on 17 September 2009, OPM.
**(See prior read-down's dtd 22 March 2013 and 12 February 2013)**

2. **ISSUES: FOREIGN INFLUENCE/HANDLING PROTECTED INFORMATION:**
**AR – 10 Jan 2014**
SEC-3B requested DIA Office of Security Investigations Division coordinate with the Special Security Officer (SSO) at the US SOCOM in an effort to clarify security issues raised by Subject. Subject claimed HE submitted Unofficial Foreign Contact Reports through the USSOCOM SSO and it was requested this be confirmed. It was also requested to determine the USSOCOM protocol regarding the transfer of information between the SIPRNet and JWICS computer operating systems as well as confirm if Subject was identified as an Information Transfer Authority (ITA) "trusted agent" by HIS chain of command.

SSO, USSOCOM related all copies of Unofficial Foreign Contact Reports pertaining to Subject should have been submitted to DIA, Unofficial Foreign Contact database and they were not in possession of additional contact reports. The SSO, USSOCOM stated "only ITA personnel were authorized to transfer data between SIPRNet and JWICS using IC Clear and ISSE Guard" and it was determined by Subject's chain of command that HE was identified as a "trusted agent".

The Reporting Agent coordinated the investigation with Dr. "Joe", Threat Mitigation Cell (TMC) Staff Psychologist who related he was scheduled to conduct a psychological evaluation/interview of Subject on/about 6 November 2013.
The 2 December 2013 psychological evaluation conducted by Dr. "Joe" concluded Subject was "unlikely to be a suitable candidate for further polygraph testing." Dr. "Joe" further recommended "this matter be referred to SEC-3B for adjudicative review and action."

The Reporting Agent conducted a check of the DIA Office of Security Unofficial Foreign Contact database on 25 September 2013 and determined there were no unofficial foreign contact reports attributed to Subject on file in the database.

On 12 December 2013, the Reporting Agent opined based on information provided by the USSOCOM SSO and the TMC Staff Psychologist, no further investigative action was warranted and this investigation should be closed.

**SEC-3B Psychological Evaluation – 2 December 2013**
Subject revealed that HE has "done extensive research on polygraph" examinations, so much so that HE considers HIMSELF to be "an expert in polygraph." HE explained that HE and HIS spouse "began looking into polygraph right after she failed her polygraph tests in Jan 2011." HE provided hard copies of five articles which HE had recently read. These articles were submitted to SEC-5 for their records on 11 Dec 2013. Subject stated, "These articles are just the tip of the iceberg. My wife and I have read hundreds of articles about why the polygraph doesn't work."
When Subject was asked if HE had ever looked into CSP countermeasures, HE provided various contradictory responses, including "Yes," "No," "Probably but I'm not sure," "I saw a few but did not read any of it," and "I only quickly glanced through them but did not memorize anything because I'm not interested in beating the polygraph." However, when HE was later asked what HE hoped to get out of this meeting, HE replied, "Maybe you can hypnotize me so that I can pass the polygraph."

For Official Use Only – Privacy Act Data        MORTER AGY 0170

In conclusion Dr. "Joe" stated Subject's lack of insight, proclivity to externalize blame and lack of candor probably limits the degree to which HE may be willing and/or able to cooperate with realistic threat mitigation strategies. Coordination with DIA Office of Human Resources (OHR) will also likely be necessary as USSOCOM has indicated its leadership's reluctance to permit Subject to remain on their premises without adequate/satisfactory resolution of aforenoted issues.

3. **DISCUSSION:** According to the DIA Office of Security Unofficial Foreign Contact database, there were no reports attributed to Subject on file in the database. It was, however, determined Subject was identified as a "trusted agent" by HIS chain of command. Subject revealed during HIS psychological evaluation HE has "done extensive research on polygraph" examinations, although also stating HE only quickly glanced through information regarding CSP countermeasures, and did not memorize anything because HE is not interested in beating the poly. It appears Subject's increasing degree of anxiety associated with each additional process is due to HIS spouse's loss of employment due to a failed poly and HIS repeated failure to pass the CSP exams.

4. **RECOMMENDATION:** Refer Subject for counseling for HIS anxiety regarding the CSP exam and retest (CSP) in six months following sufficient counseling.