UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN S. MORTER,<br><br>    Plaintiff,<br><br>  v.<br><br>LLOYD AUSTIN,<br>Secretary of Defense,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)  Civil Action No. 23-0343 (JEB)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**COMBINED REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT
AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK,
Chief, Civil Division

STEPHEN DEGENARO
D.C. Bar #1047116
Assistant United States Attorney
601 D St., N.W.
Washington, D.C.  20530
(202) 252-7229
Stephen.DeGenaro@usdoj.gov

*Attorneys for the United States of America*

November 28, 2023

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................... 1

ARGUMENT ............................................................................................................................ 1

I.   Plaintiff Failed to Exhaust His Failure to Accommodate Claim. ...................................... 1

II.  Plaintiff's Failure to Accommodate Claim Fails on the Merits. ....................................... 2

III. Plaintiff's Disparate Treatment Claim Fails on the Merits. .............................................. 6

IV.  Plaintiff Fails to State a Cognizable Disparate Impact Claim. ........................................ 10

CONCLUSION ....................................................................................................................... 12

## TABLE OF AUTHORITIES

PAGE(S)

Cases

*Aliotta v. Bair*,
   614 F.3d 556 (D.C. Cir. 2010) .................................................................................................. 11

*Brisbon v. Tischner*,
   639 F. Supp. 3d 164 (D.D.C. 2022) ..................................................................................... 7, 8, 9

*Bryant v. Gates*,
   532 F.3d 888 (D.C. Cir. 2008) ................................................................................................ 5, 6

*Cox v. Nielsen*,
   Civ. A. No. 16-1966 (TNM), 2019 WL 1359806 (D.D.C. Mar. 26, 2019) ................................ 5

*Guerrero v. Univ. of D.C.*,
   251 F. Supp. 2d 13 (D.D.C. 2003) ............................................................................................. 2

*Hamilton v. Geithner*,
   666 F.3d 1344 (D.C. Cir. 2012) ................................................................................................. 2

*Johnson v. Panetta*,
   953 F. Supp. 2d 244 (D.D.C. 2013) ........................................................................................... 5

*Menoken v. Berry*,
   408 F. App'x 370 (D.C. Cir. 2010) .......................................................................................... 11

*Morris v. McCarthy*,
   825 F.3d 658 (D.C. Cir. 2016) ................................................................................................... 9

*Park v. Howard Univ.*,
   71 F.3d 904 (D.C. Cir. 1995) ..................................................................................................... 1

*Phrasavang v. Deutsche Bank*,
   656 F. Supp. 2d 196 (D.D.C. 2009) ........................................................................................... 5

*Rattigan v. Gonzales*,
   503 F. Supp. 2d 56 (D.D.C. 2007) ............................................................................................. 2

*United States v. TDC Mgmt. Corp.*,
   827 F.3d 1127 (D.C. Cir. 2016) ................................................................................................. 5

*Walker v. Johnson*,
   798 F.3d 1085 (D.C. Cir. 2015) ............................................................................................. 7, 9

*Waterhouse v. District of Columbia*,
   298 F.3d 989 (D.C. Cir. 2002) ................................................................................................... 9

*Watson v. Fort Worth Bank & Tr.*,
   487 U.S. 977 (1988) ................................................................................................................ 11

Regulations

29 C.F.R. § 1614.407 ....................................................................................................................... 1

**INTRODUCTION**

Defendant Lloyd Austin, Secretary of Defense ("Defendant"), respectfully submits this reply in further support of Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment and in opposition to Plaintiff's Motion for Summary Judgment. For the reasons set forth below, Defendant respectfully requests that this Court dismiss Plaintiff's failure to accommodate claim or grant Defendant summary judgment on Plaintiff's disability discrimination claims in full. As discussed herein, Plaintiff's opposition fails to persuasively rebut the grounds presented by Defendant.

