

# Department of Defense
# INSTRUCTION

**NUMBER** 5210.91
August 12, 2010
Incorporating Change 2, Effective March 30, 2020

USD(I&S)

SUBJECT:   Polygraph and Credibility Assessment (PCA) Procedures

References:   See Enclosure 1

1. <u>PURPOSE</u>.  This Instruction:

    a.  Incorporates and cancels DoD 5210.48-R (Reference (a)), the Under Secretary of Defense for Intelligence Memorandum (Reference (b)), and the Deputy Under Secretary of Defense (Counterintelligence and Security) Memorandum (Reference (c)).

    b.  Establishes and implements policy, assigns responsibilities, and provides procedures governing the use of polygraph and other approved credibility assessment tools in accordance with the guidance in DoD Directive (DoDD) 5210.48 (Reference (d)) and the authority in DoDD 5143.01 (Reference (e)).

2. <u>APPLICABILITY</u>.  This Instruction applies to OSD, the Military Departments, the Office of the Chairman of the Joint Chiefs of Staff and the Joint Staff, the Combatant Commands, the Office of the Inspector General of the Department of Defense, the Defense Agencies, the DoD Field Activities, and all other organizational entities within the Department of Defense (hereafter referred to collectively as the "DoD Components").

3. <u>DEFINITIONS</u>.  See Glossary.

4. <u>POLICY</u>.  It is DoD policy that:

    a.  Polygraph examinations be conducted pursuant to section 1564a of title 10, United States Code (U.S.C.) (Reference (f)).  Personnel who refuse to take or are unable to successfully complete the polygraph examination may be denied access to information identified in Reference (f).

   b.  DoD Components shall have written PCA procedures.

   c.  DoD Components shall follow the PCA quality control (QC) and quality assurance (QA) standards established in this Instruction.

   d.  Only properly trained personnel shall conduct PCA examinations.

   e.  The Preliminary Credibility Assessment Screening System (PCASS) shall not be used to test U.S. persons.  This does not apply to PCASS examinations conducted for training.


5.  <u>RESPONSIBILITIES</u>.  See Enclosure 2.


6.  <u>PROCEDURES</u>.  See Enclosures 3 through 9.


7.  <u>RELEASABILITY</u>.  UNLIMITED.  This Instruction is approved for public release and is available on the Directives Division Website at https://www.esd.whs.mil/DD/.


8.  <u>SUMMARY OF CHANGE 2</u>.  The change to this issuance updates organizational titles and references and removes expiration language in accordance with current Chief Management Officer of the Department of Defense direction.


9.  <u>EFFECTIVE DATE</u>.  This Instruction is effective August 12, 2010.


James R. Clapper, Jr.
Under Secretary of Defense for Intelligence

Enclosures
    1.  References
    2.  Responsibilities
    3.  PCA Program
    4.  Polygraph Examinations
    5.  PCASS Examinations
    6.  Selection and Training of Polygraph Examiners and PCASS Operators
    7.  QC and QA of PCA Programs
    8.  RDT&E of PCA Technologies
    9.  Information Requirements
Glossary

*DoDI 5210.91, August 12, 2010*

# TABLE OF CONTENTS

ENCLOSURE 1:  REFERENCES ..................................................................................................5

ENCLOSURE 2:  RESPONSIBILITIES .......................................................................................6

   UNDER SECRETARY OF DEFENSE FOR INTELLIGENCE AND SECURITY
     (USD(I&S)) ...........................................................................................................................6
   DEPUTY UNDER SECRETARY OF DEFENSE FOR INTELLIGENCE AND SECURITY
     (DUSD(I&S)) .......................................................................................................................6
   DIRECTOR, DEFENSE INTELLIGENCE AGENCY (DIA) ...................................................6
   HEADS OF THE DoD COMPONENTS ..................................................................................7

ENCLOSURE 3:  PCA PROGRAM ..............................................................................................9

   ESTABLISHING A PCA PROGRAM .....................................................................................9
   GENERAL PROGRAM PROCEDURES ..................................................................................9
   NON-DUTY EMPLOYMENT AND PUBLIC DEMONSTRATIONS ..................................11
   NCCA .......................................................................................................................................11

ENCLOSURE 4:  POLYGRAPH EXAMINATIONS ..................................................................13

   TYPES AND AUTHORIZED USES OF THE POLYGRAPH ...............................................13
     Issue-Based Examinations ....................................................................................................13
     PSS Examinations .................................................................................................................14
     ESS Examinations .................................................................................................................15
     CSP Examinations ................................................................................................................15
     Examinations Conducted Outside the Department of Defense ..............................................16
   PSS PROGRAM REQUIREMENTS AND PROCEDURES .................................................17
   CSP AND ESS EXAMINATION QUESTIONS ...................................................................17
     CSP Questions ......................................................................................................................17
     ESS Questions .......................................................................................................................18
   CONDUCT OF A POLYGRAPH EXAMINATION ..............................................................18
     Pretest ...................................................................................................................................18
     Data Collection .....................................................................................................................19
     Test Data Analysis ...............................................................................................................20
     Post-Test ...............................................................................................................................20
   POLYGRAPH LIMITATIONS ...............................................................................................20
   REFUSAL TO TAKE OR COMPLETE A PSS ....................................................................21
   FAILURE TO RESOLVE A PSS ...........................................................................................21
   APPEALS .................................................................................................................................21
   POLYGRAPH CM AWARENESS AND POLYGRAPH ANTI-CM PROCEDURES .........22
     NCCA Training Requirements, CM Awareness, and Reporting Procedures ....................22
     Reporting CM .......................................................................................................................22

CONTENTS

ENCLOSURE 5:  PCASS EXAMINATIONS ..............................................................................24

    APPLICATION AND RESTRICTIONS ................................................................................24
    REQUIREMENTS FOR ESTABLISHING A PCASS PROGRAM ......................................24
    SUSPENSION AND REACTIVATION OF A PCASS PROGRAM.....................................25
    PCASS PROCEDURES ........................................................................................................25

ENCLOSURE 6:  SELECTION AND TRAINING OF POLYGRAPH EXAMINERS AND
PCASS OPERATORS ...............................................................................................................26

    GENERAL.............................................................................................................................26
    SELECTION OF POLYGRAPH EXAMINERS AND PCASS OPERATORS ....................26
        Polygraph Examiners .......................................................................................................26
        PCASS Operators.............................................................................................................26
    TRAINING AND CERTIFICATION OF POLYGRAPH EXAMINERS AND PCASS
    OPERATORS .........................................................................................................................26
        Polygraph Examiners .......................................................................................................26
        PCASS Operators.............................................................................................................27

ENCLOSURE 7:  QC AND QA OF PCA PROGRAMS ............................................................29

    QC..........................................................................................................................................29
    QA..........................................................................................................................................29

ENCLOSURE 8:  RDT&E OF PCA TECHNOLOGIES ...........................................................31

    GENERAL.............................................................................................................................31
    PCA STUDIES AND RESEARCH.......................................................................................31
    RDT&E REPORTING...........................................................................................................31
    FIELD TESTING...................................................................................................................32
    OPERATIONAL USE ...........................................................................................................32

ENCLOSURE 9:  INFORMATION REQUIREMENTS ............................................................34

    PRIVACY AND INFORMATION PROTECTION ...............................................................34
    POLYGRAPH RECORDS ....................................................................................................34
    RETENTION AND DISSEMINATION ...............................................................................35

GLOSSARY ...............................................................................................................................36

    ABBREVIATIONS AND ACRONYMS ..............................................................................36
    DEFINITIONS.......................................................................................................................37