**ARGUMENT**

**I.      Plaintiff Failed to Exhaust His Failure to Accommodate Claim.**

In his opposition, Plaintiff argues that he has exhausted administrative remedies for his failure to accommodate claim because he (1) authored a "notice of appeal" on June 4, 2014, (2) engaged in informal EEO counseling, and (3) engaged in alternative dispute resolution. ECF No. 7-1 at 10-11. Based on these three arguments, Plaintiff contends that "Defendant has been formally notified of my complaint, had every opportunity to cancel my reassignment and return me to my duty position, but refused to do so." *Id.* at 11. None of these arguments helps Plaintiff, however, and instead they merely confirm that Plaintiff failed to comply with the Rehabilitation Act's mandatory exhaustion requirements.

Filing a formal complaint is a prerequisite to exhaustion, *see* 29 C.F.R. § 1614.407 ("A complainant who has filed an individual complaint . . . is authorized under title VII . . . to file a civil action in an appropriate United States District Court" after final EEO action or after 180 days), so Plaintiff cannot rely on the EEO counseling report, his self-styled "notice of appeal," or any alternative dispute resolution to establish exhaustion of a claim that he failed to include in a formal complaint. To exhaust his administrative remedies, a plaintiff must file a claim with the

agency and "allow the agency time to act on the charge." *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995). "These procedural requirements governing [a] plaintiff's right to bring a Title VII claim in federal court are not trivial." *Rattigan v. Gonzales*, 503 F. Supp. 2d 56, 68 (D.D.C. 2007). Rather, administrative exhaustion is meant to give the "agency notice of a claim and [the] opportunity to handle it internally," *Guerrero v. Univ. of D.C.*, 251 F. Supp. 2d 13, 21 (D.D.C. 2003) (alteration in original), which preserves the court's time and resources, *Hamilton v. Geithner*, 666 F.3d 1344, 1350–51 (D.C. Cir. 2012).

Here, it is not in dispute that Plaintiff's formal complaint of discrimination (ECF No. 7-29 at 1-2) did not include a failure to accommodate claim. The formal complaint repeatedly mentions that Plaintiff believes that he was subjected to disability discrimination, but omits any reference to the fact that Plaintiff requested a reasonable accommodation or that Defendant denied one. Plaintiff has failed to exhaust administrative remedies for a failure to accommodate claim because he never filed a formal EEO charge for that claim. *See, e.g.*, *Hamilton v. Geithner*, 666 F.3d 1344, 1350 (D.D.C. 2012) (concluding that plaintiff failed to exhaust a claim that he had raised during the EEO counseling session but which was not included in a formal complaint of discrimination).

## II.     Plaintiff's Failure to Accommodate Claim Fails on the Merits.

Plaintiff next challenges Defendant's argument that he cannot demonstrate that he was a qualified individual with a disability notwithstanding the fact that he failed the polygraph examination on four separate occasions prior to informing Defendant of his anxiety diagnosis. According to Plaintiff, he should be regarded as a qualified individual with a disability because of a provision found in Department Instruction 5210.91 that he says prohibits the Department of Defense from limiting his access to classified or sensitive information based on the results of the polygraph.

In support of this argument, Plaintiff quotes from Department Instruction 5210.91, Enclosure 3, paragraph 2g, which provides:

> PCA examinations are a supplement to, not a substitute for, other methods of screening or investigation. No unfavorable administrative action (to include access, employment, assignment, and detail determinations) shall be taken solely on the basis of either a refusal to undergo a [personnel security screening] examination or an unresolved [personnel security screening] examination, except as provided in Sections 6 and 7 of Enclosure 4.

Ex. A - Dep't Instr. 5210.91 Encl. 3, ¶ 2(g).  Once again, Plaintiff is mistaken.

Department Instruction 5210.91 Encl. 3, ¶ 2(g) includes an exception to this rule by its own express terms that applies here.[1]  Specifically, the Department of Defense is authorized to take "unfavorable administrative action . . . solely on the basis of either a refusal to undergo a [polygraph] examination or an unresolved [polygraph] examination" in the circumstances provided for in Sections 6 and 7 of Enclosure 4.  Those sections provide:

> 6. REFUSAL TO TAKE OR COMPLETE A [PERSONNEL SECURITY SCREENING POLYGRAPH]. [Department]-affiliated personnel who refuse to take or complete a polygraph examination and are in positions designated as requiring a [personnel security screening] polygraph examination as part of determining initial eligibility for access to Top Secret, SAP, or other sensitive intelligence or operational information or for initial assignment or detail to the CIA or other IC elements, may be denied access, assignment, or detail.
>
> 7. FAILURE TO RESOLVE A [PERSONNEL SECURITY SCREENING POLYGRAPH]. [Department]-affiliated personnel in positions cited in section 6 of this enclosure who are unable to resolve all relevant questions of a [personnel security screening] shall be so advised. The results of the examination shall be forwarded to the requesting agency.
>
> a. If, after reviewing the examination results, the requesting agency determines that they raise a significant question relevant to the individual's eligibility for a security

---

[1]    Plaintiff provides no authority for the proposition that this portion of Department Directive applies to this.

3

clearance or continued access, the individual shall be given an opportunity to undergo additional examination.[2]

b. If the additional examination fails to resolve all relevant questions, the Head of the DoD Component may initiate a CI investigation in accordance with [Department] policy.

c. Additionally, the Head of the relevant [Department] Component may temporarily suspend an individual's access to controlled information and deny the individual assignment or detail that is contingent on such access, based upon a written finding that, considering the results of the examination and the extreme sensitivity of the classified information involved, access under the circumstances poses an unacceptable risk to the national security. Such temporary suspension of access may not form the part of any basis for an adverse administrative action or an adverse personnel action.

d. The individual shall be advised in writing of the determination, that the determination may be appealed to the Head of the relevant Department Component, and that his or her final determination is conclusive.

Ex. A - Dep't Instr. 5210.91 Encl. 4, §§ 6-7.

That is precisely what happened here—Plaintiff failed to pass polygraph examinations on four separate occasions, each of which flagged that Plaintiff had unresolved issues with mishandling classified information and unauthorized foreign contacts. Moreover, Plaintiff was afforded not only "an additional examination," as provided for by Department Instruction 5210.91 Encl. 4, § 7(a), but also two additional examinations to cure the unresolved issues flagged by his polygraph examination—all to no avail. Plaintiff was subsequently informed in writing that the U.S. Special Operations Command ("Command") barred Plaintiff's access to sensitive facilities. ECF No. 5-13. Defendant thus acted consistent with, and not contrary to, the procedures set forth

---

[2] Notably, in this case, it is not in dispute that Plaintiff had four total opportunities to pass the polygraph examination.

4

in Department Instruction 5210.91.³  Thus, Plaintiff's invocation of Department Instruction 5210.91 does not demonstrate that he was a qualified individual with a disability.

Moreover, even if it were the case that Plaintiff could demonstrate that he was a qualified individual with a disability, he has failed to meaningfully respond to Defendant's alternative argument that he was denied a reasonable accommodation because the undisputed record reveals that Plaintiff never submitted a request for a reasonable accommodation prior to the Command informing Plaintiff that he was no longer permitted in the Command's Tampa, Florida facility. ECF No. 5-1 at 22-23. Plaintiff conspicuously fails to grapple with that argument whatsoever.

Where a party fails to respond to arguments the other side advanced, the Court may treat those arguments as conceded. *See Phrasavang v. Deutsche Bank*, 656 F. Supp. 2d 196, 201 (D.D.C. 2009). Moreover, "[p]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are deemed waived." *Cox v. Nielsen*, Civ. A. No. 16-1966 (TNM), 2019 WL 1359806, at *14 (D.D.C. Mar. 26, 2019) (quoting *Johnson v. Panetta*, 953 F. Supp. 2d 244, 250 (D.D.C. 2013) (internal quotation marks omitted)). Indeed, a party may "forfeit [an argument] because [the party] does not further develop it (or even mention it again) after [a] 'single, conclusory statement.'" *United States v. TDC Mgmt. Corp.*, 827 F.3d 1127, 1130 (D.C. Cir. 2016) (quoting *Bryant v. Gates*, 532 F.3d 888, 898 (D.C. Cir. 2008)). Here, because Plaintiff