ENCLOSURE 1

REFERENCES

(a) DoD 5210.48-R, "Department of Defense Polygraph Program," January 9, 1985 (hereby cancelled)

(b) Under Secretary of Defense for Intelligence Memorandum, "Operational Approval of the Preliminary Credibility Assessment Screening System (PCASS)," October 29, 2007 (hereby cancelled)

(c) Deputy Under Secretary of Defense (Counterintelligence and Security) Memorandum, "Interim Policy for Polygraph Anti-Countermeasures Procedures," March 27, 2006 (hereby cancelled)

(d) DoD Directive 5210.48, "Credibility Assessment (CA) Program," April 24, 2015, as amended

(e) DoD Directive 5143.01, "Under Secretary of Defense for Intelligence (USD(I))," October 24, 2014, as amended

(f) Section 1564a of title 10, United States Code

(g) DoD Instruction 5400.11, "DoD Privacy and Civil Liberties Programs," January 29, 2019

(h) DoD 5400.11-R, "Department of Defense Privacy Program," May 14, 2007

(i) Chapter 47 of title 10, United States Code

(j) Executive Order 13467, "Reforming Processes Related to Suitability for Government Employment, Fitness for Contractor Employees, and Eligibility for Access to Classified National Security Information," June 30, 2008

(k) DoD Manual 5200.01, "Information Security Program," February 24, 2012, as amended

(l) DoD Manual 5200.02, "Procedures for the DoD Personnel Security Program (PSP)," April 3, 2017

(m) Section 435b of title 50, United States Code

(n) DoD Instruction 3216.02, "Protection of Human Subjects and Adherence to Ethical Standards in DoD-Supported Research," November 8, 2011, as amended

(o) DoD Directive 5000.01, "The Defense Acquisition System," May 12, 2003, as amended

(p) DoD Instruction 5000.02, "Operation of the Adaptive Acquisition Framework," January 23, 2020

(q) DoD Instruction 5000.02T, "Operation of the Defense Acquisition System," January 7, 2015, as amended

(r) Executive Order 12958, "Classified National Security Information," April 17, 1995, as amended

(s) DoD Instruction 5015.02, "DoD Records Management Program," February 24, 2015, as amended

(t) Office of the Inspector General of the Department of Defense, Report Number 05-INTEL-18, "Review of the Actions Taken to Deter, Detect, and Investigate the Espionage Activities of Ana Belen Montes (U)," June 16, 2005

(u) DoD Manual 5240.01, "Procedures Governing The Conduct Of DoD Intelligence Activities," August 8, 2016

*DoDI 5210.91, August 12, 2010*

ENCLOSURE 2

RESPONSIBILITIES

1.  UNDER SECRETARY OF DEFENSE FOR INTELLIGENCE AND SECURITY (USD(I&S)).  The USD(I&S) shall:

    a.  Serve as the OSD Principal Staff Assistant and advisor to the Secretary of Defense regarding the DoD PCA Program.

    b.  Approve DoD Components permitted to have PCA programs.

    c.  Approve those PCA technologies authorized for use within the Department of Defense.

    d.  Approve requests to augment counterintelligence (CI)-scope polygraph (CSP) examinations with the question areas of the expanded-scope screening (ESS) examination for initial applicants to designated positions.

2.  DEPUTY UNDER SECRETARY OF DEFENSE FOR INTELLIGENCE AND SECURITY (DUSD(I&S)).  The DUSD(I&S), under the authority, direction, and control of the USD(I&S), shall:

    a.  Develop and recommend PCA policy.

    b.  Provide PCA policy oversight.

3.  DIRECTOR, DEFENSE INTELLIGENCE AGENCY (DIA).  The Director, DIA, under the authority, direction, and control of the USD(I&S), shall:

    a.  Oversee the DoD PCA Program.

    b.  Appoint a DoD PCA program manager.

    c.  Chair the PCA Program Executive Committee.

    d.  Manage the National Center for Credibility Assessment (NCCA) and the DoD PCA RDT&E.

    e.  Establish standards for PCASS equipment, software, techniques, procedures, training, certification, examinations, and record keeping.

f.  Convene annual meetings with DoD PCA program and non-DoD Federal PCA program representatives to discuss research, training standards or instructions, and modifications or amendments to QA standards.

g. Schedule QA inspections of the DoD Components.

h.  Conduct PCA program planning and strategic forecasting of DoD PCA program requirements.

i.  Request and review after-action reports and lessons learned relating to PCA training, equipment, methodology, and support to DoD-wide PCA missions.

j.  Develop, collect, and analyze PCA performance measurements.

k.  Approve modifications to PCASS equipment and software.

l. Approve field testing of PCA technologies in accordance with Enclosure 8.

m.  Coordinate with the Joint Staff and the DoD Components to recommend the organization of joint or DoD interagency elements to accomplish priority PCA requirements.  As necessary:

(1)  Recommend the assignment of lead responsibilities for on-site coordination in a joint operating environment.

(2)  Exercise CI mission tasking authority for PCA examinations.


4. <u>HEADS OF THE DoD COMPONENTS APPROVED TO CONDUCT PCA EXAMINATIONS</u>.  The Heads of the DoD Components approved to conduct PCA examinations, listed in Enclosure 1 of Reference (d) and hereafter referred to as "PCA DoD Components", shall:

a.  Appoint a PCA manager before program implementation.  The PCA manager shall:

(1)  Coordinate Component PCA activities.

(2)  Participate in PCA committees and working groups.

(3)  Support PCA data collection for ongoing research and validation efforts.

b.  Appoint officials to approve requests for PCA examinations in accordance with Enclosure 3.

c.  Develop written PCA procedures in coordination with NCCA.

d.  Coordinate with DIA before researching, acquiring, evaluating, testing, or using new PCA technologies.

e.  Develop record-keeping procedures in accordance with DIA guidance and Enclosure 9.

f.  Account for PCA equipment.

g.  Train and certify polygraph examiners, PCASS operators, and supervisors in accordance with DIA guidance.

h.  Designate positions requiring a personnel security screening (PSS) polygraph as part of determining initial or continuing eligibility for access to Top Secret information, special access program (SAP), or other sensitive intelligence or operational information.

ENCLOSURE 2

*DoDI 5210.91, August 12, 2010*

ENCLOSURE 3

PCA PROGRAM

1. ESTABLISHING A PCA PROGRAM

    a.  Only the polygraph and the PCASS are approved PCA technologies for operational use. PCASS may only be used in accordance with Enclosure 5 of this Instruction.

    b.  DoD Components with PCA programs shall:

        (1)  Appoint, in writing, officials in the grade of O-5, civilian equivalent, or above to approve requests for polygraph examinations.

        (2)  Appoint, in writing, an official of appropriate rank and responsibility to approve requests for PCASS examinations.

        (3)  Have appointed officials contact PCA subject matter experts for advice when determining the appropriateness and scope of individual examinations.

        (4)  Appoint a manager with appropriate technical expertise to provide technical oversight of examiners and the QC process.

        (5)  Coordinate with NCCA to receive an initial 6-month QA program review after establishing a PCA program.

    c.  DoD Components shall establish, suspend, or reactivate a PCASS program in accordance with Enclosure 5.


2. GENERAL PROGRAM PROCEDURES

    a.  Only the DoD Components identified in Enclosure 1 of Reference (d), or subsequently approved by the USD(I&S), may conduct PCA examinations.

    b.  The DoD Components shall use PCA technologies only for their intended purposes, consistent with authorized missions and standardized practices, and only by those trained in NCCA -approved courses as identified in this Instruction.

    c.  Certified personnel and interns shall conduct PCA exams after completing NCCA - approved training.  Interns shall conduct exams under the supervision of certified personnel.