---

³ Plaintiff also objects that Defendant violated Department Instruction 5210.91 Enclosure 4, section 2(h), which requires that heads of Department "Components approved to conduct PSS examinations or establish PSS programs to screen designated personnel shall establish written procedures to," among other things, "exempt or postpone examinations when individuals are considered medically, psychologically, or emotionally unfit to undergo an examination." As discussed in Defendant's opening memorandum, the DIA Insider Threat Program examined Plaintiff and determined that Plaintiff would not be a good candidate for future polygraph testing, not because of "medical[], psychological[], or emotional[] unfit[ness]," but because of his "verbalized intent and demonstrated efforts to subvert" the testing. ECF No. 5-8 at 1-4; ECF No. 5-9. Thus, Plaintiff cannot demonstrate that there has been any lack of compliance with Ex. A - DoD Instruction 5210.91 Encl. 4, § 2(h).

failed to respond at all to Defendant's argument that he was not denied a reasonable accommodation that he had actually requested—much less did he advance a "perfunctory and undeveloped argument"—this Court should treat Defendant's argument as conceded.

Lastly, even if this Court were to disagree and conclude that Plaintiff has not conceded Defendant's argument on this point, Defendant's arguments are correct on their merits and nothing in Plaintiff's opposition alters this conclusion. As such, Defendant respectfully requests that this Court grant its motion to dismiss or in the alternative for summary judgment on Plaintiff's failure to accommodate claim for all the reasons stated in its opening papers. See ECF No. 5. Accordingly, Defendant may prevail on this alternative ground as well.

### III. Plaintiff's Disparate Treatment Claim Fails on the Merits.

Plaintiff's opposition challenges Defendant's argument about a lack of pretext by attacking Defendant's honest belief that Plaintiff's failure to pass the polygraph examination on the issue of mishandling classified information—among other issues—presented an unacceptable risk in Plaintiff's then-current position. ECF No. 7-1 at 13. Plaintiff advances several arguments that he contends demonstrate pretext. He suggests that Defendant "unethically refused to accept my claim that my disabilities were the cause for me not being able to pass the [polygraph]." *Id.* He also argues that Defendant "blatantly violated the approved and relevant regulations" in temporarily suspending his access to classified and sensitive information, and reassigning him to a position where he posed less of a security risk. *Id.* He also contends that Defendant is "lying" about Plaintiff having researched the polygraph because he "admitted to doing so in the June 2014 investigation." *Id.* Plaintiff also notes that the Chief of the Central Adjudication Facility remarked that "researching the polygraph is not a disqualifying factor" in recommending against revocation of his security clearance. *Id.* Finally, he argues that there is no evidence that he attempted to subvert the polygraph examination. *Id.*

6

Each of these arguments fails. Plaintiff asserts—without evidence—that Defendant "unethically refused to accept my claim that my disabilities were the cause for me not being able to pass the CSP." As discussed in Defendant's opening memorandum, Plaintiff did not disclose an anxiety diagnosis until after he had failed to pass the polygraph four separate times. ECF No. 5-1 at 10. Defendant's opening memorandum also explained that Defendant had Plaintiff assessed, determined that Plaintiff was not a good candidate for further polygraph examinations, but nonetheless needed to mitigate the risk presented by Plaintiff's repeated failures by relocating him to Defense Intelligence Agency ("DIA") Headquarters, where he could be monitored through means other than polygraph examination. *Id.* at 11-13. Thus, even if Plaintiff had presented evidence that it was a disability that had caused him to fail the polygraph on four separate occasions—and Plaintiff identifies none other than a subsequent diagnosis made only after he failed the examinations—the evidence does not undermine the conclusion that Defendant had an honest belief that Plaintiff presented a security risk because of the failed polygraph examinations, regardless of the cause, and that DIA needed to monitor him through alternative means at headquarters. *Walker v. Johnson*, 798 F.3d 1085, 1096 (D.C. Cir. 2015). Similarly unavailing is Plaintiff's claim that Defendant "blatantly violated the approved and relevant regulations"—to the contrary, as discussed in Section II *supra*, Defendant correctly adhered to the procedures delineated in Department Instruction 5210.91. No inference of pretext can be drawn from Defendant adhering to its own regulations. *See Brisbon v. Tischner*, 639 F. Supp. 3d 164, 175 (D.D.C. 2022) ("Although an employer's departure from procedure is a factor that the trier of fact may deem probative in determining the true motivation behind the hiring decision, the plaintiff must provide some evidence of the standard procedures themselves in order for the Court to evaluate whether there has been a deviation[.]" (internal quotation marks and citations omitted)).