*DoDI 5210.91, August 12, 2010*

d.  DoD Components without an authorized PCA program may request PCA support through the DoD PCA program manager from one of the organizations listed in Enclosure 1 of Reference (d).

e.  Examinee privacy shall be protected in accordance with DoD Instruction 5400.11 (Reference (g)), DoD 5400.11-R (Reference (h)), and, as appropriate, section 1564a of title 10, U.S.C. (Reference (f)).

f.  Polygraph and PCASS examinations require the consent of the examinee.  The examinee may withdraw consent and terminate the examination at any time during any phase of the examination.  Polygraph examinations require consent in writing in accordance with subparagraph 4.a.(1) of Enclosure 4.

g.  PCA examinations are a supplement to, not a substitute for, other methods of screening or investigation.  No unfavorable administrative action (to include access, employment, assignment, and detail determinations) shall be taken solely on the basis of either a refusal to undergo a PSS examination or an unresolved PSS examination, except as provided in sections 6 and 7 of Enclosure 4.

h.  Before a polygraph examination is administered, other investigative activity shall be completed when practical.  This does not apply when the examination is administered as part of a PSS examination.

i.  The polygraph is the only authorized PCA technology for screening of U.S. persons.  This does not apply to approved research and testing of PCA technologies.

j.  All PCA examinations shall undergo a QC review according to Enclosure 7.  Where operational exigencies preclude an immediate or timely QC review, DoD Components shall conduct the review as soon as practical and provide an official notification of the results to the requestor.

k.  DoD Components shall comply with polygraph countermeasure (CM) detection awareness training requirements and anti-CM procedures in accordance with section 7 of Enclosure 4.

l.  DoD Components authorized to conduct PCA examinations shall write internal PCA policies and procedures consistent with Reference (a) and this Instruction.  The policies and procedures shall address:

(1)  Approval authorities.

(2)  Categories and types of authorized examinations.

(3)  Polygraph examiner and/or PCASS operator selection, supervision, certification, and decertification.

Change 2, 03/30/2020

(4)  Standards for protecting examinee privacy and rights.

(5)  Exam requests and approvals, including procedures for conveying approval to deployed examiners.

(6)  Procedures to assess and determine whether an individual is medically, psychologically, and emotionally fit to undergo an examination.

(7)  Exam refusals, terminations, and uncooperative examinees.

(8)  Unresolved examinations.

(9)  CM awareness, detection, counter-CM, and anti-CM.

(10)  Investigative referrals.

(11)  QC and oversight.

(12)  Records maintenance.


3.  <u>NON-DUTY EMPLOYMENT AND PUBLIC DEMONSTRATIONS</u>

a.  DoD polygraph examiners and PCASS operators shall neither perform examinations nor participate in PCA-related activities in connection with non-duty employment.  DoD Components authorized to conduct PCA examinations may grant exceptions on a case-by-case basis, when there is no conflict of interest.  The provisions of this paragraph do not apply to polygraph examiners and PCASS operators of the Reserve Components, except while they are on military duty.

b.  Subject to DoD Component approval, certified polygraph examiners and PCASS operators may participate in public demonstrations of PCA equipment outside the Department of Defense, inclusive of State, local, and foreign governments where appropriate, and when the demonstration:

(1)  Is of the instrument's basic capabilities.

(2)  Is a mock test that does not include an attempt to interpret a test result.

(3)  Does not make unfounded claims of application or reliability.


4.  <u>NCCA</u>.  NCCA shall:

a.  Research and evaluate polygraph, PCASS, and other potential PCA technologies, techniques, and procedures.

b.  Provide an annual PCA RDT&E report to the DUSD(I&S) and the Heads of the DoD Components.

c.  Recommend operational use of new PCA technology after the accuracy is supported by validated independent research, field testing, and lessons learned.

d.  Conduct QA inspections of DoD PCA programs through the Quality Assurance Program (QAP).

e.  Develop, provide, or approve PCA training, continuing education, and examination procedures.

f.  Assist the DoD Components in developing procedures and internal controls to implement PCASS programs.

g.  Incorporate PCASS program reviews into the QA inspection schedule.  Conduct a PCASS program review within 6 months after a DoD Component establishes a PCASS program and conduct biennial oversight inspections thereafter.

h.  Provide status reports and updates regarding QA inspection findings and non-compliance of DoD Components through the Director, DIA, to the DUSD(I&S).

i.  Research and assist in the validation of PCA techniques, instrumentation, and technologies before recommending operational deployment.

j.  Conduct polygraph CM research and anti-CM training to identify polygraph CM trends and signatures.  Investigate procedures, techniques, and technology to develop anti-CM and counter-CM to improve the effectiveness of polygraph training.

k.  Provide PCA threat analysis and strategic support to CI and human intelligence (HUMINT) activities as directed by DIA.

l.  Provide PCA education and technical assistance to State and local agencies as permitted by the DoD mission in accordance with Reference (f).

*DoDI 5210.91, August 12, 2010*

ENCLOSURE 4

POLYGRAPH EXAMINATIONS

1.  <u>TYPES AND AUTHORIZED USES OF THE POLYGRAPH</u>.  This enclosure applies only to polygraph examinations.  The Table reflects the two major types of polygraph examinations, issue-based and PSS, and typical categories for each.

Table.  <u>Authorized Uses of the Polygraph</u>

| Issue-Based Examinations | Narrowly focused on specific issues or allegations:<br><br>- Criminal investigations<br>- CI investigations and operations<br>- Counterterrorism (CT) investigations and operations<br>- Personnel security investigations (PSI)<br>- Foreign intelligence operations<br>- Asset validation (source testing)<br>- Exculpation of alleged wrongdoing, fault, or guilt |
|---|---|
| PSS – 2 types:<br><br>- CSP examinations<br>- ESS examinations | Not predicated on a specific issue or allegation:<br><br>- Designated intelligence positions<br>- SAP<br>- Adjudicative resolution of foreign relationships<br>- Accelerated sensitive compartmented information (SCI) access<br>- Classified access for foreign nationals |

    a.  <u>Issue-Based Examinations</u>.  Issue-based polygraph examinations are predicated upon an allegation or a specific issue under investigation.  They may also include examinations to vet sources or verify specific information.  The following categories of examinations are typical:

        (1)  <u>Criminal Investigations</u>.  Authorized in a criminal investigation when:

            (a)  The crime involves an offense punishable pursuant to Federal law, including Chapter 47 of Reference (i) (also known and hereafter referred to as "The Uniform Code of Military Justice" (UCMJ)), by confinement for a term of 1 year or more.

            (b)  The person being considered for examination has been interviewed and there is reasonable belief that the person has knowledge of or was involved in the matter under investigation.

            (c)  Investigation by other means has been as thorough as circumstances permit.

(d)  The development of information by means of a polygraph examination is essential to the conduct of the investigation.

(2)  <u>CI Investigations</u>.  Authorized in a CI investigation when:

(a)  There is a suspected unauthorized disclosure of defense information, national intelligence, or indications of treason, spying, espionage, sabotage, subversion, or terrorism.

(b)  The person being considered for examination has been interviewed and there is reasonable belief that the person has knowledge of or was involved in the matter under investigation.

(c)  Investigation by other means has been as thorough as circumstances permit.

(d)  The development of information by means of a polygraph examination is essential to the conduct of the investigation.

(3)  <u>PSI</u>.  Authorized to resolve credible derogatory information developed in connection with a PSI or to aid in the related adjudication.

(4)  <u>Foreign Intelligence and CI Operations</u>.  Authorized to determine the suitability, reliability, or credibility of persons who are used as, proposed for use as, or who purport to be agents, sources, or operatives in a foreign intelligence or CI activity.