7

Plaintiff next argues that Defendant is "lying" about having researched the polygraph because he "admitted to doing so in the June 2014 investigation." This gets the material facts backwards. Regardless whether Plaintiff disclosed the research to Defendant in June 2014, the record is undisputed that Plaintiff revealed that he had conducted "extensive research" into the polygraph in November 2013. ECF No. 5-9 at 3. It is also undisputed, as Plaintiff does not challenge it in his opposition, that during this November 2013 evaluation, Plaintiff equivocated about whether he had specifically researched countermeasures for the polygraph examination, and gave contradictory answers about whether he had previously disclosed this research to security personnel.[4] *Id.* Thus, by the time of any disclosure in the June 2014 investigation, Plaintiff would have already failed to pass the polygraph examination on four separate occasions and have been less than forthcoming about the nature of his research into polygraphs. On this record, therefore, no reasonable jury could disbelieve that Defendant honestly believed that Plaintiff presented a security risk in his current position.

Plaintiff next implies that this Court should infer pretext from the fact that the Chief of the Central Adjudication Facility remarked that "researching the polygraph is not a disqualifying factor" in recommending against revocation of Plaintiff's security clearance. This is true, but is also beside the point. It is not in dispute that Plaintiff did not have his security clearance revoked. Rather, Plaintiff's exhibit confirmed that the Chief of the Central Adjudication Facility proposed

---

4   Plaintiff's argument that "[t]here is no documented instance of [Plaintiff attempting to subvert the polygraph] ever happening in any of the polygraph examination reports" is misplaced for similar reasons. As an initial matter, the documentary evidence suggested that Plaintiff was not forthcoming in answering whether he had researched ways to subvert the polygraph examination, not whether he actually attempted to. ECF No. 5-9 at 3. Plaintiff's opposition is conspicuously silent in responding to this point. Moreover, the documentary evidence can be located not in the polygraph examination reports, but rather in the report of Doctor Soo-Tho, which itself was based on an interview with Plaintiff. *Id.*

that Plaintiff receive an advisory letter. ECF No. 7-19. And that is exactly what occurred: DIA issued Plaintiff an advisory letter on February 6, 2014. ECF No. 5-12. The letter informed Plaintiff that he was not being penalized for seeking treatment for his mental health but nonetheless made clear that his continued access to Sensitive Compartmented Information would be subject to "continuous evaluation." *Id.* Thus, Plaintiff cannot demonstrate pretext by pointing to a security clearance revocation that did not occur.

More fundamentally, each of Plaintiff's arguments as to pretext fails to call into question that Defendant honestly believed that Plaintiff's persistent failure of the polygraph examinations presented a security risk that needed to be mitigated through reassignment. Even construing Plaintiff's arguments in the light most favorable to him, they do not carry Plaintiff's burden to demonstrate that a "reasonable jury not only could disbelieve the employer's reasons, but also could conclude that the employer acted, at least in part, for a prohibited reason." *Walker*, 798 F.3d at 1096. Indeed, "courts are without authority to second-guess an employer's personnel decision absent demonstrably discriminatory motive." *Waterhouse v. District of Columbia*, 298 F.3d 989, 995 (D.C. Cir. 2002). And, "[o]nce the employer has articulated a nondiscriminatory explanation for its action . . . the issue is not 'the correctness or desirability of [the] reasons offered . . . [but] whether the employer honestly believes in the reasons it offers.'" *Morris v. McCarthy*, 825 F.3d 658, 671 (D.C. Cir. 2016) (alterations in original; citation omitted).