(5)  <u>Exculpation of Alleged Wrongdoing, Fault, or Guilt</u>.  When requested by the subject of a criminal or CI investigation and when the examination is essential to a just and equitable resolution of a serious allegation.

b.  <u>PSS Examinations</u>.  PSS examinations are used to assist in determining an individual's eligibility for sensitive duties or positions as established by the Heads of the DoD Components to cover detailees and incumbent employees in designated positions.

(1)  The relevant question areas for the two types of PSS examinations, CSP and ESS, are identified in section 3 of this enclosure.

(2) PSS examination shall be limited to the CSP question areas listed in section 3 of this enclosure.

(3)  The USD(I&S), as the oversight authority PCA programs within the Department of Defense, must approve the use of ESS examinations in accordance with section 1564a of Reference (f) and subparagraph 1.c.(2) of this enclosure.

(4)  In accordance with Executive Order 13467 (Reference (j)), DoD Components shall ensure reciprocal recognition of PSS examinations, consistent with any additional guidance from the Director of National Intelligence (DNI) on reciprocity for personnel mobility within the intelligence community (IC) or relevant question areas for PSS examinations.

*DoDI 5210.91, August 12, 2010*

(5)  When a PSS examination is required for assignment or detail of DoD personnel (military or civilian) to the Central Intelligence Agency (CIA), other intelligence community element, or other Federal agency, the scope of the PSS examination shall be limited to CI-scope topics.

c.  ESS Examinations

(1)  ESS examinations to support the comprehensive evaluation of employee fitness and eligibility for access to classified information, or unescorted access to controlled spaces where sensitive cryptologic information is produced, processed, or stored, shall be in accordance with section 1564a of Reference (f).

(2)  The USD(I&S) approves other exceptions to conduct ESS examinations.  The exception shall be limited to circumstances where additional requirements are necessary to address significant needs unique to the DoD Component or to protect national security. Accordingly, where appropriate and in accordance with the criteria specified in section 1564a of Reference (f) and Reference (j), and consistent with guidance from the DNI, DoD Components may request approval to administer ESS examinations for designated applicant or contractor positions that merit additional scrutiny beyond CSP.  The request shall provide the:

(a)  Categories of personnel asked to undergo the ESS examination during the PSS.

(b)  Perceived value of employing the ESS examination over the CSP examination.

(c)  Adjudicative standards and predicted rates of non-selection based on ESS examinations.

d.  CSP Examinations.  In accordance with section 1564a of Reference (f), the Head of a DoD Component may require persons to take a CSP examination to assist in determining initial eligibility, and periodically thereafter, on a random basis, for continued eligibility for access to information, or for employment or assignment or detail decisions that are contingent on such access.  CSP examinations may be used to determine eligibility for access to:

(1)  Top Secret Information.  The Head of a DoD Component may require CSP examinations for persons who occupy designated positions that involve the creation, use, or handling of Top Secret information.

(2)  SAP Information.  The Head of a DoD Component may require CSP examinations for persons who occupy designated positions that involve the creation, use, or handling of classified information protected under a SAP program.

(3)  Sensitive Intelligence or Operational Activities.  The Head of a DoD Component may require CSP examinations for persons who occupy designated positions that involve the creation, use, or handling of classified information relating to sensitive intelligence or operational activities.  Prior to initiating such a requirement, the Head of the DoD Component

Change 2, 03/30/2020

shall make a determination that unauthorized disclosure of the information in question could reasonably be expected to:

      (a)  Jeopardize human life or safety.

      (b)  Result in the loss of unique or uniquely productive intelligence sources or methods vital to U.S. security.

      (c)  Compromise technologies, operational plans, or security procedures vital to the strategic advantage of the United States and its allies.

    (4)  Classified Information By Foreign Nationals.  Used to determine the eligibility of foreign nationals to gain and continue access to specific classified information in accordance with DoD Manual 5200.01 (Reference (k)).

    (5)  SCI Information Through An Accelerated Process.  Authorized for exceptional cases when operational exigencies require an individual's immediate use before completing the individual's PSI.  The following conditions shall apply:

      (a)  The examination is necessary for national interests to expedite the individual's access.

      (b)  The examinee has undergone a security interview and officials have completed all records checks according to DoD Manual 5200.02 (Reference (l)) and no derogatory information was discovered.

      (c)  The individual's organization has initiated a single-scope background investigation.

      (d)  The examination is limited to the CSP topics listed in section 3 of this enclosure, except when the USD(I&S) has approved the ESS examination.

      (e)  The individual has agreed to undergo the CSP examination to expedite accelerated SCI access.

  e.  Examinations Conducted Outside the Department of Defense

    (1)  Polygraph support to non-DoD organizations shall be reported to the DoD PCA program manager.

    (2)  DoD polygraph examiners shall not conduct polygraph examinations outside of their DoD employment except as noted in section 3 of Enclosure 3.

ENCLOSURE 4

*DoDI 5210.91, August 12, 2010*

2. <u>PSS PROGRAM REQUIREMENTS AND PROCEDURES</u>.  The Heads of DoD Components approved to conduct PSS examinations or establish PSS programs to screen designated personnel shall establish written procedures to:

   a.  Designate positions and specific duties that may subject employees to an initial PSS examination, periodic PSS examinations, and random selection for PSS examinations as conditions of access.

   b.  Conduct objective QC reviews of all PSS examinations.

   c.  Provide post-exam surveys to obtain feedback from personnel who undergo a PSS examination.

   d.  Establish reasonable time limits on individual PSS examination sessions, including the number of test series within a single test session and extended test sessions.

   e.  Submit investigative and security referrals of admissions or reportable information.

   f.  Establish thresholds and an evaluation process for reporting non-relevant information or spontaneous admissions of a serious criminal nature to appropriate authorities.

   g.  Adjudicate refusals, terminated exams, and unresolved exams (including those in which the examinee was deemed uncooperative during the examination process).

   h.  Exempt or postpone examinations when individuals are considered medically, psychologically, or emotionally unfit to undergo an examination.

   i.  Record PSS examinations by audio or video means.

   j.  Enter PSS examinations into the Joint Personnel Adjudication System, a CI information system, or other appropriate DoD databases.

   k.  Develop the scope of the relevant question areas for PSS examinations and polygraph policies consistent with this Instruction, or guidance from the DNI in accordance with section 435b of title 50, U.S.C. (Reference (m)).


3. <u>CSP AND ESS EXAMINATION QUESTIONS</u>

   a.  <u>CSP Questions</u>.  When the scope of a polygraph examination is limited to CSP coverage, relevant questions shall address the topical areas in subparagraphs 3.a.(1) through 3.a.(5) of this enclosure.  The relevant CI questions may be modified to isolate or resolve any of the following relevant topic areas.

      (1)  <u>Involvement with a Foreign Intelligence and Security Service (FISS) and/or Spying or Espionage Activities Against the United States</u>.  Scoping will include whether the examinee

Change 2, 03/30/2020

has had unauthorized involvement with a FISS or has engaged in spying or espionage; has knowledge of anyone engaged in spying or espionage; has ever been approached, trained, or tasked to engage in spying or espionage; or has failed to report anyone engaged in spying or espionage against the United States.

(2)  Involvement in Terrorism Against the United States.  Scoping will include whether the examinee has had any involvement in acts of violence for political purposes; has supported acts of terrorism in any way; knows of anyone involved in or planning acts of terrorism against the United States; has ever been approached, trained, or tasked to commit acts of terrorism against the United States; or has failed to report anyone engaged in terrorism against the United States.