Here, Plaintiff's opposition fails to call that honest belief into question. No reasonable jury could conclude on this record that it was Plaintiff's alleged disability that was the real reason why the Command limited Plaintiff's access to sensitive facilities and then reassigned him where the risk he posed could be better mitigated, and not the four failed polygraph examinations that preceded Plaintiff's first report of a disability. The undisputed evidence reveals that both DIA and

9

the Command had expressed concerns about Plaintiff's ability to perform the essential functions of his job as an Intelligence Analyst—*i.e.*, handle Top Secret information—because of his repeated failures of the polygraph examinations and the subsequent security investigation. There is no evidence from which a reasonable jury could conclude this reason is pretextual. Thus, this Court should grant Defendant summary judgment on Plaintiff's disparate treatment claim, as well.

### IV.     **Plaintiff Fails to State a Cognizable Disparate Impact Claim.**

Finally, Plaintiff challenges Defendant's arguments that his disparate impact claim is not cognizable because he failed to marshal evidence that Defendant's facially neutral employment practice had a significantly discriminatory impact on those with disabilities. In his opposition, Plaintiff contends that, in discovery, Defendant admitted that

> from fiscal year 2011 through 2014, 30,099 polygraph examinations were administered. They admit that on average 13.25% of examinations result in 'No Opinion.' That equates to approximately 4,000 that ended with the same result as mine. Additionally, they reveal that on average, 5% of examinations resulted in a 'Significant Response.' That would mean that approximately 1,500 employees would have performed as I did, yet there is no record of thousands of people being punished based solely on their inability to successfully complete the PCA.

ECF No. 7-1 at 14. Even taking this evidence in the light most favorable to Plaintiff, however, his statistics fail to reveal that people with disabilities are failing to pass the polygraph examination at a disproportionate rate relative to those without disabilities.

Plaintiff's statistics cover the polygraph examinations conducted with all employees over a three-year span. Plaintiff's statistics do not attempt to separate disabled employees from non-disabled employees, nor do they identify their respective passage rates. The statistics, therefore, are nothing more than "raw, unanalyzed statistics proffered by [Plaintiff that] do not show how many [disabled employees failed the polygraph examination] nor whether the specific policies in

issue had disparate effects."[5] *Menoken v. Berry*, 408 F. App'x 370, 373 (D.C. Cir. 2010). Moreover, the proffered statistics are devoid of any—let alone "significant"—disparities between the passage rates of disabled versus non-disabled employees. *See, e.g.*, *Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 987 (1988). Is the rate of disabled employees receiving a "No Opinion" result on their examination higher or lower than the 13.25% rate for (presumably) all employees proffered by Plaintiff?  Or is the rate of disabled employees receiving a "Significant Response" higher or lower than the quoted 5% rate for (again, presumably) all employees?  Plaintiff's statistics do not say, so all are left to speculate.  But one thing is clear, this Circuit's precedents require more.  *Aliotta v. Bair*, 614 F.3d 556, 565 (D.C. Cir. 2010) (noting that, in the context of a claim of disparate impact under the ADEA, to demonstrate a *prima facie* case of disparate impact, the plaintiff was required to "offer statistical evidence of a kind and degree sufficient to show the employment decision disproportionately impacts older employees"); *Menoken,* 408 F. App'x at 373.  Accordingly, this Court should either dismiss this claim, or grant Defendant summary judgment on it.

\* \* \*

---

[5] If anything, the statistics as presented instead demonstrate that Defendant's facially neutral policy of requiring passage of polygraph examination impacts disabled and non-disabled employees alike—without additional information provided, it is reasonable to assume that the majority (if not overwhelming majority) of the approximately 4,000 examinees with a "No Opinion" result, or the approximately 1,500 employees with a "Significant Response" result, were not disabled but, like Plaintiff, failed the polygraph examination.

11

## CONCLUSION

For all these reasons, and for those contained in the opening memorandum, Defendant respectfully requests that this Court grant his motion, deny Plaintiff's motion for summary judgment, dismiss Plaintiff's failure to accommodate claim or grant Defendant summary judgment on Plaintiff's disability discrimination claims in full.

Date: November 28, 2023

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK,
Chief, Civil Division

By:   /s/ *Stephen DeGenaro*
STEPHEN DEGENARO
D.C. Bar #1047116
Assistant United States Attorney
601 D St., N.W.
Washington, D.C.  20530
(202) 252-7229
Stephen.DeGenaro@usdoj.gov

*Attorneys for the United States of America*