(3)  Involvement in Sabotage Against the United States.  Scoping will include whether the examinee has ever damaged or destroyed any U.S. Government information or defense system.  Specifically included in this scoping is whether the examinee has deliberately placed malware in or otherwise manipulated a Government computer system without proper authorization.

(4)  Mishandling of Classified Information.  Scoping will include whether the examinee has deliberately removed classified material or information from approved facilities without proper authorization, has deliberately provided classified information or material to any unauthorized person, or has stored classified information or material outside of approved Government facilities.

(5)  Unauthorized Foreign Contacts.  Scoping will include unreported contact with foreign nationals in accordance with individual DoD Component reporting requirements and secret, hidden, or covert contact with any foreign government representative.  It is appropriate in pretest discussion to develop the nature of any foreign contact to determine the appropriate scope and wording.

b.  ESS Questions.  The ESS polygraph examination includes the CSP questions in paragraph 3.a. of this enclosure and the following question areas:

(1)  Falsification of security questionnaires and forms.

(2)  Involvement in serious criminal conduct.

(3)  Illegal drug involvement.


4.  CONDUCT OF A POLYGRAPH EXAMINATION.  A polygraph examination normally includes the following procedures:

a.  Pretest.  Before collecting physiological data during a polygraph examination, the polygraph examiner shall:

(1)  Obtain consent from the examinee.  Written consent is required for all polygraph examinations, except for foreign national screening, HUMINT operations, and CI operations.

(2)  Interview the examinee, collect basic data, and assess the examinee's suitability and condition to undergo an examination.  During the interview, the examiner shall inform the examinee:

(a)  Of the characteristics and nature of the polygraph instrument and examination, including explaining the operation of the instrument and the procedures during the examination.

(b)  Whether the examination will be observed or recorded through a two-way mirror, camera, video, voice recording, or other devices.

(c)  Of the examinee's privilege against self-incrimination as provided by the Fifth Amendment to the Constitution or, if the person to be examined is a Military Service member, in accordance with the UCMJ, when required by law.

(d)  Of the examinee's right to consult with legal counsel and that legal counsel may be available for consultation, as required by law.

(e)  That the examinee may, upon his or her volition or at the advice of counsel, terminate the examination at any time.

(3)  Thoroughly explain and review all test questions prior to the collection of test charts.

(4)  Ensure that polygraph examination questions have relevance to the matter at issue, except for technical questions necessary to the polygraph test format and methodology. Technical questions shall be constructed to avoid those that are embarrassing, degrading, or unnecessarily intrusive.

(5)  Ensure that, when using an interpreter during an examination, the technical report shall list the examination questions with their English translation.

b.  Data Collection.  When collecting physiological data during a polygraph examination, the polygraph examiner shall:

(1)  Use data collection procedures in accordance with NCCA curriculum and this Instruction.

(2)  Submit all physiological data recorded during the polygraph examination for QC review.

(3)  Ask the relevant questions an appropriate number of times, consistent with the NCCA curriculum associated with that particular polygraph questioning format to render a decision.

c.  <u>Test Data Analysis</u>.  When analyzing the data collected during a polygraph examination, the polygraph examiner shall:

(1)  Conduct test data analysis procedures only in accordance with NCCA curriculum for the specific questioning formats and test methodologies used for technical evaluation of physiological responses.

(2)  Render only the following technical opinions for a specific test series, or as an overall examination result:

(a)  No Deception Indicated (NDI).

(b)  Deception Indicated (DI).

(c)  No Opinion (NO).

(d)  No Significant Response (NSR).

(e)  Significant Response (SR).

(3)  These technical opinions may also reflect any relevant admissions made during the examination.  For example, NDI, following a pre-test admission, is a more descriptive technical description of the overall examination result.

d.  <u>Post-Test</u>.  After collection and analysis of the test data, the polygraph examiner shall:

(1)  Interview the examinee regarding unresolved questions.  This interview begins immediately following the analysis of the test data for that test series.

(2)  If the follow-up interview does not reflect progress toward resolution, the examiner should discontinue additional testing unless there is a reasonable expectation that further testing will result in progress toward resolution of the relevant issues.

(3)  The examiner's organization shall refer refusals and unresolved polygraph examinations to the appropriate authority in accordance with DoD Component internal procedures.  The polygraph results may be used as an investigative lead.

(4)  When CI, law enforcement (LE), or security information is developed during the course of a polygraph examination, the information shall be reported to the appropriate organization.

5.  <u>POLYGRAPH LIMITATIONS</u>

a.  A polygraph examiner shall not administer an examination for reasons other than those given to the examinee.

*DoDI 5210.91, August 12, 2010*

   b.  An issue-based polygraph examination shall not be conducted before the examinee has been previously interviewed and given the opportunity to address the relevant issues.  The examinee should not be subjected to prolonged interrogation immediately prior to the polygraph.

   c.  Questions probing a person's religious, racial, or political beliefs and lawful affiliations that are not related directly to the investigation are prohibited.

   d.  The polygraph examiner's field analysis of polygraph data does not constitute an official result.  The result is official only after the QC authority examines the data and renders a final opinion.


6.  <u>REFUSAL TO TAKE OR COMPLETE A PSS</u>.  DoD-affiliated personnel who refuse to take or complete a polygraph examination, and are in positions designated as requiring a PSS polygraph examination as part of determining initial eligibility for access to Top Secret, SAP, or other sensitive intelligence or operational information or for initial assignment or detail to the CIA or other IC elements, may be denied access, assignment, or detail.


7.  <u>FAILURE TO RESOLVE A PSS</u>.  DoD-affiliated personnel in positions cited in section 6 of this enclosure who are unable to resolve all relevant questions of a PSS shall be so advised.  The results of the examination shall be forwarded to the requesting agency.

   a.  If, after reviewing the examination results, the requesting agency determines that they raise a significant question relevant to the individual's eligibility for a security clearance or continued access, the individual shall be given an opportunity to undergo additional examination.

   b.  If the additional examination fails to resolve all relevant questions, the Head of the DoD Component may initiate a CI investigation in accordance with DoD policy.

   c.  Additionally, the Head of the relevant DoD Component may temporarily suspend an individual's access to controlled information and deny the individual assignment or detail that is contingent on such access, based upon a written finding that, considering the results of the examination and the extreme sensitivity of the classified information involved, access under the circumstances poses an unacceptable risk to the national security.  Such temporary suspension of access may not form the part of any basis for an adverse administrative action or an adverse personnel action.

   d.  The individual shall be advised in writing of the determination, that the determination may be appealed to the Head of the relevant DoD Component, and that his or her final determination is conclusive.


8.  <u>APPEALS</u>

*DoDI 5210.91, August 12, 2010*

a.  Examinees shall file appeals within 30 days of notification by the determining authority.

b.  Copies of the determination as well as the determining authority's notification to the subject may be retained only in the immediate office of the determining authority and in the security office of the DoD Component responsible for controlling access to the information in question.

9.  POLYGRAPH CM AWARENESS AND ANTI-CM PROCEDURES

a.  NCCA Training Requirements, CM Awareness, and Reporting Procedures

(1)  NCCA shall:

(a)  Conduct polygraph CM research to identify CM trends and CM signatures.

(b)  Aggressively pursue CM lessons learned and investigate procedures, techniques, and technology to develop anti-CM and counter-CM to improve the effectiveness of polygraph examiner training.

(2)  Initial polygraph instruction at NCCA shall include a minimum of 14 hours of polygraph CM awareness and CM detection training.

(a)  Within 2 years of graduation from initial polygraph training, examiners shall attend a comprehensive 40-hour polygraph CM awareness and CM detection course sponsored by NCCA.

(b)  Thereafter, examiners shall attend a minimum of 4 hours of NCCA -approved refresher CM awareness and CM detection instruction every 2 years.

(3)  DoD polygraph programs shall incorporate anti-CM advisements into pretest procedures.

(4)  All polygraph examinations shall include the use of a movement sensor device.

b.  Reporting CM

(1)  Confirmed polygraph CM cases shall be forwarded to NCCA for ongoing CM awareness and detection training and research.

(2)  NCCA may assist the Department of Defense and participating Federal PCA programs in analyzing cases where polygraph CM are suspected through technical means, such as a movement sensor, or observation of significantly-timed, recurring patterns that have a signature pattern in the physiological data associated with known polygraph CM.

*DoDI 5210.91, August 12, 2010*

(3)  Examinations with suspected, persistent, or confirmed CM efforts may be referred to the appropriate CI investigative authority.

ENCLOSURE 4

*DoDI 5210.91, August 12, 2010*

ENCLOSURE 5

PCASS EXAMINATIONS

1. APPLICATION AND RESTRICTIONS

   a.  The PCASS shall only be used as a field-expedient tool to screen persons of interest for intelligence and security purposes.

   b.  PCASS instruments, techniques, procedures, and certification shall be employed and administered only as prescribed by the Director, DIA, and this Instruction.

   c.  PCASS examination results shall not be the sole means to validate information of intelligence value.

   d.  The PCASS shall not be used to test U.S. persons.  This does not apply to PCASS examinations conducted for training purposes.

   e.  PCASS software shall not be modified, copied, or transferred to a non-PCASS system.


2. REQUIREMENTS FOR ESTABLISHING A PCASS PROGRAM.  When establishing a PCASS program, the DoD Components shall:

   a.  Coordinate with NCCA to develop comprehensive written procedures for effective management and oversight.

   b.  Before PCASS program implementation, appoint a PCASS manager to coordinate and deconflict DoD Component PCASS activities; participate in PCASS committees and working groups; and facilitate PCASS data collection in support of ongoing research and validation efforts.

   c.  Delegate in writing, to appropriate officials, the authority to approve PCASS examinations in accordance with Enclosure 3.

   d.  Establish adequate record-keeping procedures in accordance with standards established by the Director, DIA.

   e.  Establish procedures for accountability of PCASS-related equipment.

   f.  In coordination with NCCA, establish procedures and processes to monitor the training and certification of PCASS operators and supervisors.

   g.  Within 6 months of establishing a PCASS program and at least biennially thereafter, coordinate with NCCA to receive a QAP program review.

3.  <u>SUSPENSION AND REACTIVATION OF A PCASS PROGRAM</u>.  Upon the completion of a deployment, or the temporary or indefinite cessation of operational PCASS requirements, an organization under the authority of a DoD Component shall:

    a.  Notify NCCA of the suspension of a PCASS operator or PCASS program.

    b.  Officially record the temporary suspension or cessation of the PCASS program, including notifying all affected PCASS operators of their inactive status.

    c.  Prepare a comprehensive report on all PCASS exams conducted, and ensure the full transfer of all exam data and records to the organization's parent DoD Component or other appropriately designated organization.

    d.  Safeguard or transfer all PCASS equipment and software to prevent the unauthorized use of the systems, except as necessary for training of PCASS operators, when re-deployment and re-activation of the organization's PCASS program is confirmed.

    e.  Ensure the responsibilities for any outstanding PCASS program inspection requirements, in accordance with Enclosure 7, may be effectively satisfied.

    f.  Coordinate with the NCCA to gain approval of an adequate refresher training program to re-activate a PCASS program that has been suspended for 1 year or more.


4.  <u>PCASS PROCEDURES</u>

    a.  Only certified personnel may conduct PCASS examinations.

    b.  Every PCASS examination must employ a NCCA -approved protocol for conducting the test, in accordance guidelines from NCCA or DIA.

    c.  The PCASS operator must obtain the examinee's voluntary consent before conducting an examination.

    d.  The PCASS operator shall prepare an examination report for each PCASS examination conducted.

    e.  All PCASS examinations and the corresponding report shall undergo a supervisory QC review.

ENCLOSURE 5

*DoDI 5210.91, August 12, 2010*

ENCLOSURE 6

SELECTION AND TRAINING OF POLYGRAPH EXAMINERS AND PCASS OPERATORS

1. GENERAL.  NCCA shall:

    a.  Establish training standards for polygraph examiners and PCASS operators.

    b.  Establish and manage training programs for polygraph examiners and PCASS operators.

    c.  Approve non- NCCA PCA training and PCA-related continuing education credit for certification purposes.

2. SELECTION OF POLYGRAPH EXAMINERS AND PCASS OPERATORS

    a.  Polygraph Examiners.  A DoD polygraph examiner shall be:

        (1)  A U.S. citizen.

        (2)  At least 25 years old.  The Director, DIA, may grant a waiver to this requirement.

        (3)  A person who has at least 2 years of investigative experience.  The Director, DIA, may grant a waiver to this requirement.

        (4)  Eligible for a Top Secret clearance.

        (5)  Interviewed and judged suitable for the position.

        (6)  A person who has successfully completed a CSP examination.

    b.  PCASS Operators.  The DoD Components shall coordinate with NCCA to establish minimum standards for selection of PCASS operators.

3. TRAINING AND CERTIFICATION OF POLYGRAPH EXAMINERS AND PCASS OPERATORS

    a.  Polygraph Examiners

        (1)  A polygraph examiner candidate must graduate from the NCCA Psychophysiological Detection of Deception (PDD) training program.

        (2)  A person certified as a polygraph examiner by a DoD Component or participating Federal agency as of the effective date of this Instruction may continue in that capacity.

Components may accept the certification status of an examiner transferring from another Federal agency.

(3)  The internship period for a polygraph intern examiner shall begin after completion of the NCCA PDD Program and shall continue for a minimum of 6 months.

(4)  During the internship period, the intern shall demonstrate proficiency by conducting at least 25 polygraph examinations under the supervision of a certified DoD polygraph examiner and demonstrate an adequate level of proficiency as determined by the certifying official.

(5)  A DoD polygraph examiner shall receive 80 hours of NCCA -approved continuing education every 2 years in accordance with NCCA cycles.  DoD Components who are unable to meet the continuing education requirements because of operational circumstances related to deployments shall coordinate in advance with NCCA to obtain a reasonable extension on the 2-year continuing education cycle.

(6)  DoD Components shall require a polygraph examiner to conduct a minimum of 18 polygraph examinations in each 6-month period to maintain proficiency, and administratively suspend the certification of examiners who are assigned to other duties.

(a)  The DoD Components may exempt from this requirement examiners who instruct, provide QC oversight, or manage examiners.

(b)  Polygraph examiners who fail to satisfy proficiency standards or maintain the established continuing education requirements shall have their certificates suspended or revoked.

(c)  A DoD Component may reissue a suspended polygraph examiner's certification after refresher training or after the examiner has demonstrated an acceptable standard of proficiency.

(d)  DoD Components shall establish recertification procedures for previously certified examiners.  Personnel seeking recertification must have been certified by a DoD Component or participating Federal agency within 10 years of application for recertification or attend the NCCA PDD Program.

(7)  Examiners who demonstrate proficiency at meeting and maintaining qualifications and education requirements shall be certified by their DoD Component.  The certification of an examiner shall be evidenced by the issuance of a DoD Component certificate.

b.  PCASS Operators

(1)  PCASS operators shall complete a NCCA -approved course of instruction and be able to properly use the PCASS device and competently execute the appropriate PCASS testing protocols.

(2)  Following NCCA -approved training, PCASS certification requires an internship period, under the mentorship of a certified PCASS operator, of at least 25 examinations.  PCASS operators shall serve a probationary period supervised by a certified operator or NCCA instructor.

(3)  At a minimum, the intern's first 10 PCASS examinations require on-site monitoring, followed by real-time audio monitoring of the next 15 examinations.

(4)  PCASS operators shall conduct a minimum of 18 PCASS examinations in each 6-month period to maintain proficiency, and demonstrate an adequate level of proficiency as determined by the certifying official.

(a)  The DoD Components may exempt PCASS operators from this requirement who instruct, provide QC oversight, or manage other operators.

(b)  PCASS operators who fail to satisfy proficiency standards or maintain the established continuing education requirements shall have their certificates suspended or revoked.

(c)  A DoD Component may reissue a suspended PCASS certification after refresher training or after the operator has demonstrated an acceptable standard of proficiency.

(5)  Operators who demonstrate proficiency at meeting and maintaining qualifications and training requirements shall be certified by their DoD Component.  The certification of a PCASS operator shall be evidenced by the issuance of a DoD Component certificate.

ENCLOSURE 7

QC AND QA OF PCA PROGRAMS

1. <u>QC</u>.  The DoD Components shall:

    a.  Establish QC procedures for their PCA programs that are as centralized as possible, to ensure uniform implementation and timely feedback on examinations.

    b.  Certify polygraph examiners and PCASS operators to perform duties as QC supervisors for the particular PCA activities within the DoD Component.  Ensure that QC supervisors, within their respective polygraph or PCASS function:

        (1)  Exercise technical authority over polygraph examiners or PCASS operators to note procedural deficiencies or, when necessary, direct a re-examination if they do not concur with the examiner's field opinion.

        (2)  Review reports, technical documents, and charts to ensure examinations are:

            (a)  Conducted in accordance with standards established by NCCA.

            (b)  Properly constructed with well-formulated questions.

            (c)  Properly evaluated at the field level.

            (d)  Thoroughly documented with accurate and complete reporting, including translation of the exam questions and other documents prepared by an interpreter.

    c.  Not permit the field opinion of a polygraph examiner or a PCASS operator to be considered as a final result until the examination has been subjected to a thorough QC review and authenticated.

2. <u>QA</u>

    a.  NCCA shall maintain QA to inspect DoD PCA programs, and participating Federal PCA programs, in accordance with section 5 of Enclosure 2.

        (1)  The inspections shall evaluate the ethical, professional, and technical standards in accordance with QA standards established for that PCA technology.

        (2)  A QA inspection may be expanded only upon a request from the inspected PCA program.  The scope of an expanded inspection shall be agreed upon before a QA inspection begins.

    (3)  PCA inspections involve an on-site inspection of an organization's QC program.  The on-site inspection includes a review of a random sample of PCA examinations.

  b.  NCCA may provide PCA technical assistance to:

    (1)  The DoD Components and other Federal agencies upon request.

    (2)  State and local agencies with the approval of the DoD PCA program manager.

*DoDI 5210.91, August 12, 2010*

ENCLOSURE 8

RDT&E OF PCA TECHNOLOGIES

1. GENERAL

a.  NCCA is the focal point for RDT&E of PCA methodologies, technologies, and equipment.  The DoD Components shall coordinate their RDT&E proposals and PCA research with NCCA before acquiring experimental PCA equipment.

b.  Routine statistics or analysis of the contents of PCA data, including outcomes and trends, do not constitute research for the purposes of this Instruction.

c.  PCA RDT&E shall be conducted in accordance with DoD Instruction 3216.02 (Reference (n)), DoDD 5000.01 (Reference (o)), DoD Instruction 5000.02 (Reference (p)), DoD Instruction 5000.02T (Reference (q)), and other applicable defense, joint, and Military Service acquisition guidance.

2. PCA STUDIES AND RESEARCH

a.  NCCA shall conduct ongoing evaluations of the validity of PCA technologies and techniques used by the Department of Defense.

b.  NCCA shall conduct studies and research on new or developing PCA methodologies, technologies, and equipment.

c.  DoD Components shall coordinate their PCA studies and research with NCCA.

d.  As approved by the Director, DIA, NCCA may collaborate with a vendor to evaluate the vendor's PCA technology.

(1)  Where practical, NCCA will seek the vendor's advance agreement regarding the parameters of the evaluation, including the release and dissemination of the findings and observations.

(2)  When evaluating a commercial PCA technology, NCCA shall request the vendor provide information supporting research, pertinent reliability, and validation data to establish the scientific basis for the technology.

3. RDT&E REPORTING

a.  The Director, DIA, shall submit an annual PCA RDT&E report to the DUSD(I&S) and the Heads of the DoD Components by January 31.  The report shall include:

    (1)  PCA research priorities and NCCA funding objectives.

    (2)  Summaries of completed PCA projects.

    (3)  Progress reports on PCA initiatives within the Department of Defense.

  b.  DoD Components involved with the conduct of PCA-related research activities shall periodically report the status or results of such activities to NCCA.

4.  <u>FIELD TESTING</u>.  The Director, DIA, approves field testing of PCA technologies and/or equipment.  The Director shall consider the following before field testing:

  a.  Evidence that the technology or method underwent a scientifically controlled laboratory evaluation and demonstrated validity, reliability, and utility for a specified field application.

  b.  Specific objectives and parameters regarding the scope and duration of the laboratory and field testing.

  c.  The method for calculating decision accuracy, validity, and reliability.

  d.  Protocols for safety, privacy, and protection of civil liberties, as appropriate.

  e.  The research organization's supervision and oversight procedures.

  f.  Plans for follow-up or concurrent scientifically-controlled laboratory evaluation.

  g.  Appropriate limitations to ensure operational decisions are not made based on uncorroborated outcomes of PCA examinations during field testing.

5.  <u>OPERATIONAL USE</u>.  This section provides conditions that shall be met before operational use of PCA technologies and/or equipment.

  a.  NCCA shall confirm that the accuracy of the proposed PCA technology and/or equipment is supported by validated independent research, field testing, and lessons learned from the field testing.

  b.  After appropriate validation, the Director, DIA, shall request USD(I&S) approval to authorize the operational use of new PCA technologies as an aid to decision making.

  c.  The USD(I&S) may also require:

*DoDI 5210.91, August 12, 2010*

(1)  An implementation plan providing a commander's advisement on using the results to aid in decision making, training standards, oversight responsibilities, records maintenance, and other considerations.

(2)  Reports from multiple scientific evaluations.

(3)  After-action reports and consolidated data from field users.

(4)  Accuracy rates, confidence intervals, validity, and reliability within acceptable standards for the application for which they will be used.

*DoDI 5210.91, August 12, 2010*

ENCLOSURE 9

INFORMATION REQUIREMENTS

1. PRIVACY AND INFORMATION PROTECTION

   a.  The Department of Defense shall balance the need to collect, maintain, use, or disseminate personal information in discharging its statutory responsibilities against the right of the individual to be protected against unwarranted invasion of privacy in accordance with References (g) and (h).

   b.  Classified information shall be protected in accordance with Reference (k).

   c.  DoD personnel shall not disseminate classified information to another agency without the consent of the originating agency in accordance with Executive Order 12958 (Reference (r)). For the purposes of Reference (r), the Department of Defense is considered one agency.

   d.  PCA examinations may only be conducted for authorized missions and PCA data used for authorized purposes.


2. POLYGRAPH RECORDS.  DoD Components shall enter polygraph examinations and results into an official record.  Polygraph records are typically divided into two categories, the Report of Examination and the Technical Report.

   a.  The Report of Examination shall include:

      (1)  Identity of the examinee and/or case file number.

      (2)  Identity of the polygraph examiner or PCASS operator.

      (3)  Requestor and approval authority for the examination.

      (4)  Type of PCA examination.

      (5)  Relevant questions and PCA results.

      (6)  Name and organization of the reviewers who provided the QC opinion.

      (7)  Identity of the interpreter, if used, and translations of the test questions.

      (8)  Pretest or post-test admissions if obtained in the PCA examination process.

      (9)  Date and time of the PCA examination.

    b.  The technical report shall include:

        (1)  Recordings of physiological test data.

        (2)  Identity of the examinee and the purpose for which the examination was conducted.

        (3)  Test questions and results, including relevant admissions.

        (4)  Examiner notes and observations.

        (5)  QC observations and instructions.

        (6)  If an interpreter is used, the report shall include a translation of test questions.


3.  RETENTION AND DISSEMINATION.   DoD Components authorized to conduct PCA examinations shall collect, use, maintain, and disseminate polygraph records under an appropriate system of record notice (SORN) established in accordance with References (g) and (h) and DoDD 5015.02 (Reference (s)).

    a.  The organization that conducted the examination shall:

        (1)  Provide the customer with the Report of Examination once the QC review is complete.

        (2)  File the Report of Examination in accordance with the DoD Component's records disposition schedule.

        (3)  Destroy the non-record Report of Examination within 3 months from the investigation's date of completion.

        (4)  Retain the Technical Report for a minimum of 35 years in accordance with the Inspector General Report, 05-INTEL-19, (Reference (t)).

    b.  The customer may retain copies of the Report of Examination as part of an investigative case file or clearance adjudication records in accordance with the required retention policies of these records.

    c.  Personal data identifying the examinee may be removed before CM cases are provided to NCCA.

    d.  For reporting purposes, a polygraph examination is considered to have taken place when at least one of the examination phases has been initiated.

*DoDI 5210.91, August 12, 2010*

GLOSSARY

PART I.  ABBREVIATIONS AND ACRONYMS

| | |
|---|---|
| CI | counterintelligence |
| CIA | Central Intelligence Agency |
| CM | countermeasures |
| CSP | counterintelligence-scope polygraph |
| CT | counterterrorism |
| | |
| DI | deception indicated |
| DIA | Defense Intelligence Agency |
| DNI | Director of National Intelligence |
| DoDD | DoD directive |
| DUSD(I&S) | Deputy Under Secretary of Defense for Intelligence and Security |
| | |
| ESS | expanded-scope screening |
| | |
| FISS | foreign intelligence and security service |
| | |
| HUMINT | human intelligence |
| | |
| IC | intelligence community |
| | |
| LE | law enforcement |
| | |
| NCCA | National Center for Credibility Assessment |
| NDI | no deception indicated |
| NO | no opinion |
| NSA | National Security Agency |
| NSR | no specific response |
| | |
| PCA | polygraph and credibility assessment |
| PCASS | Preliminary Credibility Assessment Screening System |
| PDD | psychophysiological detection of deception |
| PSI | personnel security investigation |
| PSS | personnel security screening |
| | |
| QA | quality assurance |
| QAP | Quality Assurance Program |
| QC | quality control |
| | |
| RDT&E | research, development, testing, and evaluation |

SAP             special access program
SCI             sensitive compartmented information
SR              specific response

U.S.C.          United States Code
USD(I&S)        Under Secretary of Defense for Intelligence and Security


## PART II.  DEFINITIONS

Unless otherwise noted, these terms and their definitions are for the purpose of this Instruction.

anti-CM.  Procedures routinely included in the examination protocol to deter or neutralize CM.

certification.  A formal and structured process to ensure that polygraph examiners and PCASS operators meet and maintain all necessary qualifications; receive the required formal instruction, training, and mentorship; and demonstrate technical proficiency to conduct PCA examinations on behalf of their DoD Component.

chart.  The electronic display or analog recording of physiological data collected during an examination that is analyzed in the assessment of an individual's truthfulness.

CM.  Those strategies employed by examinees to affect PCA testing by the intentional application of physical, mental, pharmacological, or behavioral tactics.

counter-CM.  Procedures invoked to defeat or confirm the presence of suspected CM.

CSP.  A screening polygraph examination that uses relevant questions limited to prescribed CI issues.

DI.  An unfavorable opinion regarding the outcome of an issue-based polygraph examination based upon test data analysis for at least one relevant question in a completed test series.

ESS.  An examination that includes the questions from a CSP polygraph and questions related to falsification of security forms, involvement with illegal drugs, and criminal activity.  Previously known as full-scope polygraph.

field testing.  The data collection and evaluation of PCA technologies under real-world conditions.  Field testing and controlled laboratory testing have different goals, strengths, and limitations, but each contributes essential information to form decisions to grant operational approval.  See also "laboratory testing" and "operational use."

laboratory testing.  The examination, observation, and evaluation of PCA technologies under controlled conditions.  See also "field testing" and "operational use."

NDI.  A favorable opinion regarding the outcome of an issue-based polygraph examination based upon test data analysis for all the relevant questions in a completed test series.

NO.  An opinion regarding the outcome of a polygraph or PCASS test series, or overall examination result, when there is insufficient physiological data for conclusive test data analysis. For statistical purposes, a case may be considered as a NO when an examinee withdraws consent to undergo testing before physiological data can be obtained.

NSR.  A favorable opinion regarding the outcome of a security screening polygraph or PCASS examination based upon test data analysis for all the relevant questions in a completed test series.

operational use.  The real-world deployment of PCA technologies or equipment.  See also "field testing" and "laboratory testing."

PCA.  The overarching term covering programs, research, training, and procedures that employ technologies to assess an individual's truthfulness with the aid of technical devices that measure physiological data or behavioral activity.

PCASS instrument.  A diagnostic instrument used during an interview capable of monitoring, recording, and/or measuring electrodermal and vasomotor activity.  The PCASS instrument uses an algorithm to evaluate the physiological responses recorded by the two components.

polygraph examination.  Defined in Reference (a).

polygraph instrument.  A diagnostic instrument to measure and record respiration, electrodermal, blood volume, and heart rate responses to verbal or visual stimuli.

PSS.  Examinations administered to assist in determining initial eligibility or continued access to sensitive duties or information.

QA.  An oversight process conducted by NCCA designed to maintain ethical, professional, and technical standards consistent with this Instruction.

QC.  A detailed review of individual PCA examinations to ensure each was conducted within standards prescribed by NCCA and this Instruction.

relevant question.  A question pertaining directly to the matter for which the examinee is being tested.

response.  The physiological change to the applied stimulus.

SR.  An unfavorable opinion regarding the outcome of a security screening polygraph or PCASS examination based upon test data analysis for at least one relevant question in a completed test series.

technical authority.  The ability of a PCA supervisor to require polygraph examiners and/or PCASS operators to correct deficiencies and/or direct additional testing noted in a PCA examination prior to an agency opinion being provided.

technical questions.  All non-relevant test questions asked during the data collection phase of the examination.

technical report.  The notes, pretest preparations and forms, question lists, test data analysis materials, QC critiques, comments, and documents the polygraph examiner or PCASS operator uses to prepare the official examination report.

test data analysis.  The analysis of the physiological data recorded during the examination.

test series.  One or more charts covering the same test issues to provide sufficient test data analysis to render a decision regarding the examinee's truthfulness.

unresolved polygraph examinations.  A point at which physiological test data is insufficient, or a review of the available test data analysis indicates one or more relevant questions areas do not merit a favorable opinion of either NSR or NDI.

U. S. persons.   Defined in DoD Manual 5240.01 (Reference (u)).